# EXHIBIT A

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

League of Women Voters of Pennsylvania, *et al.*,

        *Petitioners,*

v.

The Commonwealth of Pennsylvania, *et al.*,

        *Respondents.*

No. 261 MD 2017

## AFFIDAVIT OF JONATHAN MARKS

Jonathan Marks, being duly sworn, deposes and says:

1. I am Commissioner of the Bureau of Commissions, Elections and Legislation (the "Bureau"), a bureau of the Commonwealth's Department of State (the "Department").

2. I was appointed to the position of Commissioner in October 2011.

3. I have been with the Bureau since the Fall of 2002.

4. From 2008 to 2011, I served as the Chief of the Division of the Statewide Uniform Registry of Electors.

5. Prior to that, from 2004 to 2008, I served as the Chief of the Division of Elections.

6. I am responsible for overseeing the day to day operations of the Bureau, which include election administration.

7. I have supervised the administration of the Department's duties in more than 20 regularly scheduled elections and a number of special elections.

8. The next Congressional primary is scheduled for May 15, 2018.



EXHIBIT 2
EBD Ex 1

9. The current timeline of deadlines leading up to the May 15 primary is set forth at paragraphs 130-152 of the Joint Stipulation of Facts filed on December 8, 2017.

10. All of the deadlines set forth in paragraphs 130-152 of the Joint Stipulation of Facts are required by federal or state law.

11. The earliest deadline on the current election calendar is February 13, 2018, the first day for circulating and filing nomination petitions. *See* Joint Stipulation of Facts ¶ 131.

12. In order to prepare for this February 13 deadline, it would be highly preferable to have all Congressional district boundaries finalized and in place by January 23, 2018, which would give the Department three weeks to prepare.

13. However, should there be a Court order directing that a new plan be put in place, and that plan is not ready until after January 23, it may still be possible for the 2018 primaries to proceed as scheduled using the new plan.

14. Through a combination of internal administrative adjustments and Court-ordered date changes, it would be possible to hold the primaries on the scheduled May 15 date even if a new plan is not put into place until on or before February 20, 2018.

15. First, the current elections schedule gives the Counties ten weeks between the last date for circulating and filing nomination petitions (currently March 6) and the primary election date to prepare for the primary election.

16. Based on my experience, the Counties could fully prepare for the primary election in six to eight weeks.

17. Therefore, I believe that the close of the nomination petitions period could be moved back two weeks to March 20, without compromising the elections process in any way.

18. Second, if the Court were to order a time period for circulating and filing nomination petitions that lasted two weeks, instead of three, the nominations period could start on March 6.

19. Third, as stated above, the Department would normally need three weeks of preparation time before the first date for filing and circulating nomination petitions.

20. However, with the addition of staff and increased staff hours, it would be possible for the Department to complete its preparations in two weeks instead of three.

21. Accordingly, if the first date for filing and circulating nomination petitions was moved to March 6, as described above, the Department would need to have a final plan in place by approximately February 20, 2018.

22. Should there be a Court order directing that a new plan be put in place, and that plan is not ready until after February 20, 2018, it would also be possible, if the Court so ordered, to postpone the 2018 primary elections from May 15 to a date in the summer of 2018.

23. There would be two options under this scenario: (1) the Court could postpone all of the primary elections currently scheduled for May 15; or (2) the Court could postpone the Congressional primary election alone. Either option would require a primary date no later than July 31, 2018.

24. Depending on the date of the postponed primary election, the date by which the new plan would be put in place could be as late as the beginning of April 2018.

25. Postponement of the primary in any manner would not be preferable, because it would result in significant logistical challenges for County election administrators. If postponement takes place, for administrative and cost savings reasons, the Department's preferred option would be postponement of the entire primary.

26. Postponing the Congressional primary alone would require the administration of two separate primary elections (one for Congressional seats and one for other positions), which would result in an additional expenditure of a significant amount of public funds.

27. The cost of holding a single primary in 2018 would be approximately $20 million. If two primaries are held, each will cost approximately $20 million.

28. For each primary, Pennsylvania's 67 Counties will be reimbursed a portion of the costs associated with mailing absentee ballots to certain military and overseas civilian voters and bedridden or hospitalized veterans. The other costs of the primary are paid by the Counties. This is similar to the way that costs are allocated in special Congressional elections.

29. Should the Court wish for more details regarding the costs of postponing a primary or the timeline leading up to any primary date that the Court selects, I stand ready to provide them.

30. The Department will make every effort to comply with any schedule that the Court puts in place.

_____
Jonathan Marks

Sworn to and subscribed before me
This 14 day of December, 2017

_____
Notary Public

Commonwealth of Pennsylvania
NOTARIAL SEAL
Danielle Renee Osman, Notary Public
City of Harrisburg, Dauphin County
My Commission Expires June 26, 2018

- 4 -