UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CORNEL WEST, *et al.*,

           Plaintiffs,

        v.

PENNSYLVANIA DEPARTMENT OF
STATE, *et al.*,

           Defendants.

No. 24-cv-1349
Judge Nicholas Ranjan

**BRIEF OF THE PENNSYLVANIA DEPARTMENT OF STATE AND
SECRETARY OF THE COMMONWEALTH AL SCHMIDT IN OPPOSI-
TION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION
AND IN SUPPORT OF THE MOTION TO DISMISS**

# TABLE OF CONTENTS

Table of Authorities ........................................................................................ ii

Introduction ....................................................................................................1

Background ......................................................................................................3

Argument.........................................................................................................6

  I.     Plaintiffs waited too long to file. ................................................................6

  II.    The Court cannot grant any meaningful relief this close to
        Election Day. ...............................................................................11

        A.    Counties have already taken irreversible steps to
               prepare for the election....................................................12

        B.    Even if they were successful, Dr. West and Ms.
               Abdullah could not be certified as candidates until the
               brink of Election Day. ......................................................16

  III.   The presidential elector affidavit requirement is constitutional.................17

Conclusion ....................................................................................................25

# TABLE OF AUTHORITIES

## Cases

*Am. Party of Texas v. White*, 415 U.S. 767 (1974)....................................................19

*Bognet v. Secretary*, 980 F.3d 336 (3d Cir. 2020).....................................................7

*Clements v. Fashing*, 457 U.S. 957 (1982)...............................................................25

*Clymer v. Schmidt*, 67 MAP 2024, 2024 WL 4181585 (Pa. Sept. 13, 2024) ......................................................................................... 5, 9, 17

*Crookston v. Johnson*, 841 F.3d 396 (6th Cir. 2016) ................................................7

*De La Fuente v. Cortes*, 751 F. App'x 269 (3d Cir. 2018)......................................22

*Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.*, 108 F.4th 194 (3d Cir. 2024)...................................................6

*Democratic Nat'l Comm. v. Wisc. State Leg.*, 141 S. Ct. 28 (2020) ......................11

*In re De La Cruz*, 56 EAP 2024, 2024 WL 4181581 (Pa. Sept. 13, 2024) ..............................................................................................16

*In re Scroggin*, 237 A.3d 1006 (Pa. 2020).............................................................22

*In re Zulick*, 832 A.2d 572 (Pa. Cmwlth. 2003) ............................................. *passim*

*Indep. Party of Florida v. Sec'y, State of Florida*, 967 F.3d 1277 (11th Cir. 2020) ...............................................................................................19

*Jenness v. Fortson*, 403 U.S. 431 (1971)................................................................19

*Mazo v. N.J. Sec'y of State*, 54 F.4th 124 (3d Cir. 2022) ........................................18

*Merrill v. Milligan*, 142 S.Ct. 879 (2022)..............................................................12

*Pa. Democratic Party v. Republican Party of Pa.*, 16-5664, 2016 WL 6582659 (E.D. Pa. Nov. 7, 2016) ..........................................................7

*Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423 (2020)...................................................................................................7

*Republican Party of Pa. v. Cortes*, 218 F. Supp. 3d 396 (E.D. Pa. 2016) ........................................................................................7, 8

*Rogers v. Corbett*, 468 F.3d 188 (3d Cir. 2006) ................................................18

*Stein v. Cortés*, 223 F. Supp. 3d 423 (E.D. Pa. 2016) ..............................7

*Williams v. Pa. Dep't of State*, 25 WAP 2024, 2024 WL 4195131 (Pa. Sept. 16, 2024) ............................................................................5

*Williams v. Pa. Dep't of State*, 394 MD 2024, 2024 WL 3912684 (Pa. Cmwlth. Aug. 23, 2024) ............................................ 2, 5, 9

**Statutes**

25 P.S. § 2831 ...............................................................................3

25 P.S. § 2867 .............................................................................23

25 P.S. § 2868 .............................................................................24

25 P.S. § 2869 .............................................................................24

25 P.S. § 2870 .............................................................................24

25 P.S. § 2912 .............................................................................20

25 P.S. § 2913 .............................................................................20

25 P.S. § 2914 .............................................................................20

25 P.S. § 2936 .............................................................................21

25 P.S. § 2937 ........................................................................ 10, 16

25 P.S. § 2941 ..................................................................... 12, 13, 21

25 P.S. § 2944 .............................................................................12

25 P.S. § 3031.10 .........................................................................14

25 P.S. § 3031.5 ..........................................................................15

25 P.S. § 3146.5 ..........................................................................13

25 P.S. § 3150.15 ...................................................................................................13

3 U.S.C. § 1 .........................................................................................................22

## INTRODUCTION

Justice for All submitted nomination paperwork for Dr. Cornel West, Melina Abdullah, and 19 presidential electors on July 11 and again on August 1, 2024. The Department of State rejected the nomination papers each time, because Justice for All failed to include affidavits for each nominee for presidential elector, as required by Pennsylvania law. The Department's rejection of the nomination papers was litigated through the Pennsylvania courts and, on September 16, the Pennsylvania Supreme Court upheld the Department's decision. The same day, the Department certified a final candidate list to the counties, which then began printing, distributing, and collecting mail ballots and otherwise preparing for the 2024 general election.

Plaintiffs did not file this action until September 25—long after Pennsylvania's nomination period concluded, and all state court cases resolved. They now ask this Court to rewind the clock to August 1. This Court should decline to do so.

Federal courts are not the proper forum to seek late and burdensome changes that would undermine the administration of the ongoing 2024 general election. Yet, plaintiffs' request that the Department be ordered to accept nomination papers from Justice for All so that its intended nominees might be added to the ballot seeks just that. The request for an injunction can be denied based on timing and delay alone.

Plaintiffs filed this action with the election underway and Election Day just a few weeks away despite challenging a rejection of nomination papers that occurred

over **two months** ago. Pennsylvania's Commonwealth Court dismissed an earlier challenge to the same rejection because waiting even **two weeks** was too long given the need to urgently resolve nomination disputes. *Williams v. Pa. Dep't of State* ("*Williams I*"), 394 MD 2024, 2024 WL 3912684 (Pa. Cmwlth. Aug. 23, 2024). There is no basis for a federal court—confronted with delay that has pushed even closer to Election Day—to reach a different conclusion.

Granting relief is not possible with the 2024 general election now underway. Over 717,000 ballots have already been sent to the 1.45 million people who have applied so far to vote by mail. Counties also are using the finalized ballots to conduct time-intensive testing of their election equipment that must be noticed at least 40 days before Election Day and finalized two weeks before then. Attempting to undo these steps would pose impossible election administration burdens.

And even if plaintiffs had meritorious claims—which they do not— no meaningful relief is available. Ordering the Secretary to accept Justice for All's nomination paper would not put Dr. West and Ms. Abdullah on the ballot. It would only begin the objections period required by the Election Code and applicable to every other political body—which took six weeks this cycle. Even a substantially abridged process would push to the cusp of Election Day.

Finally, rejecting Justice for All's nomination paperwork for not including affidavits from all presidential elector candidates, as Pennsylvania law requires, does

not impose an unconstitutional burden. Among other purposes, having presidential elector nominees complete a one-page affidavit ensures that they actually wish to serve as electors. This might seem trivial, except that Justice for All has sought to nominate (in Pennsylvania and elsewhere) individuals who did not actually want to serve as presidential electors. Plfs.' Br. at 18-19 (ECF No. 6); *see also* Brian Slodysko & Jonathan J. Cooper, *Her name was on a filing agreeing to be a Cornel West elector. Her question: What's an elector*, AP News (Aug. 16, 2024).[1] Beyond this, the affidavit ensures compliance with the Election Code's disaffiliation requirement, which two of Justice for All's proposed electors evidently could not satisfy.

For these reasons, the request for a preliminary injunction should be denied and the complaint should be dismissed.

## BACKGROUND

In Pennsylvania, political bodies (political organizations that do not meet the standard to be a political party, 25 P.S. § 2831) nominate candidates by submitting nomination papers to the Department. 25 P.S. §§ 2911-2914. Political bodies have six months to complete the nomination paperwork, which requires, among other things, gathering signatures and completing an affidavit for each nominee—including nominees for presidential elector. The Department's website advised political

---

[1] Available at: https://apnews.com/article/ballot-deception-cornel-west-conservatives-0d2c94da68bbd136442e63edadf14398.

3

bodies of these rules, including specifically that presidential electors must complete and file affidavits by this year's August 1 filing deadline. Compl. ¶¶ 47, 49.

Nevertheless, some (but not all) political bodies submitted nomination papers for the 2024 election without affidavits from all presidential electors. Justice for All did so on July 11, and again on August 1. Compl. ¶¶ 55-59 (ECF No. 1). The Department rejected the deficient nomination papers. *Id.* The August 1 rejection notice informed Dr. West that "Failure to act in a timely manner may impair any potential remedies you seek." August 1 Rejection Notice, Exhibit 10 to Answer, *Williams v. Schmidt*, 394 MD 2024 (Pa. Cmwlth. Aug. 19, 2024) (attached as Exhibit A).

Two sets of petitioners challenged the Department's rejection of nomination papers that had omitted affidavits from presidential electors. The Constitution Party's nominees for President and Vice President filed the first case four days after the Department's August 1 rejection. Petition, *Clymer v. Schmidt*, 376 MD 2024 (Pa. Cmwlth. filed Aug. 5, 2024) (attached as Exhibit B). Three of Justice for All's intended presidential elector nominees brought the second case 14 days after the Department's August 1 rejection. Petition, *Williams v. Schmidt*, 394 MD 2024 (Pa. Cmwlth. filed Aug. 15, 2024 (attached as Exhibit C). All petitioners claimed the Pennsylvania Election Code does not require presidential electors to submit affidavits and, if it does, the requirement violates the U.S. and Pennsylvania Constitutions.

Commonwealth Court ruled against both sets of petitioners.

4

In *Clymer*, Commonwealth Court held that Pennsylvania law requires political bodies' presidential elector nominees to submit affidavits with the nomination papers. *Clymer v. Schmidt* ("*Clymer I*"), 376 MD 2024, 2024 WL 4231289, at *8 (Pa. Cmwlth. Aug, 23, 2024; decision made precedential, Sept. 19, 2024). Further, it held, the affidavit is a minimal, reasonable burden and therefore violates neither the 1st nor 14th Amendment to the U.S. Constitution. *Id.* at *12-13.

In *Williams*, Commonwealth Court dismissed the petition under the doctrine of laches because petitioners had failed to act with diligence and, given the compressed timeline for certifying and preparing a general election ballot, the delay was prejudicial. *Williams I*, 394 MD 2024, 2024 WL 3912684, at *5-6. The court also ruled against petitioners on the merits, for the reasons described in *Clymer I*.

Pennsylvania's Supreme Court affirmed both orders. *See Clymer v. Schmidt* ("*Clymer II*"), 67 MAP 2024, 2024 WL 4181585 (Pa. Sept. 13, 2024); *see also Williams v. Pa. Dep't of State* ("*Williams II*"), 25 WAP 2024, 2024 WL 4195131 (Pa. Sept. 16, 2024) (affirming consistent with *Clymer II*).

On September 16, the day of the *Williams II* decision, the Secretary certified the list of candidates for the 2024 general election ballot (with one exception for a

state house race in Luzerne County that was certified a week later). *Secretary of the Commonwealth Certifies 2024 Ballot for Nov. 5 General Election* (Sept. 16, 2024).[2]

Following that, voting began. As of October 1, mail ballots are available in 16 counties (including the three counties). Mail Ballot Availability (last visited Oct. 1, 2024).[3] More than 717,000 ballots have already been sent to the 1.45 million individuals who applied to vote in 2024 general election by mail. *See* Marks Decl. ¶¶ 4-6 (attached as Exhibit D). Nearly 23,000 of those ballots already have been returned. *Id.* ¶ 7. These numbers will climb as more counties send out mail ballots.

On September 25, 2024—76 days after Justice for All's nomination papers were first rejected, 55 days after they were finally rejected, and just 41 days before Election Day—plaintiffs commenced this action for emergency relief.

## ARGUMENT

### I.    Plaintiffs waited too long to file.

Plaintiffs' timing is reason alone to deny their motion for an injunction.

1.    Grants of federal injunctive relief must comport with principles of equity. *Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 199 (3d Cir. 2024). Requests for injunctive relief, therefore,

---

[2] Available at: https://www.pa.gov/en/agencies/dos/newsroom/secretary-of-the-commonwealth-certifies-2024-ballot-for-nov--5-g.html.

[3] Available at: https://www.pa.gov/en/agencies/vote/voter-support/ballot-availability.html.

may be denied solely because they were filed too late. *See Stein v. Cortés*, 223 F. Supp. 3d 423, 437 (E.D. Pa. 2016).

This principle is particularly applicable when a late-filed request for injunctive relief would substantially and harmfully change election administration.  In such instances, courts have repeatedly denied requests for injunctive relief on this basis alone. *E.g.*, *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423, 424 (2020) ("[L]ower federal courts should ordinarily not alter the election rules on the eve of an election."); *Bognet v. Secretary*, 980 F.3d 336, 363 (3d Cir. 2020), *vacated as moot* (affirming district court's denial of request for preliminary injunction based solely on timing of plaintiffs' request); *Stein*, 223 F. Supp. 3d at 437 (denying request for a recount based on facts known to plaintiffs long before they filed); *Republican Party of Pa. v. Cortes*, 218 F. Supp. 3d 396, 404-05 (E.D. Pa. 2016) (denying request enjoin restrictions on qualified poll watchers that was filed just weeks before Election Day);  *Pa. Democratic Party v. Republican Party of Pa.*, 16-5664, 2016 WL 6582659, at *5 (E.D. Pa. Nov. 7, 2016) (denying request for injunctive relief because it was sought just before Election Day).

Whether called "laches, the *Purcell* principle, or common sense," this bar against late and onerous election changes protects the orderly operation of elections. *Crookston v. Johnson*, 841 F.3d 396, 398 (6th Cir. 2016).

7

2.      These principles apply with full force here given the timing of plaintiffs' action. Even worse, nothing about plaintiffs' proposed "judicial fire drill" was necessary. *Republican Party of Pa.*, 218 F. Supp. 3d at 405.

As plaintiffs acknowledge, *see* Compl. ¶¶ 47-49, the Department posted to its website over the summer an FAQ document to inform political bodies of what they needed to submit by the August 1 nomination deadline. The FAQs informed political bodies that their presidential electors nominees needed to complete an affidavit. *Id.* That document was made publicly available on June 7, nearly two months before the filing deadline. Still, plaintiffs took no action in June.

On July 11, Dr. West's campaign submitted nomination papers to the Department. Dr. West's campaign was notified the same day that the nomination papers were being rejected for failing to include affidavits from presidential elector nominees. Compl. ¶¶ 55-58. Still, plaintiffs took no action in July.

On August 1, Dr. West's campaign re-submitted nomination papers without affidavits from all nominees for presidential elector and again was notified that papers would being rejected. Compl. ¶ 59. Still, plaintiffs filed no action in August.

While plaintiffs waited, others did pursue the very same claims plaintiffs raise here. The Constitution Party's nominees for presidential elector, President, and Vice President were likewise rejected for failing to provide the required affidavit from each elector. The Constitution Party's rejected nominees, however, filed an action

on August 5 seeking an order that the Department accept their nomination papers. *See Clymer I*, 2024 WL 4231289. There, Commonwealth Court agreed with the Department that, under Pennsylvania law, presidential electors must submit an affidavit and that that requirement does not violate the U.S. Constitution, *id.*, which the Pennsylvania Supreme Court affirmed. *Clymer II*, 2024 WL 4181585.

3.      This is not the first time that individuals associated with Justice for All have challenged the rejection of its nomination papers. On August 15, three purported electors asked Commonwealth Court to issue the same relief requested here. *Williams I*, 2024 WL 3912684, at \*2-4. Pennsylvania's Commonwealth Court concluded that even the August 15 filing was too late. Relying on the facts described above, Commonwealth Court held that petitioners had acted with "a lack of due diligence," especially because the affidavit requirement "was available for public view online even before that." *Id.* at \*6. Under the circumstances there (and here), diligence would have "required immediate filing of a statutory and constitutional challenge" after being made aware of the affidavit requirement on July 11. *Id.* Even using August 1 as the relevant date, "there was a lack of due diligence in waiting 14 days to file the Petition." *Id.* The delay was unreasonable because with "the abbreviated time frames and impending deadlines set forth in the Election Code, time is of the essence and requires far more prompt action than that exercised [there]." *Id.*

9

Indeed, it is necessary feature of election litigation in Pennsylvania that parties must pursue their interests expeditiously. For instance, objections to nomination papers the Department has accepted must be filed within seven days. 25 P.S. § 2937.

The delay here is significantly worse than in *Williams* and fundamentally at odds with what Pennsylvania demands of litigants to protect the Commonwealth's election administration. Plaintiffs not only failed to act based on the Department's FAQ, the July 11 rejection, or the August 1 rejection, but they also failed to act after the Commonwealth Court's August 23 decisions in *Williams I* and *Clymer I*.

Dr. West and Ms. Abdullah tried to intervene in *Williams* five days after Commonwealth Court had already dismissed it, *see* Appl. for Leave to Intervene, *Williams v. Pa. Dep't of State*, 25 WAP 2024 (Pa. Aug. 28, 2024), but otherwise took no action after an August 30 order denying their belated application to intervene, Order, *Williams v. Pa. Dep't of State*, 25 WAP 2024 (Pa. Aug. 30, 2024).

Nor did plaintiffs act promptly after the Supreme Court's decisions in *Clymer II* and *Williams II*, issued on September 13 and 16, respectively, or after the Secretary certified the list of candidates on September 16.

Instead, plaintiffs waited until nine days after the state-court nomination process had closed and the Secretary had certified the list of candidates. Whatever justification plaintiffs might produce for their delay, there is no excuse that would

10

justify granting their requested relief. Late requests for federal courts to enter disruptive relief cannot be countenanced.

Not only is the delay here even more pronounced that it was in *Williams*, but plaintiffs now ask a ***federal court*** for the very same relief a ***Pennsylvania court*** just denied as a matter of protecting administration of Pennsylvania's elections. Granting plaintiffs' requested relief at this juncture would exceed a federal court's proper role under any circumstances, *Democratic Nat'l Comm. v. Wisc. State Leg.*, 141 S. Ct. 28, 30-31 (2020) (Kavanaugh, J., concurring), but it would be especially improper to do after a state court ruled that an action filed more than a month before this one was too late for purposes of election administration.

Diligent parties could have—and did—raise the same claims being raised here much sooner. Plaintiffs here, however, waited until Election Day was near to act. The request for injunctive relief should be denied on that basis alone.

## II.   The Court cannot grant any meaningful relief this close to Election Day.

Because plaintiffs waited to file this action, administration of the 2024 election is already underway. Worse, the only conceivable relief available to plaintiffs would not place Justice for All's nominees on the ballot. Instead, it would only begin the state-law objection period applicable to all political body nominations. By the time that process concludes, preparations for Election Day will be largely at an end. The unavailability of relief is yet another reason to deny the request for an injunction.

11

### A.   Counties have already taken irreversible steps to prepare for the election.

When plaintiffs filed this action, administration of the 2024 general election had begun. Actions taken before plaintiffs filed this case make relief unobtainable.

Under Pennsylvania law, the Secretary must certify and transmit to county boards of elections the list of candidates that have been properly nominated for a general election. 25 P.S. § 2944. He must do so "as soon as possible" after the last day for filing substituted nomination certificates. For the 2024 general election, the last day to substitute nominations was August 22. *Id.* § 2941.

Pennsylvania's Supreme Court resolved the last nomination dispute for the 2024 general election on September 16, and the Secretary certified the list of candidates the same day. *Supra* at 5-6. Once the Secretary certified, counties began administering the election in the precise ways that federal courts are advised not to disrupt. The processes already underway cannot be modified, and certainly not "without significant cost, confusion, or hardship." *Merrill v. Milligan*, 142 S.Ct. 879, 881 (2022) (Kavanaugh, J., concurring) (describing when requests to change election procedures close to an election should be denied). Two aspects of the ongoing administration are most significant here.

1.     Counties are already printing ballots and making them available to the 1.45 million people who already have applied to vote by mail in the 2024 general election. *See* Marks Decl. ¶ 4. At the time of this filing, ballots are available to voters

in 16 counties, *supra* at 6, and have been mailed to more than 717,000 voters, Marks Decl. ¶ 6. Nearly 23,000 ballots have already been returned to county boards of elections. Marks Decl. ¶ 7. Many more counties will begin mailing ballots this week. And all counties must begin mailing ballots at least two weeks before Election Day, which this year is October 22. 25 P.S. §§ 3146.5(b)(1), 3150.15. Even counties that may intend to wait until that statutory deadline to begin mailing ballots must start printing ballots well in advance—and many have likely already done so.

The Election Code itself treats the printing of ballots as the final point after which changes cannot be made. Candidates listed on the ballot cannot be substituted even in the event of death once "the printing of ballots is started." 25 P.S. § 2941(b). This statutory limitation demonstrates that the Pennsylvania General Assembly sees the printing of ballots as an end point. Otherwise, election officials would have to resolve, among other issues, whether voters sent one ballot need to be sent a new one, whether to cancel initial ballots, whether and how to count a ballot if the voter returns only one ballot, how to prevent double voting, and how to canvass and count different ballot types on machines that will have been calibrated and tested for a single ballot type. These concerns would be particularly pronounced here given the hundreds of thousands of ballots already sent to voters.

Plaintiffs have already sought to use the mere pendency of this case to interfere with election administration in Pennsylvania. Although this Court has not

entered any order on the merits, and no county is a party, yesterday plaintiffs' counsel emailed every election director in the Commonwealth (but not their solicitors) intimating that they should stop processing mail ballots. *See* Sept. 30 Email to Election Directors (attached as Exhibit E). The Department had to respond to the counties, advising them that they were not subject to any order that they stop conducting their election administration.

2.     After the Secretary certified the list of candidates, counties began the required testing—referred to as "logic and accuracy" testing—of their electronic voting systems. Under the Election Code, counties must provide notice of when and where this testing will take place at least 40 days before Election Day, which was September 26 for the 2024 general election. 25 P.S. § 3031.10(d). Counties across the Commonwealth are providing the required notice and have begun their testing. *E.g.*, Berks County Notice (Sept. 19, 2024) (beginning testing on September 30)[4]; Erie County Notice (last visited Oct. 1, 2024) (beginning parts of testing on September 23 and other parts on September 30)[5]; Philadelphia County Notice (Sept. 17, 2024) (beginning testing on September 20).[6]

---

[4] Available at: https://www.berkspa.gov/departments/election-services/news/announcements/logic-accuracy-testing.

[5] Available at: https://eriecountypa.gov/departments/elections-voting/.

[6] Available at: https://vote.phila.gov/news/2024/09/17/2024-general-election-public-notice-of-logic-and-accuracy-testing/.

The Secretary, under his power to issue binding directives for "the operation of electronic voting systems," 25 P.S. § 3031.5(a), has provided instructions for this pre-election testing. Under the Secretary's directive, the required testing involves "a series of pre-election steps intended to ensure that ballots, scanners, ballot-marking devices, and all components of a county's certified voting system are properly configured and in good working order prior to being used in an election." *See* Directive 1 of 2024 at 1, *Directive on Logic & Accuracy Testing*, Version 3.0 (Mar. 7, 2024).[7]

Logic and accuracy testing must be conducted using the actual ballots for an election and so cannot begin until those ballots have been finally defined. Directive 1 at 2-3. Testing is intensive: Every piece of voting equipment must be confirmed to be working properly even if it will only be stored as a backup. Directive 1 at 8-9. Testing can take more than two weeks, especially in larger counties with more equipment. Logic and accuracy testing must be completed fifteen days before Election Day, which is October 21 for the 2024 election. Directive 1 at 1.

Because logic and accuracy testing is specific to the actual ballots to be used, changes to a ballot would require counties to recalibrate their voting systems and re-

---

[7] Available at: https://www.pa.gov/content/dam/copapwp-pagov/en/dos/resources/voting-and-elections/directives-and-guidance/2024-Directive-on-Logic-Accuracy-Testing-3.0.pdf

do logic and accuracy testing under timeframes that would not comply with the required notice provisions nor allow counties to meet the pre-election deadline.

### B.   Even if they were successful, Dr. West and Ms. Abdullah could not be certified as candidates until the brink of Election Day.

As far along as preparations are now, by the earliest time Justice for All's nominees could be certified, pre-election preparation will be nearly complete.

The relief plaintiffs request—and the only thing that the Secretary could be ordered to do—is to accept the nomination papers. Proposed Order (ECF No. 5). That relief, however, would not put Justice for All's nominees on the ballot—it simply would start a state process that *might* result in their placement on the ballot. As with every other political body's nomination papers, if Justice for All's nomination papers are accepted, they would be subject to an objections period before any of its candidates could be certified. 25 P.S. § 2937. The Election Code gives parties seven days from when nomination papers are filed to raise objections. *Id.* If the court determines that the nomination papers are defective or lack sufficient signatures, the nomination papers are set aside. *Id.*

Commonwealth Court usually moves swiftly to resolve objections, but its review and the subsequent appeals take time. For the 2024 general election, the last objection case was not resolved until six weeks after the nomination filing deadline. *See In re De La Cruz*, 56 EAP 2024, 2024 WL 4181581 (Pa. Sept. 13, 2024). A six-week objection period that begins now would not end until after Election Day. Even

16

cutting that period in half, objections would not be resolved until two weeks before Election Day. By that point: (1) every county will need to have completed their logic and accuracy testing; (2) every county will have need to have sent ballots to voters; (3) almost a million ballots (if not more) will have been delivered to voters; (4) election day ballots will be printed; and (5) hundreds of thousands of ballots will likely have been returned. Adding a new candidate to the ballot at such a stage is irreconcilable with the required timing of Pennsylvania's election preparations.

Even if Justice for All's nominations are not set aside during objections, Dr. West and Ms. Abdullah are ineligible to serve together as President and Vice President unless one moves to a new state. *See* U.S. Const. amend. XII; Compl. ¶¶ 14-15.

### III.   The presidential elector affidavit requirement is constitutional.

Finally, the Pennsylvania Election Code—not the Department's interpretation—requires political bodies to submit a one-page affidavit for each presidential elector candidate. *See Clymer I*, 2024 WL 4231289, at *6-*11, *aff'd*, *Clymer II*, 2024 WL 4181585. Plaintiffs are not likely to succeed on their claims (and indeed have failed allege facts plausibly showing) that this requirement imposes an unconstitutional burden in violation of the First and Fourteenth Amendments.

Requiring each presidential elector to provide basic identifying information and affirm both their willingness to undertake the role and their compliance with the Election Code is a modest task that is more than justified by the Commonwealth's

interests. Indeed, that some of the Justice for All presidential electors listed on nomination papers would not provide affidavits because they "became unwilling or unable to serve in that role," Plfs' Br. at 9, vividly illustrates why the affidavit requirement is necessary. That the Election Code imposes different (and weightier) requirements on major political parties does not render the affidavit requirement unconstitutional.

1.      To evaluate federal equal protection and associational challenges to ballot access regulations, courts "consider what burden is placed on the rights which plaintiffs seek to assert and then [] balance that burden against the precise interests identified by the state and the extent to which these interests require that plaintiff's rights be burdened." *Rogers v. Corbett*, 468 F.3d 188, 193-94 (3d Cir. 2006) (applying the *Anderson-Burdick* test to "both associational and equal protection" claims). Severe burdens must be justified by compelling state interests, while lesser burdens that impose "'only reasonable, nondiscriminatory restrictions' on constitutional rights" can be justified by a "State's important regulatory interests." *Mazo v. N.J. Sec'y of State*, 54 F.4th 124, 145-46 (3d Cir. 2022).

Under federal law, "alternate ballot access rules for major and minor political parties are not *per se* unconstitutional." *See Rogers*, 468 F.3d at 196; *accord In re Zulick*, 832 A.2d 572, 581 (Pa. Cmwlth. 2003) ("[T]he [U.S.] Supreme Court has held that the different treatment of minor political parties from other political parties

18

does not violate their equal protection."). There are "obvious differences in kind be-
tween the needs and potentials of a political party with historically established broad
support, on the one hand, and a new or small political organization on the other,"
that justify different paths to the ballot. *Jenness v. Fortson*, 403 U.S. 431, 441
(1971); *see also, e.g.*, *Am. Party of Texas v. White*, 415 U.S. 767, 781 (1974) (up-
holding law differentiating between major political parties and smaller political par-
ties); *Indep. Party of Florida v. Secretary*, 967 F.3d 1277, 1284 (11th Cir. 2020)
(upholding law that minor political organizations must submit obtain signatures from
at least one percent of all registered voters to gain ballot access).

2.      Here, the affidavit requirement imposes only a modest burden. Political
bodies have about six months to complete their nomination papers. 25 P.S.
§ 2913(b); Consent Decree, *Libertarian Party v. Davis*, No. 84-26 (E.D. Pa. June
13, 1984) (establishing filing deadline). During that time, each of the 19 candidates
for presidential elector must complete a one-page affidavit in which they attest to
routine facts about themselves, including, among other things, where they live, that
they want to serve as an elector, that they are eligible, and that they were not recently
affiliated with a political party. 25 P.S. § 2911(e). The affidavit need not even be
notarized—candidates can submit an unsworn statement with the affidavit instead.
*In re Turner*, 291 A.3d 519, 524 (Pa. Cmwlth. 2023). When submitting their

19

nomination papers, political bodies pay the same filing fee as major political parties. 25 P.S. § 2914; *contra* Plfs' Br. at 22, 27.

Political bodies may (and do) consult with the Department about what is required to complete nomination papers. If a political body submits flawed nomination papers before the filing deadline, the Department provides notice of the error and an opportunity to correct it—as it did for Justice for All. Compl. ¶¶ 55-58; *see* July 30, 2024 Rejection Notices, Exhibit 4 to Answer, *Williams v. Schmidt*, 394 MD 2024 (Pa. Cmwlth. Aug. 19, 2024) (attached as Exhibit A).

Nothing about the affidavit requirement alters a political body's task of gathering signatures for its nomination papers. *Contra* Plfs.' Br. at 18-19. With or without an affidavit, electors need to be listed on nomination papers. 25 P.S. §§ 2912(b), 2913(a); *id.* § 2913(a). If a political body has gathered signatures for an elector who no longer wishes to serve, whether new signatures would be needed would be entirely independent of the affidavit requirement. Plaintiffs' issue with the affidavit seems to be that it reveals if individuals are willing and able to serve. Plfs' Br. at 18-19. But this is a burden only if political bodies should be permitted to nominate ineligible or unwilling people.

Assessing the actual effect of the affidavit requirement does not require the Court to blind itself to a political body's own choices that impeded its access to the ballot. Justice for All chose to list individuals as presidential electors without first

confirming each individual's contact information and willingness and eligibility to serve. And Justice for All chose to wait until July 30 to attempt to correct its paperwork, despite receiving notice from the Department of the deficiency on July 11 and despite having nearly six months to prepare the nomination paperwork to begin with.

Nor does the affidavit requirement bind a political body to its nominees in perpetuity. Instead, the Election Code permits a political body to substitute any nominated presidential elector candidate for any reason so long as the substituted nomination certificate is filed 75 days before Election Day. 25 P.S. §§ 2940, 2941(a); *see In re Scroggin*, 237 A.3d 1006, 1019 (Pa. 2020). For the 2024 general election, this deadline was August 22. For a vacancy caused by death, substitutions can be made any time before ballots are printed. *Id.* § 2941(b).

3.      The minimal burden of completing the affidavit is justified.

First, and specific to political bodies, the affidavit ensures that major political parties and unsuccessful primary candidates cannot misuse the political body nomination process to get a second bite at the apple. *Contra* Plfs.' Br. at 22-23, 27-28. To that end, political body candidates must affirm that they were not registered with a political party 30 days before that year's primary or an unsuccessful candidate in that primary. 25 P.S. §§ 2911.1, 2911(e)(5)-(6), 2936(e); *Zulick*, 832 A.2d at 581-82. The Commonwealth has a strong interest in "maintaining the integrity of the various routes to the ballot" and thereby the "stability of its political system." *De La*

21

*Fuente v. Cortes*, 751 F. App'x 269, 273-74 (3d Cir. 2018) (quoting *Storer v. Brown*, 415 U.S. 724, 733, 736 (1974)) (upholding constitutionality of disaffiliation and "sore loser" rules); *see also Zulick*, 832 A.2d at 581-82 (recognizing importance of state interest in preventing nomination of "sore loser" candidates). The disaffiliation requirement is especially important given that Pennsylvania does not punish so-called "faithless electors."

Second, the affidavit is a statement that the candidate is eligible. Requiring a candidate to attest to facts pertinent to their candidacy is a long-standing anti-fraud mechanism. *Scroggin*, 237 A.3d at 1018-19. These interests have made completing the affidavit an essential part of a political body's nominations. *Id.* at 1019. Here, the affidavit served its purpose because two potential presidential elector candidates crossed off the disaffiliation language, Candidate Affidavits, Exs. 7-8 to *Williams* Answer (attached as Exhibit A), thereby admitting that they are ineligible to serve as presidential electors for Justice for All.

Third, the affidavit confirms that the individual is willing to serve as a presidential elector. In Pennsylvania, as in the rest of the country, members of the public do not directly vote for President and Vice President. Instead, the public votes for presidential electors who then vote for President and Vice President at the electoral college. U.S. Const. art. II, § 1; U.S. Const. amend. XII; 3 U.S.C. § 1; 25 P.S. § 3191 (selecting electors by popular vote). This vital role is anything but "negligible."

22

*Contra* Plfs.' Br. at 7. As described below, Pennsylvnia has an interest in ensuring that a political body's candidates for presidential elector comprise a full slate and are willing and able to serve in the electoral college. In this very case, plaintiffs admit that some individuals it nominated as presidential elector "became unwilling or unable to serve in that role" despite having their names listed on nomination papers signed by more than 13,000 voters. Plfs' Br. at 9, 20. The same thing reportedly happened in Arizona. *See supra* at 3 n.1. Without the affidavit requirement, therefore, the Department has no way to ascertain if a political body's slate of presidential elector candidates is both genuine and willing to serve.

4.     The affidavit requirement does not make the nomination process for political bodies more rigorous than that for major political parties—and certainly not in an unreasonable way. *Contra* Plfs' Br. at 20-23. Setting aside that core components of the affidavit (the disaffiliation and "sore loser" language) are uniquely addressed to political bodies' candidates, the affidavit is one part of a nomination process that otherwise shields political bodies from the rigors of the process that political parties must follow. *See Zulick*, 832 A.2d at 582.

To nominate its candidates, major political parties must go through a lengthy primary election process. 25 P.S. § 2862. To get on the ballot for a primary, each major political party candidate must complete a separate nomination petition. *Id.* § 2867. Major political party nomination petitions: (1) must be circulated only in a

three-week span ahead of the primary election, (2) must be signed only by members of the respective political party and (3) require each candidate to submit a separate set of signatures. *Id.* §§ 2868, 2869. Candidates, including the delegates that choose a major political party's presidential candidate, also must complete an affidavit swearing to their qualification for the role. *Id.* § 2870. Candidates who win the primary will appear on the general election ballot, with an exception for President, Vice President, and presidential electors (the latter of whom do not run in a primary election). Delegates elected at the primary will select the presidential nominee, who in turn nominates presidential electors. 25 P.S. § 2878.

The process for political bodies to nominate candidates is more straightforward. Rather than a primary, political bodies may nominate all their statewide candidates for a general election, including presidential electors, with a single set of nomination papers and a single set of supporting signatures. 25 P.S. § 2911. Those signatures may come from any qualified voter regardless of political affiliation. *Id.* § 2911(c). Those signatures also may be gathered over a six-month period. 25 P.S. § 2913(b); Consent Decree, *Libertarian Party v. Davis*, No. 84-26 (E.D. Pa. June 13, 1984). Nominees need to complete a one-page affidavit with routine facts about themselves. 25 P.S. § 2911(e).

While it is true that the Election Code does not require a major political party's presidential elector candidates to complete these affidavits, Plfs' Br. at 21-22, that

does not make the process less onerous. It only makes it different. And those differ-
ences are warranted. *Clymer*, No. 376 MD 2024, 2024 WL 4231289, at \*13 (con-
cluding the General Assembly could reasonably impose different requirements on
political bodies given less transparent nomination process). A major political party
has gone through a primary process and nominated its delegates, and then its presi-
dential candidate, in a highly publicized manner. A political body, however, nomi-
nates electors without the public review or accountability that is attendant to the
major political parties' nomination process.

This case vividly illustrates why it is reasonable for the Commonwealth to
require a political body to have its presidential electors submit a single-page affidavit
providing contact information and acknowledging eligibility and compliance with
state law. Indeed, "States have important interests in protecting the integrity of their
political processes from frivolous or fraudulent candidacies, in ensuring that their
election processes are efficient, in avoiding voter confusion caused by an over-
crowded ballot, and in avoiding the expense and burden of run-off elections." *Zulick*,
832 A.2d at 579 (quoting *Clements v. Fashing*, 457 U.S. 957, 965 (1982)) (citing
cases recognizing these interests).

## CONCLUSION

For the reasons described above, the Court should deny Plaintiffs' motion
for temporary restraining order and dismiss this action.

October 1, 2024

Respectfully submitted,

Kathleen M. Kotula (No. 86321)
Kathleen A. Mullen (No. 84604)
Pennsylvania Department of State
306 North Office Bldg.
401 North Street
Harrisburg, PA 17120-0500

/s/ *Jacob B. Boyer*

Jacob B. Boyer (No. 324396)
Steven R. Kovatis (No. 209495) (pro hac vice forthcoming)
Office of General Counsel
333 Market Street, 17th Floor
Harrisburg, PA 17101
jacobboyer@pa.gov
(717) 460-6786

*Counsel for Department of State and Secretary of the Commonwealth Al Schmidt*

## <u>CERTIFICATE OF SERVICE</u>

I, Jacob B. Boyer, certify that I have caused all parties to be served on this date with the foregoing via the Court's ECF system.


Date: October 1, 2024                          /s/ *Jacob B. Boyer*
                                               Jacob B. Boyer