# Exhibit C

Received 8/15/2024 3:16:12 PM Commonwealth Court of Pennsylvania

Filed 8/15/2024 3:16:00 PM Commonwealth Court of Pennsylvania
394 MD 2024

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| AUTUMN WILLIAMS, ABRAHAM DARAMAY, and JONATHAN MARK DANIELS, | : | No. _____ MD 2024 |
| Petitioners, | : | |
| v. | : | |
| PENNSYLVANIA DEPARTMENT OF STATE and AL SCHMIDT, IN HIS CAPACITY AS SECRETARY OF THE COMMONWEALTH, | : | |
| Respondents. | | |

## NOTICE TO PLEAD

TO: PENNSYLVANIA DEPARTMENT OF STATE; and AL SCHMIDT, IN HIS CAPACITY AS SECRETARY OF THE COMMONWEALTH

You are hereby notified to file a written response to the enclosed petition for review within thirty (30) days from service hereof or a judgment may be entered against you.

Dated: August 15, 2024

/s/ Matthew H. Haverstick
Matthew H. Haverstick (No. 85072)
KLEINBARD LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Ph: (215) 568-2000
Fax: (215) 568-0140
Eml: mhaverstick@kleinbard.com

*Attorneys for Petitioners*

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| AUTUMN WILLIAMS, ABRAHAM DARAMAY, and JONATHAN MARK DANIELS, | : : : | No. _____ MD 2024 |
|  | : |  |
| Petitioners, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| PENNSYLVANIA DEPARTMENT OF STATE and AL SCHMIDT, IN HIS CAPACITY AS SECRETARY OF THE COMMONWEALTH, | : : : : |  |
|  |  |  |
| Respondents. |  |  |

## PETITION FOR REVIEW IN THE NATURE OF MANDAMUS AND DECLARATORY JUDGMENT

### I.    INTRODUCTION

1.    With the 2024 general election less than three months away, Respondents Pennsylvania Department of State (the Department) and Secretary of the Commonwealth Al Schmidt (the Secretary), are attempting to preclude from the ballot a political body's candidates for President and Vice-President of the United States, based on an interpretation of the Election Code that contravenes not only settled principles of statutory construction, but also the State and Federal Constitution.

2.      Specifically, as described in greater detail below, nomination papers were timely filed with the Secretary seeking to have the names of Cornel West and Melina Abdullah printed on the general election ballot as candidates for president and vice-president, respectively, of the Justice for All political body (the West/Abdullah Nomination Papers). The West/Abdullah Nomination Papers were filed before the applicable deadline, contained signatures from over thirteen thousand qualified Pennsylvania electors, and were accompanied by candidate affidavits (together with the requisite fees) duly executed by West and Abdullah.

3.      Nevertheless, the Secretary has refused to recognize the candidacy of West and Abdullah for President and Vice-President, respectively because the West/Abdullah Nomination Papers were not accompanied by Candidate Affidavit forms executed by each of the nineteen individuals designated as the West/Abdullah presidential electors. The Secretary's decision is predicated on its view—albeit one that is textually unsupported and constitutionally infirm—that a political body's "presidential electors" are "candidates" under the Election Code and, thus, must comply with the strictures applicable to all other candidates.

4. Because presidential electors of political bodies are not "candidates for a[] public office" under Section 951 of the Election Code, 25 P.S. § 2911(a), the Secretary's refusal to accept and acknowledge receipt of the West/Abdullah Nomination Papers contravenes his non-discretionary ministerial duties under said statutory scheme.

5. Further, even if textually supportable, the Secretary and Department's interpretation of the Election Code violates the State and Federal Constitution, as it arbitrarily imposes significant additional burdens on political bodies beyond those required of political parties, without any discernible state interest to justify the disparate treatment.

6. Accordingly, Petitioners request that this Court: (1) issue a writ of mandamus compelling the Secretary to accept the West/Abdullah Nomination Papers in accordance with his statutory obligations; (2) declare Respondents' interpretation of Section 951 of the Election Code an unlawful *de facto* regulation under the Pennsylvania Regulatory Review Act, *see* 71 P.S. §§ 745.1, *et seq.*, and enjoin Respondents from enforcing the same; (3) declare Respondents' interpretation of Section 951 unconstitutional under the Equal Protection clauses of the State and Federal Constitution and enjoin

further enforcement of said interpretation; and (4) declare Respondents'
interpretation of Section 951 unconstitutional under the State
Constitution's Free and Equal Elections Clause.

## II.    JURISDICTION

7.    This Court has original and exclusive jurisdiction over this
Petition for Review pursuant to 42 Pa.C.S. § 761(a)(1), because it is an
action against the Commonwealth government and against officers of
the Commonwealth acting in their official capacities.

## III.   PARTIES SEEKING RELIEF

8.    Petitioner Autumn Williams is a registered Pennsylvania
voter, residing at 104 Midway Aly, Mr. Morris, PA, 15349, who was
listed as a presidential elector on the West/Abdullah Nomination Paper.
Petitioner Williams also signed as a petitioner on the West/Abdullah
Nomination Papers.

9.    In the event West and Abdullah prevail in the November
2024 election, Petitioner Williams intends to carry out her duties as a
presidential elector and, thus, has a substantial, direct, and immediate
interest in ensuring that West and Abdullah can access the ballot.

10. In addition, Petitioner Willaims is among the three individuals who are on the "committee . . . authorized to fill vacancies, if any shall occur[.]" 25 P.S. § 2912; *see also id.* at § 2940 ("In case of the death or withdrawal of any candidate nominated by any political body by nomination papers, the committee named in the original nomination papers may nominate a substitute in his place by filing in the proper office a substituted nomination certificate[.]").

11. As such, Petitioner Williams also has an interest in ensuring that candidates of the Justice for All political body are treated in a manner that comports with the Election Code, the Pennsylvania State Constitution, and the United States Constitution.

12. Petitioner Abraham Daramay is a registered Pennsylvania voter, residing at 518 Primos Ave., Folcroft, PA 19032, and has been designated as a presidential elector for West/Abdullah, replacing one of the individuals originally identified on the West/Abdullah Nomination Paper, who is no longer willing or able to serve as a presidential elector.

13. Petitioner Jonathan Mark Daniels is a registered Pennsylvania voter, residing at 1943 E. Orleans St., Philadelphia, PA 19134, and has been designated as a presidential elector for

West/Abdullah, replacing one of the individuals originally identified on the West/Abdullah Nomination Paper, who is no longer willing or able to serve as a presidential elector.

14.    Because Petitioners Daramay and Daniels have been denied the opportunity to serve as presidential electors for the West/Abdullah ticket as a result of Respondents unlawful actions, they have a substantial, direct, and immediate interest in Respondents' compliance with the ministerial duty to accept the West/Abdullah Nomination Papers.

15.    Unless and until Respondents are directed to comply with their statutory duty, all three Petitioners are entirely foreclosed from acting as presidential electors and exercising the attendant rights and duties.

16.    Similarly, Petitioner Williams, as a petition signer, has a substantial, direct, and immediate interest in Respondents' compliance with their statutory duty to accept West/Abdullah Nomination Papers. Petitioner Williams is unable to vote for her chosen political body candidate unless and until Respondents comply with their statutory duty.

17.     Because Respondents' interpretation of Section 2911 unfairly treats political *bodies* and political *parties* differently, Petitioners' right to vote is significantly burdened. In fact, the burdens in this case are so substantial, that they constitute an effective denial of the right to vote.

## IV.    GOVERNMENT UNITS WHOSE INACTION IS IN ISSUE

18.     The Department is an Executive Branch Agency under the leadership of the Secretary of the Commonwealth, *see* 71 P.S. § 273, vested with only such powers as are granted to it by statute.

19.     The Secretary is the Secretary of the Commonwealth who has certain enumerated responsibilities under the Election Code, including, *inter alia*, the power and duty "[t]o certify to county boards of elections for primaries and elections the names of the candidates for President and Vice-President of the United States," 25 P.S. § 2621(c), and "[t]o receive and determine, as hereinafter provided, the sufficiency of nomination petitions, certificates and papers of candidates for President of the United States[.]" *Id.* at § 2621(d).

20.     The determination sought to be reviewed is Respondents' refusal to accept the West/Abdullah Nomination Papers in violation of their statutory obligation and based on a textually and constitutionally

untenable interpretation of the Election Code's requirements relative to candidate affidavits.

## V.    STATEMENT OF MATERIAL FACTS

### A. Nomination of candidates for President and Vice-President of the United States under the Election Code.

21.    Generally, the Election Code provides for two avenues through which candidates for President and Vice-President of the United States may have their names printed on the general election ballot: (1) nomination by major political *parties*; 25 P.S. §§ 2861-2883; or (2) nomination by political *bodies* (including "minor political parties"); 25 P.S. §§ 2911-2914.

22.    Although this action centers on the latter method—*i.e.*, nomination by a political bodies—a brief discussion of both methods is necessary to fully appreciate the pervasive infirmities in the Secretary's statutory construct.

23.    Under the Election Code, any party whose share of the registered voters statewide is equal to or greater than fifteen percent and at least one of whose candidates polled above a certain minimum threshold is deemed a "political party." 25 P.S. §§ 2831(a); 2872.2.

24.     25 Pa. Stat. Ann. § 2831 (West)[1]

25.   For decades, the Republican and Democratic parties have been the only parties that have met the criteria to enjoy "political party" status.

26.   Each political party is entitled to choose its nominee for President and Vice President of the United States at the party's national convention.

27.   Thereafter, the presidential candidate of each political party chooses a slate of presidential electors. *See* 25 P.S. § 2878.

28.   Although the Election Code provides that a party's presidential electors must be chosen within thirty days, failure to do so is in no way fatal to the candidacy of a political party's presidential

---

[1] Although Section 801 defines a "political party," as "[a]ny party or political body, one of whose candidates at the general election next preceding the primary polled in each of at least ten counties of the State not less than two per centum of the largest entire vote cast in each of said counties for any elected candidate, and polled a total vote in the State equal to at least two per centum of the largest entire vote cast in the State for any elected candidate, is hereby declared to be a political party within the State[.]" *Id.* at § 2831(a).  But under Section 912.2, any "political party as defined in section 801(a) or (b) whose State-wide registration is less than fifteen per centum of the combined State-wide registration for all State-wide political parties as of the close of the registration period immediately preceding the most recent November election[,]" is defined as a "minor political party." *Id.* at § 2872.2(a).  Currently, the Libertarian party is the only minor political party in Pennsylvania. However, because the ballot-access process for political bodies and minor political parties is identical in all respects relevant here, the term "political body," as used here, includes "minor political parties."  *See id.* ("Notwithstanding any other provision in this act to the contrary, minor political parties shall nominate all of their candidates for the offices to be filled at the ensuing November election pursuant to section 9031 in accordance with the requirements of section 951, other than subsection (e)(6) and (7) thereof,2 and section 954,3 and shall obtain the required signatures during the same time frame available to political bodies.").

candidate, provided that the designation is made "as soon as may be possible after the expiration of thirty days." *Id.*

29.     Notably, this provision does not require presidential electors to submit affidavits, or pay any fees; rather, all that is required is the presidential elector's name and address.  *See id.* ("The names of such nominees, with their residences and postoffice addresses, shall be certified immediately to the Secretary of the Commonwealth by the nominee for the office of President or Vice-President, as the case may be, making the nominations.").

30.     By contrast, a political party whose total share of statewide support is below the aforementioned threshold, or a political body, which is defined as an "an independent body of electors," 25 P.S. § 2602, nominates its candidates for the general election—including candidates for President and Vice-President—by filing nomination papers, in accordance with certain requirements, as set forth in Section 951 through 954 of the Election Code. *See* 25 P.S. §§ 2911-2914.

31.     Section 951 provides that "nomination of candidates for any public office may also be made by nomination papers signed by qualified

electors of the State, or of the electoral district for which the nomination is made, and filed in the manner herein provided." *Id.* at § 2911(a).

32.    Nomination papers of presidential candidates must be signed by at least five thousand qualified electors, *see id.* at § 2911(b),[2] and be accompanied by "an affidavit of each ***candidate*** nominated therein[,]" making certain attestations.  *See id.* at § 2911(e).

33.    In terms of eligibility, Section 951.1 of the Election Code provides that "[a]ny person who is a registered and enrolled member of a party during any period of time beginning with thirty (30) days before the primary and extending through the general or municipal election of that same year shall be ineligible to be the candidate of a political body in a general or municipal election held in that same year.  *Id.* at § 2911.1.

34.    Furthermore, under Section 954, "each candidate nominated by a nomination paper" must submit "[t]he same filing . . . as required

---

[2] Although Section 951(b) imposes a substantially higher signature requirement, *see* 25 P.S. § 2911(b), in *Constitution Party of Pa. v. Cortés*, No. 12-2726, Doc. No. 115 (E.D. Pa. Feb. 1, 2018), the United States District Court for the Eastern District of Pennsylvania found the requirement unconstitutional and replaced it with a 5,000 signature minimum for presidential candidates.  By its terms, the decision in *Constitution Party of Pa.* only applies to the three political bodies and minor political parties who lodged the complaint.  However, the Secretary has recognized that the Court's rationale would likely apply with equal force to all bodies and parties that are required to nominate their candidates by nomination papers and, thus, has announced that the Department would accept nomination papers that comply with the minimum signature requirements interposed by *Constitution Party of Pa.*

in section 913 for the filing of nomination petitions by candidates for nomination to the same office." *Id.* at § 2914.

35. The Department details its interpretation of these provisions on its website under a page titled "Third Party Nomination Paperwork." *See* https://www.pa.gov/en/agencies/dos/programs/voting-and-elections/running-for-office/third-party-nomination-paperwork.html#accordion-21c3b2a9ea-item-f2eb7b4ba2 (last visited Aug. 5, 2024).

36. Inexplicably—and without grappling with the multitude of absurdities engendered by such a construct—the Department has taken the position that every individual designated as a presidential elector by a political body is a "candidate."

37. Among other things, according to the Department, presidential electors must submit the candidate affidavit required under Section 951(e) of the Election Code. Specifically, the frequently asked questions portion of the Department's website provides, in relevant part:

> **Do presidential electors need to complete the Candidate's affidavit?**

> Yes, minor political party and political body candidates for the office of presidential elector must file candidates' affidavits by the August 1 deadline. 25 P.S. §§ 2911(e), 2913(a).

*Id.*

38.     The Department has also taken the position that the

disaffiliation requirements set forth in Section 951.1 of the Election

Code apply to presidential electors:

> **Do presidential electors submitting nomination papers need to have the same party affiliation as the candidate?**
>
> No, but any person who is a registered and enrolled member of the Democratic, Republican, or Libertarian party during any period of time beginning thirty (30) days before the primary and extending through the general or municipal election of that same year is ineligible to be a candidate for presidential elector of a political body in a general or municipal election held in that same year. 25 P.S. § 2911(e).

*Id.*

39.     The Nomination Paper form created by the Department also

requires candidates for President and Vice-President to list all nineteen

presidential electors on each sheet.

40.     For example, the Department's website provides:

> **Does a Presidential candidate need to provide all 19 electors, or can they have less than that?**
>
> A presidential candidate must nominate 19 individuals to serve as candidates for the office of presidential elector.

*Id.*

## B. The role of Presidential Electors under the Election Code.

41. In Pennsylvania, once designated, the individual presidential electors of the respective candidates for President of the United States remain largely unknown to the general public and have virtually no involvement in the political process until several weeks after the election.

42. Most importantly, the names of presidential electors are nowhere listed on the ballot or any of the election materials provided to voters by election officials.

43. Nor do any of the Election Code's various public notice provisions require disclosure of the names of presidential electors.

44. Similarly, as a practical matter, it is exceedingly difficult for voters to ascertain the identities of the presidential electors.

45.    For example, the names of presidential electors do not appear on the Department's "Candidate Database," or its "Unofficial List of Candidates," or in any other portion of the Department's website.

46.    Indeed, upon information and belief, the Department does not publicly disclose—except to specific individuals who requested such information—the identity of the individual presidential electors prior to the election.

47.    Once the results of the presidential election have been ascertained, Section 1502 of the Election Code provides that the individuals designated to act as electors by the winning presidential candidate "assemble at the seat of government of this Commonwealth [*i.e.*, Harrisburg], at 12 o'clock noon of the day which is, or may be, directed by the Congress of the United States, and shall then and there perform the duties enjoined upon them by the Constitution and laws of the United States."  25 P.S. § 3192.

48.    Under Section 1504, each presidential elector is entitled to "the sum of three dollars for every day spent in traveling to, remaining at, and returning from, the place of meeting aforesaid, and shall be entitled to mileage at the rate of three cents per mile to and from his

home, to be computed by the ordinary mail route between their homes and the place of meeting aforesaid." *Id.*

49. And if any of the presidential electors selected by the winning candidate die, "or for any cause fail to attend at the seat of government at the time appointed by law," Section 1503 provides that "the electors present shall proceed to choose viva voce a person of the same political party as such deceased or absent elector, to fill the vacancy occasioned thereby[.]" *Id.* at 3193.

50. With no mention of presidential electors in any other statute, the above provisions are the extent of the powers and duties of the presidential electors.

## C. The West/Abdullah Nomination Papers and Respondents' failure to accept the same

51. The West/Abdullah Nomination Papers, containing over 13,000 signatures, were timely submitted in accordance with the above statutory requirements.

52. In addition, West and Abdullah paid the relevant filing fee, and attached submitted their respective candidate affidavits. *See* 25 P.S. § 2911(b)-(e); *see also id.* at § 2914.

53.    But the Secretary rejected the West/Abdullah Nomination Papers because they did not contain 19 individual candidate affidavits for every presidential elector.

54.    Despite Petitioners' disagreement with Respondents' interpretation of Section 951 of the Election Code, Petitioner Williams and People over Party attempted to cure this alleged infirmity with the West/Abdullah Nomination Papers.

55.    Between July 31, 2024 and August 1, 2024, People Over Party engaged in substantial efforts to contact their presidential electors to secure candidate affidavits.

56.    In its efforts to contact the presidential electors, People Over Party learned that various electors no longer wished to serve in that role.

57.    The Committee to Fill Vacancies met and nominated the necessary replacement electors.

58.    People Over Party diligently continues to seek candidate affidavits from all presidential electors, including replacement electors.

59.    The Secretary refused to accept the West/Abdullah Nomination Papers or any efforts to cure the alleged infirmities.

60. Despite his statutory non-discretionary obligation to accept the Nomination Papers, 25 P.S. §§ 2621(d), the Secretary has rejected the West/Abdullah Nomination Papers and, absent judicial intervention, will not comply with his duty to certify to the county boards of elections West's name as a candidate for President, and Abdullah's name as a candidate for Vice-President.

## VI.   COUNTS

### COUNT ONE: MANDAMUS
### (FAILURE TO FULFILL MANDATORY DUTIES UNDER THE ELECTION CODE)

61. Petitioners incorporate the above paragraphs as though set forth herein at length.

62. Mandamus is a common law writ "used to compel official performance of a ministerial act when a petitioner establishes a clear legal right, the respondent has a corresponding duty, and the petitioner has no other adequate remedy at law." *Tindell v. Dep't of Corr.*, 87 A.3d 1029, 1034 (Pa. Cmwlth. 2014) (citing *Danysh v. Wetzel*, 49 A.3d 1, 2 (Pa. Cmwlth. 2012)).

63. A ministerial act in the context of mandamus is one that a public office is "required to perform upon a given state of facts and in a

prescribed manner in obedience to the mandate of legal authority." *Philadelphia Firefighters' Union v. Philadelphia*, 119 A.3d 296, 303 (Pa. 2015) (quoting *County of Allegheny Deputy Sheriff's Assn v. County of Allegheny*, 730 A.2d 1065, 1067-68 (Pa. Cmwlth. 1999)).

64.    Moreover, mandamus will lie to compel an agency to act, whether its inaction is formally pronounced, or the agency instead is "sitting on its hands." *See Chanceford Aviation Props, LLC v. Chanceford Twp. Bd. of Supervisors*, 923 A.2d 1099, 1108 (Pa. 2007).

65.    Indeed, where the Secretary refuses to accept a candidate's nomination petition or paper based on a mistaken interpretation of the law, mandamus has long been recognized as the proper vehicle for compelling performance of that duty. *See, e.g.*, *Fraenzl v. Sec'y of Com. of Pa.*, 478 A.2d 903, 906 (Pa. Cmwlth. 1984) (granting candidate's application for peremptory relief in an action for mandamus where the Secretary rejected the congressional candidate's nomination paper based on an erroneous interpretation of the Election Code); *Hamilton v. Johnson*, 141 A. 846, 848 (Pa. 1928) (recognizing that "if there is a refusal to accept a [nomination] petition in proper form" mandamus is an appropriate remedy).

66. Here, the Secretary had a duty under Section 201 of the Election Code, *see* 25 P.S. § 2621(d), to accept the West/Abdullah Nomination Papers because they were timely submitted, contained a sufficient number of signatures, and were accompanied by the affidavits of West and Abdullah, as required by Section 951. *See Fenerty v. Lawrence*, 27 Pa. D. & C. 640, 642 (Dauph. Cnty. Comm. Pl. Pa. 1936).

67. Insofar as the Secretary has rejected the West/Abdullah Nomination Papers because they were not accompanied by candidate affidavits of nineteen presidential electors, the Secretary has woefully misconstrued the Election Code.

68. Specifically, Section 951(e) of the Election Code requires submission of an "affidavit of each candidate nominated" by way of a nomination paper. 25 P.S. § 2911(e). But settled principles of statutory interpretation, presidential electors of political bodies are ***not*** "candidates nominated" in nomination papers.

69. Turning initially to the plain language of the statute, the Election Code defines "nomination" as "the selection, in accordance with the provisions of this act, of a candidate for a public office authorized to be voted for at an election." 25 P.S. § 2602(k).

70.    But presidential electors do not hold a "public office."

71.    Pennsylvania Courts have long recognized that "public office" means "an elective or appointive position in which the incumbent is exercising a governmental function which involves a measure of policy making and which is of general public importance." *Appeal of Bowers*, 269 A.2d 712, 716–17 (Pa. 1970); *see also Com. ex rel. McCreary v. Major*, 22 A.2d 686, 688 (Pa. 1941); *accord Bedeski v. Greater Nanticoke Area Sch. Dist.*, 427 A.2d 1269, 1271 (Pa. Cmwlth. 1981) ("It is also the law in this Commonwealth that the key considerations in determining whether one is a public officer are the nature of the office, the powers wielded, and the responsibilities which are carried out.").

72.    Presidential electors do not exercise any "measure of policy making" or "independent public duties," but rather, serve a function that is ceremonial and ministerial function ministerial and ceremonial.

73.    Accordingly, presidential electors are not "candidates" required to submit nomination papers.

74.    Indeed, although the issue has seemingly evaded review in Pennsylvania, multiple appellate courts from other jurisdictions have held, in the specific context of nominations for president by minor

political parties or political bodies, that presidential electors do not hold a "public office." *See, e.g.*, *Spreckels v. Graham*, 228 P. 1040, 1043 (Cal. 1924); *State v. Gifford*, 22 Idaho 613, 126 P. 1060, 1068 (1912); *see also Markham v. Bennion*, 252 P.2d 539, 544 (Utah 1953).

75.   The Secretary's treatment of presidential electors as "candidates" is also inconsistent with the ordinary definition of the term, as used in common parlance.

76.   A central component of being a candidate for elective office is having one's name presented to the electorate and a corresponding opportunity by the voters to cast a vote for that candidate.

77.   Presidential electors' names, however, appear nowhere ballots and, indeed, there is no method for voters to readily identify the presidential electors.

78.   In fact, even those voters who could, through some effort, ascertain the identity of each presidential candidates' presidential elector, they are required to vote for the entire slate of presidential electors and are not permitted to vote for different presidential electors than those chosen by the named candidate.

79. That presidential electors are not "candidates" is further demonstrated by the fact that the space provided for writing in the name of a candidate permits only the presidential/vice-presidential candidate's name to be written; no opportunity is afforded for writing in the names of presidential electors.

80. Indeed, this distinction between electors and candidates makes sense given the hallmarks of candidacy, such as campaign fundraising and reporting, participating in recounts, and ultimately being elected to public office.

81. Presidential electors never form a campaign committee, fundraise, appear on a ballot, nor do they fulfil any governmental function beyond the ceremonial act of meeting in Harrisburg for a short period and memorializing that which is already a foregoing conclusion by that point.

82. In fact, as best as Petitioners can tell, no presidential elector—for a political party or body—has ever filed a campaign finance report or statement that is required of *all* candidates. *See* 25 P.S. § 3246(a).

83. Nor has the Department ever included presidential electors in the list of candidates who have failed to file such reports in the list it is required publish under Section 1639 of the Election Code. *See* 25 P.S. § 3259(10) (requiring the department, among other things, to "[p]ublish a list of all those candidates and their committees who have failed to file reports as required by this act within six (6) days of their failure to comply").

84. Simply put, electors are not candidates in any sense of the term and, to the extent Respondents contend otherwise, it is based on a flawed reading of the statute.

85. To the extent there is any doubt regarding the plain language of the state, the Election Code is—at best—ambiguous regarding the requirements for electors of third-party candidates.

86. Applying settled principles used by courts to resolve ambiguities in statutory language, including the constitutional avoidance doctrine and the "longstanding and overriding policy in this Commonwealth to protect the elective franchise[,]" the only legally sound interpretation of Section 951 is that presidential electors are not candidates. *See Pa. Democratic Party v. Boockvar*, 238 A.3d 345, 360-61

(Pa. 2020) (cautioning that, in interpreting election matters, the Court is "mindful of the longstanding and overriding policy in this Commonwealth to protect the elective franchise" (internal citations and quotation marks omitted)).

87.    Petitioners' right to relief is clear because the Election Code does not require presidential electors to submit candidate affidavits and no provision of law permits Respondents to ignore their legal non-discretionary obligations to accept and approve the West/Abdullah Nomination Papers.

88.    Petitioners are without any other recourse because only Respondents have the obligation to accept and approve the West/Abdullah Nomination Papers.

89.    Because Respondents failed to adhere to their mandatory, non-discretionary obligation to accept and approve the West/Abdullah Nomination Papers, and there is no alternative to mandamus, Petitioners are entitled to mandamus as a matter of law.

## COUNT TWO: DECLARATORY AND INJUNCTIVE RELIEF (VIOLATION OF THE ELECTION CODE AND THE REGULATORY REVIEW ACT)

90.    Petitioners incorporate the above paragraphs as though set forth herein at length.

91.     A party may obtain a declaration of existing legal rights, duties, or status of parties by filing a petition under the Declaratory Judgments Act, 42 Pa.C.S. §§ 7531, *et seq.*

92.     The purpose of the Declaratory Judgments Act is to "settle and afford relief from uncertainty with respect to rights, status, and other legal relations, and to be liberally construed and administered." *See Bayada Nurses, Inc. v. Dep't of Labor & Indus.*, 8 A.3d 866, 874 (Pa. 2010) (citing 42 Pa.C.S. § 7541(a)).

93.     Here, Petitioners assert that Respondents are required by the Election Code to accept and approve the West/Abdullah Nomination Papers as presented for submission.

94.     On the other hand, Respondents take the position that the West/Abdullah Nomination Papers cannot be accepted unless every elector submits a candidate affidavit.

95.     As set forth above, Respondents' interpretation is fundamentally flawed.

96.     Respondents have a duty to accept and approve the West/Abdullah Nomination Papers. See 25 P.S. § 2621(d).

97.    To the extent Respondents maintain that all nineteen presidential electors are required to submit candidate affidavits, for the reasons set forth above, this interpretation misconstrues the Election Code.

98.    In fact, Respondents' instruction requiring electors to submit candidate affidavits is contrary to the plain language of the Election Code and, therefore, not binding. *See Com. ex rel. Fisher v. Jash Intern., Inc.*, 847 A.2d 125, 133 (Pa. Cmwlth. 2004) ("Only where the language of a statute is ambiguous should we defer to an administrative agency's interpretation of a statute the agency is charged to enforce.").

99.    But even if Respondents' interpretation of the Election Code is reasonable, it cannot and does not have the force of law unless it is formally promulgated. *See Marcellus Shale Coalition v. Dep't of Envtl. Prot.*, 216 A.3d 448, 459 (Pa. Cmwlth. 2019) (explaining that agency regulations are valid and binding only when they are (1) adopted within the agency's granting power, (2) issued pursuant to proper procedure, and (3) reasonable).

100. Respondents' informal interpretation of this provision was never promulgated in accordance with the Regulatory Review Act, which sets forth detailed notice and publication requirements.

101. Moreover, Respondents' instruction requiring presidential electors to submit candidate affidavits is contrary to the plain language of the Election Code and, therefore, not binding. *See Com. ex rel. Fisher v. Jash Intern., Inc.*, 847 A.2d 125, 133 (Pa. Cmwlth. 2004) ("Only where the language of a statute is ambiguous should we defer to an administrative agency's interpretation of a statute the agency is charged to enforce.").

102. At best, the Election Code is ambiguous regarding the requirements for electors of third-party candidates. Under the settled principles of statutory construction, the best interpretation of Section 951 is that presidential electors are not candidates. *See Pa. Democratic Party v. Boockvar*, 238 A.3d 345, 360-61 (in interpreting election matters, the Court is "mindful of the 'longstanding and overriding policy in this Commonwealth to protect the elective franchise.'").

103. Accordingly, there exists a clear legal dispute between Petitioners and Respondents regarding the requirements of the Election Code and the duties of Respondents under the same.

104. Declaratory judgment from the Court will resolve this legal controversy between the parties.

105. Because Respondents have a duty to accept the West/Abdullah Nomination Papers, Petitioners are entitled to declaratory judgment to resolve the present legal dispute.

### COUNT III: DECLARATORY AND INJUNCTIVE RELIEF (VIOLATION OF THE EQUAL PROTECTION CLAUSES OF THE PENNSYLVANIA AND UNITED STATES CONSTITUTIONS)

106. Petitioners incorporate the above paragraphs as though set forth herein at length.

107. Article I, Section 26, the equal protection clause of the Pennsylvania Constitution, provides that "[n]either the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right." Pa. Const. art. I, § 26.

108.  Its federal counterpart, the Fourteenth Amendment to the United States Constitution ensures that no state shall deny to any person equal protection of the laws. U.S. Const. amend. XIV.

109.  The equal protection clause ensures that like persons in like circumstances will be treated similarly under the law. *Commonwealth v. Albert*, 758 A.2d 1149, 1151 (Pa. 2000).

110.  In instances such as these, an intermediate level of scrutiny is required for equal protection claims "to weigh, against the burdens imposed, any plausible justification the State has advanced for imposing unequal burdens on major and minor parties." *Working Families Party v. Commonwealth*, 209 A.3d 270, 283 (Pa. 2019) (quoting *Reform Party of Allegheny Cnty. v. Allegheny Cnty. Dep't of Elections*, 174 F.3d 305, 315 (3d Cir. 1999)).

111.  Respondents' interpretation and application of Section 951 of the Election Code treats political bodies differently than political parties with no plausible justification to support the burden this differing treatment imposes.

112. Political parties are not required to submit their slate of presidential electors until thirty days after the parties have nominated

their candidate for president, let alone submit candidate affidavits for every single presidential elector. *See* 25 P.S. § 2878.

113.  Moreover, a political party's failure to submit the names of presidential electors within the time allotted does not affect the party's candidate's rights to appear on the ballot. *See generally* 25 P.S. § 2878 ("If for any reason the nominee of any political party … fails or is unable to make the said nomination within the time herein provided, then the nominee … shall, as soon as may be possible after the expiration of thirty days, make the nominations.").

114.  Requiring all presidential electors for third-party candidates, such as the electors for West/Abdullah, to submit candidate affidavits at the time of nomination paper submission is a substantial burden.

115.  Petitioners here, for instance, are out of the state and country for various reasons at the time West/Abdullah Nomination Papers were due, as one elector was in Nicaragua, one elector is caring for an ill family member out of state, and one elector has been suffering from mental health concerns. Petitioners' will should not be thwarted simply because the presidential electors cannot timely complete an extra-statutory requirement of candidate affidavits.

116. On the other hand, there is *no* discernable state interest or justification advanced by subjecting political bodies, such as Justice for All, to onerous requirements that do not apply to political parties.

117. There is no basis for this requirement in the Election Code and, even if there was, there is no discernable state interest for treating political bodies differently than political parties for the appointment of presidential electors.

118. Because the burden caused by the Department's interpretation is severe and it advances no state interest, the Department's interpretation of Section 951 of the Election Code violates the equal protection clauses of the Pennsylvania and United States Constitutions.

## COUNT IV: DECLARATORY AND INJUNCTIVE RELIEF (VIOLATION OF THE FREE AND EQUAL ELECTIONS CLAUSE OF THE PENNSYLVANIA CONSTITUTION)

119. Petitioners incorporate the above paragraphs as though set forth herein at length.

120. Article I, Section 5 of the Pennsylvania Constitution, commonly known as the Free and Equal Elections Clause, guarantees that "[e]lections shall be free and equal[.]" Pa. Const. art. I, § 5.

121.  The free and equal elections clause "guarantees our citizens an equal right, on par with every other citizen, to elect their representatives." *League of Women Voters v. Commonwealth*, 178 A.3d 737, 804 (Pa. 2018). In other words, Article I, Section 5 "mandates that all voters have an equal opportunity to translate their votes into representation." *Id.*

122.  The history of Article I, Section 5 is grounded in the "desire to secure access to the election process," and an intent to establish "a critical 'leveling' protection in an effort to establish the uniform right of the people of this Commonwealth to select their representatives in government." *Id.* at 807.

123.  As our Supreme Court has explained,

[E]lections are free and equal within the meaning of the Constitution when  they are public and open to all qualified electors alike; when every voter has the same right as every other voter; when each voter under the law has the right to cast his ballot and have it honestly counted; when the regulation of the right to exercise the franchise does not deny the franchise itself, or make it so difficult as to amount to a denial; and when no constitutional right of the qualified elector is subverted or denied him.

*Id.* at 810 (quoting *Winston v. Moore*, 91 A.3 520, 523 (Pa. 1914)).

124. Respondents' interpretation of Section 951 threatens all five of these considerations that are the touchstone of free and equal elections within the meaning of Article I, Section 5.

125. First, Respondents' interpretation that all presidential electors for political bodies must submit candidate affidavits with Nomination Papers does not leave elections open to all qualified electors. Instead, it places an onerous requirement on political bodies and their electors that their counterpart political bodies do not have.

126. Second, similarly, Respondents' interpretation effectively changes the rights of voters for political parties as opposed to voters of political bodies. Because political bodies cannot secure their candidates place on the ballot without complying with an extra-statutory requirement and completing candidate affidavits for every single presidential elector, voters like Petitioners are treated differently than voters and presidential electors of political parties.

127. Third, under Respondents' onerous interpretation of the law, not every voter under the law has the right to cast his or her ballot and have it counted because political bodies have less access to the ballot,

thereby preventing Petitioners and other political body voters from even being able to cast a vote for their chosen candidates.

128. Fourth, Respondents' interpretation of the Election Code is so onerous that it amounts to a denial of the right to exercise the franchise because it requires political bodies to jump through hoops that political parties do not, making it more difficult for political body candidates to be on the ballot so that Petitioners and other voters may cast their vote for them. Here, Respondents' interpretation of the Election Code entirely precludes West and Abdullah from appearing on the ballot, thereby denying Petitioners' right to exercise the franchise.

129. Fifth, because of Respondents' interpretation that treats political bodies differently and unfavorably, the constitutional rights of Petitioners and other voters are denied.

130. Respondents' interpretation of Section 951 undermines the purpose and mandate of the free and equal elections clause and amounts to unequal treatment of different voters and presidential electors based solely on whether they support a political body as opposed to a political party.

131. Accordingly, Respondents' interpretation and actions are in violation of Article I, Section 5.

## VII.  RELIEF REQUESTED

WHEREFORE, Petitioners request that the Court enter judgment in their favor and grant the following relief:

1. Grant a writ of mandamus compelling the Secretary and the Department to accept and approve the West/Abdullah Nomination Papers;

2. Declare Respondents' interpretation of Section 951 of the Election Code an unlawful *de facto* regulation under the Pennsylvania Regulatory Review Act and enjoin Respondents from enforcing the same;

3. Declare Respondents' interpretation and application of Section 951 violates the equal protection clauses of the Pennsylvania and United States Constitution; and

4. Declare Respondents' interpretation and application of Section 951 violates the free and equal election clause of the Pennsylvania Constitution.

5.     Grant such further relief as the Court deems just and proper.

Respectfully submitted,

Dated: August 15, 2024          /s/ Matthew H. Haverstick
                                Matthew H. Haverstick (No. 85072)
                                Shohin H. Vance (No. 323551)
                                Samantha G. Zimmer (No. 325650)
                                KLEINBARD LLC
                                Three Logan Square
                                1717 Arch Street, 5th Floor
                                Philadelphia, PA 19103
                                Ph: (215) 568-2000
                                Fax: (215) 568-0140
                                Eml: mhaverstick@kleinbard.com
                                svance@kleinbard.com
                                szimmer@kleinbard.com

                                *Attorneys for Petitioners*