IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CORNEL WEST AND MELINA ABDULLAH, GERALDINE TUNSTALLE, KATHERINE HOPKINS-BOT, AND CHARLES HIER, | No. 2:24-cv-01349 <br><br> (*filed electronically*) |
| Plaintiffs, | |
| v. | |
| PENNSYLVANIA DEPARTMENT OF STATE AND AL SCHMIDT, IN HIS CAPACITY AS SECRETARY OF THE COMMONWEALTH, | |
| Defendants. | |

**PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF MOTION FOR TEMPORARY RETRAINING ORDER AND PRELIMINARY INJUNCTION**

**I.     BACKGROUND**

Because this Court is familiar with the background, only a brief recitation of the relevant facts follows. Cornel West and Melina Abdullah, Presidential and Vice-Presidential candidates for Justice for All, timely submitted their Nomination Papers to Defendants on July 11, 2024. The West/Abdullah Nomination Papers contained over 13,000 signatures, had candidate affidavits for West and Abdullah, and were complete with the filing fee. The Department refused to accept the West/Abdullah Nomination Papers because they did not include a candidate affidavit for every single one of Candidates' 19 presidential electors. As detailed in Plaintiffs' Complaint, this rejection is based on the Defendants' interpretation that,

1

under Section 951 of the Election Code, *see* 25 P.S. § 2911, every individual designated as a presidential elector by a political body is a "candidate for public office" that must submit a candidate affidavit and otherwise comply with the requirements applicable to "candidates for public office. *See, e.g., id.* at § 2911. The upshot of this interpretation, as relevant here, was that Justice of All was forced to not only identify all nineteen electors before it could begin circulating nomination petitions and submit candidate affidavits from that slate of electors by election day.

By late July 2024, it became increasingly apparent that the magnitude of the burden imposed by Defendants' interpretation of Section 951 was such that Plaintiffs West and Abdullah (the Candidates) would be unable to obtain affidavits from each of the nineteen individuals listed as presidential electors by the August 1, 2024 deadline. And indeed Candidates' Nomination Papers were subsequently rejected and returned to him on August 6, 2024. On August 15, 2024, an action was commenced in the Commonwealth Court of Pennsylvania seeking to compel the Pennsylvania Department of State and Secretary of the Commonwealth Al Schmidt to accept Candidates' Nomination Papers. *See Williams v. Pennsylvania Dep't of State*, 394 M.D. 2024 (Pa.Cmwlth.). The Commonwealth Court denied relief based on laches on August 23, 2023 and that decision was affirmed by way of single-sentence *per curiam* order.

There after, Plaintiffs filed a verified complaint in this matter, alleging that Defendants' interpretation of Section 951 of the Election Code violates their rights under the First and Fourteenth Amendments to the United States Constitution

and, simultaneously therewith, filed the present Motion for Temporary Restraining Order and Preliminary Injunction, requesting a preliminary injunction: (1) prohibiting Defendants from enforcing their unconstitutional interpretation of Section 951; and (2) directing the Secretary to accept the Candidates' Nomination Papers and certify the names of Cornel West and Melina Abdullah as candidates for President and Vice-President of the United States, respectively.

## II. ARGUMENT

In their principal brief in support of the present request for injunctive relief, Plaintiffs provided a detailed exposition of the pervasive constitutional infirmities associated with Defendants' interpretation of Section 951, as applied to them, and explained their right a preliminary injunction under prevailing caselaw.  In response, Defendants maintain that relief should be denied because (1) this action was not timely commenced; (2) meaningful relief cannot be granted at this juncture; and (3) Defendants' interpretation of Section 951 is constitutional.  As discussed below, however, one of these arguments are ultimately persuasive.

*First*, as it pertains to timeliness, not only are the authorities offered by Defendants largely inapposite, but even if applicable, they do not permit—let alone require—denial of relief without a hearing.

*Second*, Defendants' suggestion that meaningful relief cannot be granted is also fundamentally flawed, as it is predicated unproven factual allegations that are not of record coupled with rank speculation.  And in any event, Defendants' arguments in this regard rest on the legally unsupported notion that, even if they

are compelled to accept the West/Abdullah Nomination Papers, Candidates names cannot be certified and printed on the ballot until expiration of the statutorily prescribed period for filing objections to the Nomination Papers.

*Third*, Defendants' lengthy defense of the general statutory scheme pertaining to nominations by political bodies is largely unresponsive, as it does not squarely address the two specific issued implicated here: (a) the combined practical effect of Defendants' interpretation of Section 951; and (b) the nature and import of the interest advanced by such a construct.

### A. Defendants' timeliness arguments are not well taken.

As it pertains to Defendants' lead argument—*i.e.*, that "Plaintiffs' timing is reason alone to deny their motion for an injunction[,] Br. at 6—this assertion is unpersuasive for a number of reasons. Most fundamentally, **none** of the authorities offered by Defendants suggest that "[r]equests for injunctive relief . . . may be denied **solely** because they were filed too late." Br. at 6 ((emphasis added) (citing *Stein v. Cortés*, 223 F. Supp. 3d 423, 437 (E.D. Pa. 2016)). To the contrary, while timing was a consideration militating against granting injunctive relief, in each of the cases cited by Plaintiffs, courts assessed the merits, weighed the evidence, and balanced the equities—with proper regard for how timing may impact the conduct of an imminent election. In short, therefore, those decision stand for the unremarkable proposition that, pursuant to the United Statues Supreme Court's decision in *Purcell*, courts should be mindful of the potential impact that injunctive relief may have on an impending election.

Notably, however, Defendants do not purport to rely on *Purcell*, making only a single passing reference to it.  Defendants' approach in this regard is no accident, since courts have been nearly unanimous in expressly rejecting Defendants' formulation of timeliness.  *See, e.g.*, *Kim v. Hanlon*, 99 F.4th 140, 160 (3d Cir. 2024). To begin, with respect to the argument that timing alone is a sufficient basis for denying relief, as the Third Circuit Court of Appeals explained in *Kim*, "*Purcell* is a consideration, not a prohibition, it is ***just one*** among other 'considerations specific to election cases' that we must weigh for injunctive relief." *Kim*, 99 F.4th at 160 ((emphasis added) (citing *Democratic Nat'l Comm. v. Wis. State Legislature*, 141 S. Ct. 28, 31 (2020) (Kavanaugh, J., concurring in denial of application to vacate stay)).

Accordingly, *Purcell* is properly viewed as a factor that is considered in weighing the equities (*i.e.*, the third and fourth factor in injunction parlance).  And because the burden with respect to those elements is on Defendants—not Plaintiffs—they must adduce sufficient credible evidence to show that the public interest militates against the relief sought.[1]

Moreover, even if *Purcell*, under limited circumstances, be the sole basis for denying relief, its framework is inapposite here. As noted by *Kim*, the principal

---

[1] *See Newspaper, Newsprint, Magazine & Film Delivery Drivers, Helpers, & Handlers, Int'l Bhd. of Teamsters, Local Union No. 211 v. PG Publ'g Co., Inc.*, 425 F.Supp.3d 421, 426 (W.D. Pa. 2019) (Ranjan, J.) (citing *Neo Gen Screening, Inc. v. TeleChem Int'l, Inc.*, 69 F. App'x 550, 554 (3d Cir. 2003)), *rev'd and remanded on other grounds sub nom. Newspaper, Newsprint, Magazine & Film Delivery Drivers, Helpers & Handlers, Int'l Bhd. of Teamsters, Local Union No. 211 v. PG Publ'g Co, Inc.*, 804 Fed.Appx. 174 (3d Cir. 2020).

concern underlying *Purcell* is that last minute **rule** changes may "result in voter confusion and consequent incentive to remain away from the polls[,]" and "[a]s an election draws closer, that risk will increase." *Id.* (quoting *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006)); *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423, 424 (2020) ("This Court has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election."). Thus, "[t]he focus of the *Purcell* principle . . . is on avoiding election issues that could lead to voter confusion shortly before an election." *Id.* But here, Plaintiffs are not seeking any changes to "rules" and, in any event, the relief they seek would not create any confusion that would disincentivize voting. To the contrary, far from having the disenfranchised effect that *Purcell* seeks to forestall, relief here would broaden and protect the right to the franchise. In short, because "*Purcell* is not a magic wand that defendants can wave to make any unconstitutional election restriction disappear so long as an impending election exists[,]" Defendants timeliness concerns—without more—are an insufficient reason to deny relief. *People First of Alabama v. Sec'y of State for Alabama*, 815 Fed.Appx. 505, 514 (11th Cir. 2020).

To the extent Defendants' suggest that Plaintiffs are barred by laches, that argument also fails for several reasons. Most fundamental, because "[t]he question of laches is factual and is determined by examining the circumstances of each case[,]" *JTH Tax LLC v. Foster*, 691 F.Supp.3d 691, 710 (W.D. Pa. 2023) (Ranjan,

J.),[2] it generally cannot preclude relief without a hearing. *See Fenton v. Balick*, 821 F.Supp.2d 755, 761–62 (E.D. Pa. 2011); *see also Twp. of Piscataway v. Duke Energy*, 488 F.3d 203, 214–15 (3d Cir. 2007) (explaining that laches turns on "factual determinations that typically should be made after a full evidentiary hearing"); *see also* 27A Am. Jur. 2d Equity § 168 ("Where a defendant asserts the laches defense, a full hearing of testimony on both sides of the issue is required." (citing *Baker v. Nason*, 236 F.2d 483, 493 (5th Cir. 1956) (laches is "affirmative defenses and call[s] for a full hearing of the testimony of both sides"))).

    Indeed, Defendants do not explain how this Court could determine whether any limited "delay" here was inexcusable, or whether it was justified. And even more importantly, Defendants cannot explain how a finding of prejudice may be made without further factual development. In short, because these timeliness (or laches) arguments are predicated on several factual allegations that are not of record, dismissal is inappropriate without a hearing.

    Moreover, aside from being based on unproven facts, Defendants' formulation of inexcusable delay is also legally flawed for several reasons. To begin, Defendants overlook a central prerequisite to filing any federal action—standing, which requires a showing of actual injury that is non-speculative. Here, the specific injury to Plaintiffs' constitutional rights that is the basis for the Complaint (*i.e.*, denial of

---

[2] *Accord Westport Ins. Corp. v. Hippo Fleming & Pertile Law Offices*, 349 F.Supp.3d 468, 485 (W.D. Pa. 2018) ("The question of whether laches applies is a question of law, but the question of laches itself is factual and is determined on a case-by-case basis."), *aff'd*, 791 Fed.Appx. 321 (3d Cir. 2019)

the right to access the ballot) did not crystalize until the Nomination Papers were rejected. Accordingly, until it became clear that they would be precluded from accessing the ballot, the harm to Plaintiffs was not sufficiently concrete and particularized to confer the standing necessary to bring the present claim. Accordingly, Defendants assertion that this action should have been filed when Plaintiffs first became aware of the interpretation of Section 951 in question.

In this connection, Defendants also misunderstand the nature of Plaintiffs' constitutional claim. Specifically, while a facial challenge to the constitutionality of Section 951 (arguably) could have been brought earlier, an as-applied challenge such as this one could not have been brough until it became clear that the magnitude of the burden on Plaintiffs was constitutionally intolerable. Here, as alleged in the Complaint, Plaintiffs did not even ***begin*** to feel the magnitude of the burden imposed by Defendants' statutory construct until a few days before the August 1, 2024 deadline. Thus, even if this Court were to conclude that Plaintiffs did not have to suffer the full measure of the injury before their injury was sufficient to confer standing, the earliest point at which an action could have been brought is early July.

Yet, even under such a relaxed standing construct, Plaintiffs can hardly be considered to have slept on their rights. As an initial matter, despite finding Defendants' conduct profoundly unfair, in the waning months of July, Plaintiffs were diligently attempting to take all reasonable steps necessary to gather the affidavits to access the ballot. Plaintiffs cannot charged with laches under such

circumstances, since "[a]ttempts to resolve a dispute without resorting to a court do not constitute unreasonable delay." *Leonard v. United Airlines, Inc.*, 972 F.2d 155, 158 (7th Cir. 1992).

The short period of time between August 6, 2024—the date on which the West/Abdullah Nomination Papers were returned to Candidates, thus, making it clear that an amicable resolution was unlikely—and August 15, 2024 also cannot be characterized as inexcusable. As a matter of common sense and sound administration of justice, "a short delay while the plaintiff diligently seeks counsel and examines its claim does not rise to the level of an inexcusable delay." *Beattie v. Line Mountain Sch. Dist.*, 992 F.Supp.2d 384, 396 (M.D. Pa. 2014). Thus, Plaintiffs cannot be barred from relief merely because they took some time to assess the situation and consider the viability of a legal challenge.[3]

Moreover, once a group of presidential electors for Candidates filed the state court action on August 15, 2024, Plaintiffs properly refrained from filing a federal action alleging the constitutional violations at issue here. For starters, had Plaintiffs brough this action at any point between August 15 and September 16, they would have been barred from relief under any number of abstention doctrines governing involvement by the federal judiciary in matters that are pending resolution in a state court.

---

[3] Thus, Defendants' assertion that the delay between the conclusion of the state court proceedings and the commencing of the present action was inexcusable is similarly unsound.

Furthermore, where suit has already been filed that would inure to a party's benefit, it is not required to seek independent relief—or even intervene—on pain of laches. *See S. Pac. Co. v. Bogert*, 250 U.S. 483, 489–90 (1919); *see also Overfield v. Pennroad Corp.*, 39 F.Supp. 482, 486 (E.D. Pa. 1941).[4] In this connection courts have also recognized that plaintiffs seeking equitable relief (as here), will not be barred by laches because they do not commence suit until resolution of an action at law that "had a similar object but proved unavailing[.]" *Hoehn v. Crews*, 144 F.2d 665, 671 (10th Cir. 1944). Thus, Plaintiffs acted appropriately in awaiting the outcome of the state court proceedings before initiating this action.

### B. Defendants' impossibility of execution argument is based on untested factual allegations and, in any event, misstates the law.

The Department's assertion that meaningful relief cannot be offered is similarly unavailing. As to the Department's suggestion that "[a]ctions taken before plaintiffs filed this case make relief unobtainable[,]" these arguments are predicated almost entirely on unproven—and, importantly, untested—factual averments. The precise nature of the actions that were taken in the short period between September 16 and 25, as well as the purported impossibility or difficulty of implement relief, are fact issues that be established until this Court holds the evidentiary hearing scheduled to occur on October 7, 2024.

---

[4] And in event, despite not being required to do so, Plaintiff Candidates ***did*** seek to intervene in the Supreme Court, while the state court action was pending review, but were unsuccessful.

As for the purportedly impossibility of crafting meaningful relief because of the period for lodging objections to nomination papers, simply put, the Department wants to have its cake and eat it too. Having rejected West/Abdullah Nomination Papers at the outset, the Department now complains that there is insufficient time to allow petition challenges if he is placed on the ballot. When, with proper care, the Department of State should have accepted West/Abdullah Nomination Papers, starting the clock on nomination papers' objections. At that point, the West/Abdullah Nomination Papers could have been challenged, or, if so inclined, the Department could have challenged the sufficiency of the electors itself. The relevant law does not empower the Department of State to thwart ballot progress, rather the Department took it upon itself to reject the West papers by fiat. The preemptive action by the Department in this case forced the extended litigation that now exists, and the Department should be prohibited from now claiming insufficient time to allow additional petition challenges. The Department cooked this situation from the outset. This should be reason alone to allow West to appear on the ballot if the Court finds that the statute is indeed unconstitutional.

Further, the right to file an objection to nomination petitions' is statutory and a matter of legislative grace; thus, it cannot be allowed to interfere with the constitutionally protected right of accessing the ballot. Stated differently, to the extent the two come into conflict, the privilege of filing objections must give way to Justice for All's constitutional right of accessing the ballot. This Court is, therefore, free to order relief that would bypass the objection procedure, if warranted to

ensure that West and Abdullah's constitutional rights are not violated.[5] Such relief would also be consistent with the general principle that "nomination petitions are presumed to be valid and an objector has the burden of proving that a nomination petition is invalid." *In re Stack*, 184 A.3d 591, 595 (Pa. Cmwlth. 2018) (internal quotation marks and citations omitted). The Department's interpretation, on the other hand, turns the presumption on its head, as it suggests that West's Nomination Papers are somehow only provisionally valid (or presumptively invalid) unless subject to objections.

### C. Defendants are unable to offer a coherent explanation for the disparate treatment of a political body's presidential electors.

Finally, with regard to the merits of the constitutional claim, Defendants arguments also fall short for a single overarching reason. Namely, the Department's rejoinder is largely unresponsive relative to the two principal issues here: (1) whether the combined practical effect of the Department's treatment of presidential electors as candidates constitutes a constitutionally sever burden, particularly when compared against the manner in which political parties appoint their presidential electors; and (2) what ***specific*** State interest is served by the differential treatment of a political body's presidential electors as "candidates for public office" subject to the affidavit requirements of Section 951.

---

[5] Courts routinely alter election timelines. Most recently, for example, the Supreme Court by order shortened response timelines. *See In re: Temporary Modification and Suspension of the Rules of Appellate Procedure and Judicial Administration for Appeals Arising Under the Pennsylvania Election Code,* Order No. 622 (Aug. 27, 2024).

With regard to the burden, the Department does not even attempt to address the combined impact of its interpretation of Section 951, which is thoroughly discussed in Plaintiffs' principal brief and, instead, attempts to justify the affidavit requirement.  But the fact that only a minimal burden is created by requiring submission of an affidavit is irrelevant, since the constitutional infirmity here arises primarily from the fact that Justice for All was required to identify its electors before it could circulate its papers and submit affidavits specifically from those electors.

But even on its own terms, Defendants' contentions do not withstand scrutiny, as they are unable to offer any credible justification for requiring affidavits from political bodies, but not electors.  Nor can the Department explain why exacting $4,200 from political bodies is necessary, when the major parties are granted ballot access free of charge.  The Department also does not explain why disaffiliation is an appropriate prerequisite in the ***specific*** context of presidential electors—since no party affiliation requirement exists for the electors of the major parties.  The list goes on.  But the point remains that the Department's attempts to justify the gross disparity in how presidential electors are treated do not pass muster.

### III.    CONCLUSION

Because Plaintiffs are likely to succeed on the merits their constitutional claims and the equitable considerations governing the Court's assessment is this context weigh in their favor, Defendants should be immediately enjoined from

enforcing their incorrect interpretation of Section 951 of the Election Code in a manner that is unconstitutional under the First and Fourteenth Amendments to the United States Constitution.

Respectfully submitted,

Dated: October 2, 2024

/s/ Matthew H. Haverstick
Matthew H. Haverstick (No. 85072)
Shohin H. Vance (No. 323551)
Samantha G. Zimmer (No. 325650)*
KLEINBARD LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Ph: (215) 568-2000
Fax: (215) 568-0140
Eml: mhaverstick@kleinbard.com
svance@kleinbard.com
szimmer@kleinbard.com

*Pro Hac Vice forthcoming*

/s/ J. Andrew Crompton
J. Andrew Crompton (No. 69227)*
Erik Roberts Anderson (203007)
Ryan T. Gonder (No. 321027)*
Matthew L. Hoke (No. 331634)*
McNEES WALLACE & NURICK LLC
100 Pine Street
Harrisburg, PA 17101
Ph: (717) 232-8000
Eml: dcrompton@mcneeslaw.com
eanderson@mcneeslaw.com
rgonder@mcneeslaw.com
mhoke@mcneeslaw.com

*Pro Hac Vice*

*Attorneys for Plaintiffs*