IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CORNEL WEST AND MELINA ABDULLAH, GERALDINE TUNSTALLE, KATHERINE HOPKINS-BOT, AND CHARLES HIER,<br><br>      Plaintiffs,<br><br>  v.<br><br>PENNSYLVANIA DEPARTMENT OF STATE AND AL SCHMIDT, IN HIS CAPACITY AS SECRETARY OF THE COMMONWEALTH,<br><br>      Defendants. | No. 2:24-cv-01349<br><br>(*filed electronically*) |

**PLAINTIFFS' POST-HEARING BRIEF IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND <u>PRELIMINARY INJUNCTION</u>**

In support of Plaintiffs' motion for a Temporary Restraining Order and Preliminary Injunction against the Pennsylvania Department of State and Al Schmidt in his capacity as Secretary of the Commonwealth, Plaintiffs file this post-hearing brief to supplement argument in the October 7, 2024 hearing on Plaintiff's motion. In support, Plaintiffs emphasize the following four points.

1

## I. *Purcell* Does Not Bar Plaintiffs' Requested Relief

The United States Supreme Court's timeliness decision in *Purcell v. Gonzalez*, 549 U.S. 1 (2006), does not bar relief in this case. Critically, *Purcell* involved a change in election **rules** and a request for injunctive relief, based on the change in question, "just weeks before an election." *Purcell*, 549 U.S. at 2-3. In other words, *Purcell* involved changes to procedural mechanisms governing how people vote. It did not involve changes to ballots like the requested relief here. As the Supreme Court explained in *Purcell*, the courts below failed to develop an adequate record that would allow a proper resolution of the issues presented given the "imminence of the election." *Id.* at 8. Here, however, Plaintiffs have not requested a change in election rules that would cause upheaval in administration and voter confusion. *See Democratic Congressional Campaign Committee v. Kosinski*, 614 F. Supp. 3d 20 (S.D. N.Y. 2022) (determining *Purcell* did not bar injunctive relief permitting voters an opportunity to cure absentee ballots because it does not alter any "'voter-facing' aspects of the upcoming elections").

This distinction in the relief requested is crystallized by interpretation of *Purcell*. In *Bryan v. Fawkes,* 61 V.I. 416 (V.I. 2014), for

example, the Supreme Court of the Virgin Islands distinguished *Purcell* and granted injunctive relief. Although noting that specific performance was complicated by early voting and issuance of absentee ballots, it held that "[t]he fact that the general election ballot has been printed and that some voters have already cast early or absentee ballots does not, without more, prevent this Court from fashioning appropriate relief with respect to ballots that have not yet been cast." 61 V.I. at 467, 469. In reaching that conclusion, the Court determined *Purcell* was not a bar to the relief, emphasizing the distinction that *Purcell* "did not involve challenges to a candidate's access to the ballot, but instead involved requests for courts to impose large-scale changes to the election process itself that affected both voters and poll workers." *Id.* Plaintiffs' requested injunctive relief here is not a change in procedure or rules. It is a change to the ballot to add candidates.[1]

Indeed, courts often grant relief adding candidate names to ballots close in time to the election. In *State ex rel. Peacock v. Latham*, 170 So. 475 (Fla. 1936), for example, the Florida Supreme Court held that a candidate substitution after absentee voting had commenced was not

---

[1] Defendants do not cite any cases where *Purcell* was applied in the context of ballot access cases. Additionally, there has never been a binding United States Supreme Court precedent explaining *Purcell*.

3

unlawful, despite the fact that absentee voting had begun. *See id.* at 480 ("There is nothing to prevent any who may have taken advantage of this liberal statute and prepared those ballots which are not to be used in the general election from procuring a proper ballot when the same shall have been printed and made available for that purpose. The inconvenience that may be caused by this is not comparable to the right acquired by a nominee to have his name printed on the official ballot."); *accord Johnston v. Ing*, 441 P.2d 138, 140 (Haw. 1968) (directing correction of ballots for use on election day, despite the fact that some absentee ballots had already been sent and returned).

In sum, *Purcell* does not bar the relief Plaintiffs' seek and it is not unprecedented or impossible for changes to the ballot close to the election.

## II. The Nomination Paper Challenge Procedure Does Not Bar Plaintiffs' Requested Relief

As set forth in Plaintiff's initial reply brief, Defendants' assertion that granting Plaintiff's requested relief would only open the process for challenging the sufficiency of the West/Abdullah Nomination Papers is unpersuasive. But even accepting the proposition that the nomination paper review process objection period starts if Plaintiffs are granted

4

relief, 25 P.S. § 2937, that statutory process does not overcome West and Abdullah's **constitutional** right to access to the ballot under the First and Fourteenth Amendments to the United States Constitution. Moreover, Plaintiffs' requested relief is consistent with the general principle that "nomination petitions are presumed to be valid and an objector has the burden of proving that a nomination petition is invalid." *In re Stack*, 184 A.3d 591, 595 (Pa. Cmwlth. 2018).

### III. There are No Government Interests Warranting the Denial of Plaintiffs' Requested Relief

As the hearing in this matter today illustrated beyond any doubt, Defendants have not proffered, demonstrated, or even attempted to demonstrate that the ballot provisions at issue in Section 951 of the Election Code serve **any** governmental interest. To reiterate, under the First and Fourteenth Amendments, this Court balances the character and magnitude of the injury to the constitutional right against "the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff[s'] rights." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 794 (1983). Where the burden on the right is

severe, strict scrutiny applies, meaning that it cannot pass constitutional muster unless it is narrowly tailored to advance a compelling state interest. *See Donald J. Trump for President, Inc. v. Boockvar*, 493 F. Supp. 3d 331, 384 (W.D. Pa. 2020). In the context of presidential elections, such burdens "implicate a uniquely important national interest," because state-imposed restrictions have "an impact beyond [the state's] own borders." *Anderson*, 460 U.S. at 794–95. Thus, the *Anderson/Burdick* framework is viewed only through the intermediate or strict scrutiny prism.

  Whether applying intermediate or strict scrutiny, it is clear that Defendants' arguments fail on the merits. Both at oral argument and in briefing, Defendants have failed to produce a single reason as to why the affidavit requirement for the Presidential and Vice-Presidential nomination petitions serves a government interest—let alone a significant or compelling government interest. The Defendants' lack of effort in this regard is telling, and that is because the affidavit requirement serves no governmental interest whatsoever apart from keeping qualified candidates from the ballot. To that end, Plaintiffs insist that any alleged affidavit requirement in Section 951 of the

Pennsylvania Election Code must bow to the United States Constitution.[2]

### IV. Defendants' Delay Arguments Fail on the Merits

Defendants' delay arguments fail because Plaintiffs' pace of play was in accord with two settled legal principles. First, Plaintiffs could not have, as Defendants suggested, simply filed their complaint in this Court before the state court proceeding concluded and sought a stay because a stay under those circumstances would not have been guaranteed. To explain, if Plaintiffs pursued their claims during the pendency of the state court action it is likely that an abstention doctrine would have precluded relief. In that case, this Court would have had the discretion to stay or dismiss Plaintiff's complaint. *See, e.g., Trump for President*, 481 F.Supp.3d at 502. Rather than risk a dismissal by this Court, Plaintiffs permissibly waited until the state court action was resolved to pursue this action. Second, before seeking injunctive relief from this Court, Plaintiffs were required to exhaust all legal remedies. *See James v. Richman*, 547 F.3d 214, 217 (3d Cir. 2008) (if there is "an adequate legal remedy, equitable relief would not be appropriate.").

---

[2] Defendants do not cite any cases applying rational basis as it relates to ballot access.

Thus, Plaintiffs were required to wait until the presidential electors pursued a legal remedy in state court via writ of mandamus. *See City of Pittsburgh v. Pa. Dep't of Transp.*, 416 A.2d 461, 464 (Pa. 1980) (observing that "[a]lthough an action in mandamus lies on the law side of the court, equitable principles guide the issuance of the writ and any grant of incidental relief."). Once the state court denied legal relief to the presidential electors, Plaintiffs truly had no legal remedy available to them, therefore making injunctive relief necessary. As explained in more detail in Plaintiffs' reply brief, the Department unlawfully rejected the West/Abdullah Nomination Papers and now claim that there is insufficient time for Mr. West and Mrs. Abdullah to be placed on the ballot. *See* Reply Br. at 11. This Court should reject Defendants' disingenuous timeliness claims and afford Plaintiffs the relief they seek.

### V. Conclusion

In sum, despite Defendants' best attempts, they cannot overcome the indisputable evidence presented at the hearing regarding the unequal treatment of Dr. West and his party, the total lack of evidence regarding any state interest for this unequal treatment, and the

controlling law that permits this Court to fashion a remedy to address this constitutional violation before the election next month. Accordingly, Plaintiff's request this Court grant its Motion and enter the attached proposed order.

|  | Respectfully submitted, |
|---|---|
| Dated: October 7, 2024 | /s/ Matthew H. Haverstick |

Matthew H. Haverstick (No. 85072)
Shohin H. Vance (No. 323551)
Samantha G. Zimmer (No. 325650)*
KLEINBARD LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Ph: (215) 568-2000
Fax: (215) 568-0140
Eml: mhaverstick@kleinbard.com
svance@kleinbard.com
szimmer@kleinbard.com

*Pro Hac Vice Forthcoming*

/s/ J. Andrew Crompton
J. Andrew Crompton (No. 69227)*
Erik Roberts Anderson (203007)
Ryan T. Gonder (No. 321027)*
McNEES WALLACE & NURICK LLC
100 Pine Street
Harrisburg, PA 17101
Ph: (717) 232-8000
Eml: dcrompton@mcneeslaw.com
eanderson@mcneeslaw.com
rgonder@mcneeslaw.com

*Pro Hac Vice*

*Attorneys for Plaintiffs*