UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CORNEL WEST, *et al.*,

    Plaintiffs,

v.

PENNSYLVANIA DEPARTMENT OF STATE, *et al.*,

    Defendants.

No. 24-cv-1349
Judge J. Nicholas Ranjan

**PENNSYLVANIA DEPARTMENT OF STATE'S POST-HEARING BRIEF**

    Whether called "laches, the *Purcell* principle, or common sense," the rule that courts should "not disrupt imminent elections absent a powerful reason for doing so" applies here. *New PA Project v. Schmidt*, 112 MM 2024, 2024 WL 4410884 (Pa. Oct. 5, 2024) (quoting *Crookston v. Johnson*, 841 F.3d 396, 398 (6th Cir. 2016)). Restraint from late election tinkering "not only prevents voter confusion but also prevents election administrator confusion—and thereby protects the State's interest in running an orderly, efficient election and in giving citizens (including the losing candidates and their supporters) confidence in the fairness of the election." *DNC v. Wisc. State Leg.*, 141 S.Ct. 28, 31 (2020) (Kavanaugh, J., concurring).

    While plaintiffs maintain this principle of judicial restraint applies only to "election rules," Post-Hearing Br. at 2, they offer no support for that limit, no

definition of "election rules," and no answer as to why the far-reaching changes they insist upon are not changes to "election rules."

Rather, the admonition against late judicial changes applies equally where the effect of the change would be reflected on the ballot, as plaintiffs request here. *Kim v. Hanlon*, 99 F.4th 140, 160 (3d Cir. 2024), related to the design of a ballot, and the Third Circuit both recognized the importance of, and applied, *Purcell* (but found it did not bar relief under the facts of the case).[1] Both *Merrill v. Milligan*, 142 S.Ct. 879 (2022), and *Robinson v. Callais*, 144 S.Ct. 1171 (2024), concerned district lines and thus, from the perspective of the voter, who they would have the chance to vote for. Plaintiffs insist only "voter-facing" changes should be avoided, Post-Hearing Br. at 2, without any recognition that the ballot is the single most voter-facing piece of an election.

---

[1] More specifically, in *Kim* the district court had granted relief more than two months before the primary election in a case filed three months before the primary election. *Id.* at 149-150. The Third Circuit considered the *Purcell* principle but concluded the factors had been overcome. *Id.* at 160. Plaintiffs had shown the merits were clearcut with "a substantive factual record, including expert reports and credible expert and factual testimony." *Id.* at 150. Plaintiffs presented evidence that New Jersey's voting machines "can readily accommodate office-block ballots and that changing a ballot's layout would take a day at most." *Id.* at 151. Even one of the defendants' witnesses testified he could make any changes before the primary. *Id.* at 151-52. By the time the Third Circuit heard the appeal, there was no longer any dispute from any election official that the changes ordered by the district court (which had not been stayed) were possible. *Id.* at 160.

Plaintiffs suggest the sort of relief they are seeking is granted "often," Post-Hearing Br. at 3-4, but both the dearth of precedent they cite and Mr. Marks's testimony betray that claim. One of the few cases they cite involved a mandamus claim to effectuate an earlier judgment correcting who properly won that year's primary election for county judge. *State ex rel. Peacock v. Latham*, 170 So. 475, 478 (Fl. 1936). That inapposite factual situation, from 1936, long preceded the use of electronic voting systems and expansive mail voting. Likewise, plaintiffs mischaracterize a decision from the Virgin Islands, wrongly suggesting that that court granted injunctive relief in a situation like this one. Post-Hearing Br. at 2-3. That decision was a contempt proceeding for failure to follow an order entered two months prior. *See generally Bryan v. Fawkes*, 61 V.I. 416 (V.I. 2014). The court explicitly noted that "[plaintiff] has—at no point in these proceedings—sought injunctive relief." *Id.* at 469.

Because these plaintiffs must overcome the restriction against late judicial changes, there are three independent reasons that plaintiffs are not entitled to injunctive relief. Their newly proposed order supplies a fourth.

*First*, plaintiffs unduly delayed. Litigation that affects an ongoing election must happen quickly. *E.g.*, 25 P.S. § 2937 (seven days for nomination objections); *id.* § 3157 (two days to appeal canvassing decisions). As Dr. West testified, he has had representation since June 2023—with plaintiffs' counsel in this case having been

involved since August 1 at the latest. Stip. ¶¶ 20-26. Plaintiffs should have acted sooner than 76 days from the initial rejection or 55 days from the final rejection.

Plaintiffs answer for only some their inaction, focusing on the time state litigation was pending from August 15 to September 16. But they have no answer for inaction between July 11 to August 1 (21 days), between August 2 to August 15 (13 more days), and between September 16 to September 25 (9 more days).

Nor do the explanations for inaction during state litigation hold up. The absence of "guaranteed" success (or a guarantee that a federal case would have been stayed while state proceedings were pending), Post-Hearing Br. at 7, is no reason for complete inaction in the face of, as they allege, severe constitutional violations. That is especially so given precedent in this court staying a federal case and ordering it be resumed the same day state court litigation has ended. *Trump for President, Inc. v. Boockvar*, 481 F. Supp. 3d 476 (W.D. Pa. 2020); *see also* Order, *Trump for President, Inc. v. Boockvar*, 20-966 (W.D. Pa. Sept. 17, 2020) (lifting the stay).

Plaintiffs also mistakenly suggest that injunctive relief would have been unavailable because their mandamus petition in state court was an adequate legal remedy precluding injunctive relief. Post-Hearing Br. at 7. The case they cite reiterates the common rule that there is *not* an exhaustion requirement to file a constitutional claim. *James v. Richman*, 547 F.3d 214, 218 (3d Cir. 2008). And *James*' reference

to alternative legal remedies as militating against injunctive relief is a reference to *damages. See* Wright & Miller § 2944 (3d ed.).[2]

***Second***, plaintiffs have not shown changes are possible without risks of confusion and disorder. As Mr. Marks—yesterday's only relevant witness—testified, granting relief at this point is not possible without serious risk to the order necessary for a fair election.[3]

Over 1.1 million ballots had already been sent to voters as of yesterday. That number is higher today. More than 137,000 ballots were returned as of yesterday. That number is now above 217,000. Changing candidates with so many ballots having already been sent and returned will introduce voter confusion as to why not everyone had the same ballot. And as Mr. Marks testified, there is a risk that vendors cannot meet all orders for new ballots by Election Day.

Even more, Mr. Marks explained that any new logic and accuracy testing would occur on a compressed timeline, increasing the risk of machines' not tabulating votes correctly on Election Day. This risk is especially pronounced if scanners needed to be calibrated for ballots with two different candidate lists. Both the actual

---

[2] Tracing the cases cited in *James v. Richman*, 547 F.3d 214 (3d Cir. 2008), shows that the support for the point being made is from Wright & Miller.

[3] After their earlier brief insisted on a hearing, Plaintiffs' post-hearing brief does not cite **any** testimony or factual record from the hearing. Mr. Marks's testimony is entirely unrebutted.

5

risk, and perceived risk, that machines might not be accurately tabulating ballots would be a threat to election administration. Beginning logic and accuracy testing anew would consume resources that election officials must allocate to other critical election-eve tasks, such as processing the crush of voter registration applications that arrive right before the registration deadline in years with presidential elections, processing mail ballot applications still being submitted, and training volunteer poll workers who will be critical to ensuring that the election runs properly and votes are counted accurately.

All these risks exist today, and they are the reason it is already too late to make changes. *See New PA Project Education Fund v. Schmidt*, 112 MM 2024, 2024 WL 4410884 (Pa. Oct. 5, 2024).

The new proposed order exacerbates the hardship and voter confusion. Plaintiffs still ask for new ballots despite testimony that preparing new ballots might not be possible. Proposed Order ¶ 2a-b. They also ask for new testing despite the attendant risks and ways it detracts from other necessary tasks. *Id.* ¶ 2b. They would place the onus on counties to convince this Court of any hardship despite that it is plaintiffs' responsibility to show the changes are feasible. *Id.* ¶ 2c. And they ask for notice to voters that the list of candidates is something other than what appears on the ballot. *Id.* ¶ 3-4.

Even if there were merit to Justice for All's constitutional claims—and there is not—remedying the constitutional violation would not entitle Dr. West to a place on the ballot. *Contra* Post-Hearing Br. at 4-5. It would instead entitle him to having his papers accepted. Indeed, he has no right to be on the ballot (nor can he be regarded as a candidate in the ways contemplated in the proposed order) if he has not complied with Pennsylvania's remaining (constitutional) requirements.

And whether Justice for All has complied cannot be finally determined until after the nomination papers are accepted and objections (if any) are resolved. 25 P.S. § 2937. Until that time, there is no conclusive determination that Justice for All met the signature requirement, for example. Justice for All might submit more than 5,000 signatures to the Department, but objections could reveal that not all are valid. Treating Justice for All the same as every other political body is both legally necessary and has nothing to do with a presumption of their papers' validity. *Contra* Post-Hearing Br. at 5. That presumption, which applies during objection litigation to determine who bears the burden of proof, does not absolve failures to comply with Pennsylvania's ballot access rules. *See In re Stack*, 184 A.3d 591, 595 (Pa. Cmwlth. 2018).

By the earliest time Dr. West could be certified as candidate, it would be nearly Election Day.

***Third***, plaintiffs' claims fail on the merits. Pennsylvania's Supreme Court just rejected an *identical* claim. *Clymer v. Schmidt*, 376 MD 2024, 2024 WL 4231289, at *12 (Pa. Cmwlth. Aug. 23, 2024), *aff'd,* No. 67 MAP 2024, 2024 WL 4181585 (Pa. Sept. 13, 2024) (Commonwealth Court's decision was made precedential on September 19). In this posture, the rejection of identical claims by the state Supreme Court is sufficient to defeat the request for an injunction.

Requiring that political bodies' nomination papers identify 19 electors is a minimal burden. In fact, counsel for plaintiffs argued at yesterday's hearing that it could be accomplished in a day—although their proposed order asks for ten days. The burden of the affidavit (which need not be notarized) that must be completed at some point over a six-month period (and can be fixed if errors are discovered) is likewise negligible. *See* DOS Response Br. at 19-21.

These modest burdens further Pennsylvania's strong interest in fully participating in the electoral college. To preserve that interest, Pennsylvania may protect "the integrity of [its] political processes from frivolous or fraudulent candidacies" and ensure "that [its] election processes are efficient" and free from "voter confusion caused by an overcrowded ballot." *Clements v. Fashing*, 457 U.S. 957, 965 (1982). Accordingly, Pennsylvania may impose "reasonable level-of-support requirements and classifications that turn on the political party's success in prior elections." *Id.*

The affidavit requirement also ensures compliance with Pennsylvania's disaffiliation requirement for candidates of political bodies. *See* DOS Response Br. at 21-22. That two of Justice for All's proposed elector candidates confirmed that they were ineligible to serve by crossing off the disaffiliation language in the affidavit, *see* DOS Response Br. at 22, only confirms the appropriateness of requiring elector candidates to submit affidavits in the first place.

Requiring a political body to identify 19 electors and having them submit a simple affidavit by the August 1 deadline is reasonable. That deadline balances giving candidates ample time to prepare their papers while building in room for any legal disputes that must be resolved before candidates must be certified and officials must undertake the preparation that necessarily follow. That Dr. West may have identified some people to be electors who subsequently backed out only underscores the importance of the state interest here. For political entities without the historic demonstrated support needed to become a political party, there is no precedent from which Pennsylvania can be assured that the same problem Dr. West reports to have encountered here would not happen sometime between Election Day and the meeting of the electoral college were Dr. West's campaign to succeed.

***Fourth***, plaintiffs' new requested relief, an order requiring the Department to send three sets of notices regarding Justice for All's candidates, exceeds this Court's

authority under Rule 65. It also seeks to direct the conduct of non-party county election officials.

Under Rule 65, any injunction "must create a remedy that is 'no broader than necessary to provide full relief to the aggrieved plaintiff.'" *Benezet Consulting LLC v. Sec'y Commonwealth of Pa.*, 26 F.4th 580, 584 (3d Cir. 2022) (quoting *Belitskus v. Pizzingrilli*, 343 F.3d 632, 649 (3d Cir. 2003)). When an injunction "afford[s] more relief than necessary" to stop the unconstitutional conduct, it is subject to reversal. *Free Speech Coal., Inc. v. Attorney Gen. United States*, 974 F.3d 408, 430 (3d Cir. 2020).

Plaintiff's newly requested relief exceeds these boundaries because it asks for more than an undoing of the alleged constitutional violation. The narrowest relief available to remedy any constitutional violation would be an order requiring Department officials to accept the nomination paperwork. To the extent that plaintiffs might contend that the proposed order is necessary for them to have full relief, that assertion is both factually wrong and a consequence of their own delay.

| | |
|---|---|
| October 8, 2024 | Respectfully submitted, |
| Kathleen M. Kotula (No. 86321)<br>Kathleen A. Mullen (No. 84604)<br>Pennsylvania Department of State<br>306 North Office Bldg.<br>401 North Street<br>Harrisburg, PA 17120-0500 | /s/ *Stephen R. Kovatis*<br>Stephen R. Kovatis (No. 209495)<br>Jacob B. Boyer (No. 324396)<br>Office of General Counsel<br>333 Market Street, 17th Floor<br>Harrisburg, PA 17101<br>skovatis@pa.gov<br>(717) 460-6786 |

*Counsel for Department of State and Secretary of the Commonwealth Al Schmidt*

## **CERTIFICATE OF SERVICE**

I, Stephen R. Kovatis, certify that I have caused all parties to be served on this date with the foregoing via the Court's ECF system.

| | |
|---|---|
| Date: October 8, 2024 | /s/ *Stephen R. Kovatis* |
| | Stephen R. Kovatis |