## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| CORNEL WEST, et al., | ) |
| | ) |
| Plaintiffs, | )   2:24-CV-1349 |
| | ) |
| v. | ) |
| | ) |
| PENNSYLVANIA DEPARTMENT | ) |
| OF STATE, et al., | ) |
| | ) |
| Defendants. | ) |

## <u>MEMORANDUM ORDER</u>

Dr. Cornel West seeks to run as a third-party candidate for President of the United States, and, with this lawsuit, seeks to gain access to the ballot in Pennsylvania.  The Secretary of State has thus far denied him access, relying on a number of requirements in the election code that only apply to minor political parties or political bodies and that Dr. West has not met.

This Court has serious concerns with the Secretary's application of the election code's restrictions to Dr. West.  The laws, as applied to him and based on the record before the Court, appear to be designed to restrict ballot access to him (and other non-major political candidates) for reasons that are not entirely weighty or tailored, and thus appear to run afoul of the U.S. Constitution.

That said, the Court has before it a motion requiring a balancing of the equities, which comes with it, a requirement to use some common sense.  Common sense tells the Court that we are less than one month from a Presidential general election.[1]  There is no time to re-print thousands of ballots and re-test the election

---

[1] *See Crookston v. Johnson*, 841 F.3d 396, 398 (6th Cir. 2016) ("Call it what you will—laches, the *Purcell* principle, or common sense—the idea is that courts will not disrupt imminent elections absent a powerful reason for doing so.").

systems across all of 67 counties, without increasing the risk of error and confusion. Indeed, hundreds of thousands of mail-in ballots have already been cast, and so printing new mail-in ballots would unquestionably cause voter confusion, as well as likely post-election litigation about how to count votes cast by any newly printed mail-in ballots. This is why the Supreme Court has reminded federal district judges that tinkering with the mechanics of a national election at a late stage is not a wise idea.[2] Based on the weighing of equitable principles, including those concerning election and voter confusion, the Court is constrained to deny Dr. West's motion.

## BACKGROUND

On September 25, 2024—41 days from the November 5, 2024, general election—Plaintiffs filed their complaint (ECF 1) and motion for a temporary re[s]training order and preliminary injunction (ECF 2). Within, Plaintiffs Doctors Cornel West and Melina Abdullah—"Justice for All" party candidates for president and vice president, respectively—and Geraldine Tunstalle, Katherine Hopkins-Bot, and Charles Hier—registered Pennsylvania voters intending to vote for Doctors West and Abdullah—allege that Defendants Pennsylvania Department of State's and Secretary's interpretation of the Pennsylvania election code unconstitutionally infringes on their First Amendment and Fourteenth Amendment rights. The result, Plaintiffs contend, is that Doctors West and Abdullah are prevented from gaining access to the ballot in Pennsylvania, and their aspiring voters are prevented from voting for their preferred candidates.

---

[2] *See Merrill v. Milligan*, 142 S. Ct. 879, 881 (2022) (Kavanaugh, J., concurring) ("Late judicial tinkering with election laws can lead to disruption and to unanticipated and unfair consequences for candidates, political parties, and voters, among others. It is one thing for a State on its own to toy with its election laws close to a State's elections. But it is quite another thing for a federal court to swoop in and re-do a State's election laws in the period close to an election.").

The harm Plaintiffs allege is real and undisputed.  Having failed to obtain affidavits for 19 disaffiliated presidential electors by the August 1, 2024, deadline, Doctors West and Abdullah will not appear on the ballot.  So Plaintiffs, and those associated with them, have turned to judicial intervention.  Some of their would-be electors began in Pennsylvania state court, but lost.  *Williams v. Pennsylvania Dep't of State*, No. 394 M.D. 2024, 2024 WL 3912684 (Pa. Commw. Ct. Aug. 23, 2024), *aff'd*, No. 25 WAP 2024, 2024 WL 4195131 (Pa. Sept. 16, 2024).  Plaintiffs (who tried but failed to intervene when that case was on appeal) have now taken up the mantle here in federal court.

The Court has received expedited briefing from the parties (ECF 20, ECF 21, ECF 30, ECF 32), as well as various exhibits and stipulations (ECF 29), and heard testimony and argument during an October 7, 2024, hearing.  ECF 26.  After careful review, the Court denies the motion.[3]

## DISCUSSION AND ANALYSIS

The Court begins with the threshold factors to obtain a preliminary injunction. *Holland v. Rosen*, 895 F.3d 272, 285-86 (3d Cir. 2018) (describing factors).  First, the Court must find that Plaintiffs have established that their likelihood of success on the merits of their claims is "indisputably clear."  *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 320 (3d Cir. 2020).[4]  Assessing the merits requires application of the familiar *Anderson-Burdick* test.

---

[3] The Court considers the First Amendment and Fourteenth Amendment claims in conjunction.  *See The Const. Party of Pennsylvania v. Cortes*, 116 F. Supp. 3d 486, 498 (E.D. Pa. 2015), *aff'd sub nom. Const. Party of Pennsylvania v. Cortes*, 824 F.3d 386 (3d Cir. 2016) ("[I]n the ballot access context, freedom of association claims and equal protection claims are nearly identical.").

[4] Plaintiffs seek to change the status quo, and therefore seek a mandatory injunction. *See, e.g.*, *Garrett v. Am. Fed'n of State, Cnty. & Mun. Emps. AFL-CIO*, No. 24CV1105, 2024 WL 1335186, at *3 (E.D. Pa. Mar. 28, 2024) (plaintiff seeking mandatory

Initially, the Court agrees with Plaintiffs that the very nature of the challenged laws precludes a finding that the burden is "minimal" such that rational-basis review applies. That is, Plaintiffs challenge election restrictions that are facially discriminatory, directed only to minor political parties and political bodies. Specifically, Plaintiffs claim that Defendants' characterization of presidential electors as "candidates" under Pennsylvania's election code creates a host of constitutional problems. That interpretation, Plaintiffs explain, means that minor political parties and political bodies must identify all 19 electors before submitting nominating papers (25 P.S. §§ 2911(a), 2912), that the presidential electors must be disaffiliated with any political party (25 P.S. § 2911.1), that presidential electors must complete affidavits (25 P.S. § 2911(e)), and that electors cannot be substituted unless Defendants first accept the nomination papers (*In re Scroggin*, 237 A.3d 1006, 1022-23 (Pa. 2020); 25 P.S. §§ 2940, 2941).[5] Plaintiffs claim that the two major political parties have no such restrictions, and there is no sound reason to treat the major parties so differently than minor parties.

As Defendants note, "[t]here are 'obvious differences in kind between the needs and potentials of a political party with historically established broad support, on the one hand, and a new or small political organization on the other,' that justify different paths to the ballot." ECF 20, p. 24 (quoting *Jenness v. Fortson*, 403 U.S. 431, 441 (1971)). That much is not in dispute. But "[a] burden that falls unequally on new or small political parties or on independent candidates impinges, by its very nature, on

injunction where he was seeking court order to enjoin prohibition on his running in election). That raises their burden.

[5] Defendants also mention in passing that the affidavit requirement triggers a filing fee for not only the presidential candidates but the presidential electors too, totaling $4,200 (25 P.S. § 2914). As the Court understands it, the major parties don't pay the elector fee.

associational choices protected by the First Amendment." *Anderson v. Celebrezze*, 460 U.S. 780, 793 (1983). The Court must therefore reject Defendants' argument that the laws present only minimal burdens warranting rational-basis review. *See Kim v. Hanlon*, 99 F.4th 140, 155 (3d Cir. 2024) ("If, however, the state's regulations just impose reasonable, ***nondiscriminatory restrictions*** we need only determine whether the state's legitimate interests are sufficient to outweigh the limited burden." (cleaned up) (emphasis added)); *see also Mazo v. New Jersey Sec'y of State*, 54 F.4th 124, 146 (3d Cir. 2022), *cert. denied sub nom. Mazo v. Way*, 144 S. Ct. 76 (2023) (law "impose[d] only a minimal burden" where the requirement was "***nondiscriminatory and applie[d] equally to all candidates and slogans***[;]" left "open ample and adequate alternatives for expression and association[;]" and the challengers "failed to provide evidence of any specific burden" (emphasis added)).

So, the question, then, is what is the level of scrutiny? On one hand, cases like *Kim* and *Mazo* suggest application of strict scrutiny. On the other hand, there is some support for applying something that looks like intermediate scrutiny. *Eakin v. Adams Cnty. Bd. of Elections*, 676 F. Supp. 3d 449, 459 (W.D. Pa. 2023) (Baxter, J.) (quoting *Daunt v. Benson*, 956 F.3d 396, 406-07 (6th Cir. 2020)); *see also Reform Party of Allegheny Cnty. v. Allegheny Cnty. Dep't of Elections*, 174 F.3d 305, 314 (3d Cir. 1999) (requiring "the State's asserted regulatory interests [to] only be sufficiently weighty to justify the limitation imposed on the minor party's rights" (cleaned up)); *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) ("[T]he mere fact that a State's system creates barriers tending to limit the field of candidates from which voters might choose does not of itself compel close scrutiny." (cleaned up)).

In the end, though, both standards are heightened and both require Defendants to put forward more weighty and specific interests that are, as applied to this case, furthered by the restrictions. On the record before the Court, the Court finds that the targeted burden of the laws on Plaintiffs is more than minimal, and

the Court further finds that Defendants' interests aren't, as applied, sufficiently weighty and logically connected or tailored to Plaintiffs' case.[6]  *See, e.g., Obama for Am. v. Husted*, 697 F.3d 423, 433-34 (6th Cir. 2012) (applying intermediate scrutiny and finding that the State failed to proffer sufficient evidence to support its interests other than vague assertions, and concluding that the "State has not shown that its regulatory interest in smooth election administration is 'important,' much less 'sufficiently weighty'").   As such, the Court finds that Plaintiffs are clearly likely to succeed on the merits, at least based on the present record.[7]

Plaintiffs have also met the second gateway injunction factor; they have unquestionably suffered irreparable harm, because the loss of First Amendment rights constitutes irreparable harm.  *See Kim*, 99 F.4th at 159; *see also Schrader v. Dist. Att'y of York Cnty.*, 74 F.4th 120, 128 (3d Cir. 2023).

---

[6] By way of example, the disaffiliation requirement for affidavits (in conjunction with the similar "sore loser" requirement, 25 P.S. § 2911(e)(5)) is meant to prevent "sore losers" from the primaries from obtaining a second bite at the ballot and undermining the election process.  *De La Fuente v. Cortes*, 751 F. App'x 269, 273-74 (3d Cir. 2018).  But there is no evidence Doctors West or Abdullah are sore-primary losers.  And, even if they were, that justification is attenuated when applying the disaffiliation requirement to presidential electors, as opposed to the actual candidates.  Maybe there are other weighty reasons for this restriction, but none have been sufficiently proffered or explained at this juncture, or supported by evidence.

[7] The Court recognizes that the Commonwealth Court recently held that the affidavit requirement was constitutional.  *Clymer v. Schmidt*, No. 376 M.D. 2024, 2024 WL 3912661 (Pa. Commw. Ct. Aug. 23, 2024).  The court there, though, considered the restriction to be facially non-discriminatory, and so applied rational-basis review.  *Id.* at *13 (the court also examined only the affidavit requirement, and not the other requirements triggered by Defendants' interpretation of "candidate").  The Court, respectfully, disagrees that treating electors as "candidates" under the election code is non-discriminatory—it triggers requirements that apply to minor political parties and political bodies and not to the two major parties.

But after considering the two gateway factors, the Court must balance the remaining factors—harm to the public, the opposing parties, and third parties.[8]  In the election context, the *Purcell* principle is at issue.  That is, the Supreme Court "has repeatedly stated that federal courts ordinarily should not enjoin a state's election laws in the period close to an election[.]"  *Merrill v. Milligan*, 142 S. Ct. 879, 880 (2022) (Kavanaugh, J., concurring); *see also Democratic Nat'l Comm. v. Wisconsin State Legislature*, 141 S. Ct. 28, 30 (2020) (Kavanaugh, J., concurring) (collecting cases).  "That principle . . . reflects a bedrock tenet of election law: When an election is close at hand, the rules of the road must be clear and settled.  Late judicial tinkering with election laws can lead to disruption and to unanticipated and unfair consequences for candidates, political parties, and voters, among others."  *Merrill*, 142 S. Ct. at 880-81.

In *Kim v. Hanlon*, 99 F.4th 140 (3d Cir. 2024), the Third Circuit explained that "*Purcell* is a consideration, not a prohibition, and it is just one among other considerations specific to election cases that we must weigh for injunctive relief[,] . . . . in addition to the traditional considerations for injunctive relief."  *Id.* at 160 (cleaned up).  Examining the *Purcell* principle in this context, the Court concludes that it weighs strongly in favor of denying injunctive relief.  The Court makes three findings in this regard.

First, there is no question that the election is very close: less than one month away.  This proximity to the general election puts this case squarely within Supreme Court precedent.  *See Petteway v. Galveston Cnty., Texas*, 87 F.4th 721, 723 (5th Cir. 2023) (Oldham, J., concurring) (collecting cases and noting "[c]iting *Purcell*, the

---

[8] The Court consolidates its analysis of the last two factors because they "merge when the Government is the opposing party." *Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 205 (3d Cir. 2024) (*quoting Nken v. Holder*, 556 U.S. 418, 435 (2009)).

Supreme Court refused to bless judicial intervention in State elections 21 days before the general election date, 34 days before the general election date, 46 days before the general election date, 48 days before the primary election date, 92 days before the primary election date, and 120 days before the primary election date" (cleaned up)). Indeed, the fact that the election has, in a sense, already begun via absentee/mail-in/over-the-counter voting suggests the principle applies with even more force.  *See Merrill*, 142 S. Ct. at 779 (Kavanaugh, J., concurring) (chastising District Court for declining to stay injunction "even though the primary elections [would] begin (***via absentee voting***) just seven weeks from [the date of the opinion]" (emphasis added); *accord New Georgia Project v. Raffensperger*, 976 F.3d 1278, 1283 (11th Cir. 2020) (finding injunction violated *Purcell* principle, emphasizing "we are not on the eve of the election—we are in the middle of it, with absentee ballots already printed and mailed"); *Pierce v. N. Carolina State Bd. of Elections*, 97 F.4th 194, 227 (4th Cir. 2024) (noting district court "rightly heeded" *Purcell* where absentee ballots were distributed and in-person early voting had begun, explaining "[t]he election is not merely 'close' or even 'imminent'—it is happening right now" (cleaned up)).

Second, there is an actual risk of harm to Defendants and other election officials, as well as voters, if the injunction is granted.  During the October 7, 2024, hearing, the Deputy Secretary for Elections and Commissions for the Department of State testified that the county boards of election had mailed out over 1.1 million mail ballots, and voters had already returned over 137,000 mail ballots.  That number continues to grow.[9]

Plaintiffs recently modified their proposed order in what they say is an attempt at a compromise solution to lessen the burden on the counties.  Were the Court to

---

[9] Defendants represent in their latest filing that, a day later, the number of returned ballots jumped to over 217,000.  ECF 32, p. 5.

grant that order, Defendants would inform county officials that Doctors West and Abdullah are certified candidates and instruct them to place their names on ballots, replace printed paper ballots with corrected versions containing Doctors West and Abdullah, notify absentee or mail-in ballot recipients that have yet to return their ballots that Doctors West and Abdullah are candidates, and issue notices to be displayed at polling locations of the same.  ECF 30-1.  Assuming that the 67 counties can do these things in time (after the seven-day statutory challenge period, or even a truncated challenge period), what then?  With over hundreds of thousands of voters having already voted—using ballots without Doctors West and Abdullah listed—the remedy ensures voter confusion.

And the feasibility of this solution is at question.  At the hearing, the Deputy Director credibly warned that to print the ballots in time the counties may need to seek new, unvetted printing vendors, and would need to re-do logic-and-accuracy testing and ballot-acceptance testing on election equipment.  He stopped short of saying it was an "impossible" task, and the Court anticipates that it probably could be done.  But that would come at a cost; prudence exchanged for speed.  The Court is concerned about the errors such a rush risks creating,[10] and the potential blow to public confidence in Pennsylvania's election that risk engenders.  *See Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) ("Confidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy.").[11]  As a result, this

---

[10] The Deputy Director testified that problems could range from simple misspellings or ballot formatting errors to incorrectly recording votes, as happened during a North Hampton County judge election.

[11] The Court is also concerned such an order would result in a *Bush v. Gore* type of equal-protection problem when the counties count the ballots, *i.e.*, different ballots being used across different counties in a State-wide election resulting in different procedures or methods of counting. *See Donald J. Trump for President, Inc. v. Boockvar*, 493 F. Supp. 3d 331, 387 (W.D. Pa. 2020) (Ranjan, J.) ("Indeed, *Bush's* core proposition—that a state may not take the votes of two voters, similarly situated in

could also chill voter participation. *See Kim*, 99 F.4th at 160 (noting "court orders affecting elections . . . can themselves result in . . . consequent incentive to remain away from the polls" (cleaned up)).

Third, the Pennsylvania Supreme Court—which this Court considers to be the institutional expert on election law in Pennsylvania—has already deemed it too late to alter the election mechanics. *New PA Project Educ. Fund v. Schmidt*, 112 MM 2024, 2024 WL 4410884, at *1 (Pa. Oct. 5, 2024) ("This Court will neither impose nor countenance substantial alterations to existing laws and procedures during the pendency of an ongoing election."); *see also Republican Nat'l Comm. v. Schmidt*, 108 MM 2024, 2024 WL 4406909 (Pa. Oct. 5, 2024) (Brobson, J., concurring) (same).

Plaintiffs offer two arguments in response to these considerations—neither of which is persuasive.

Plaintiffs' main response to the *Purcell* principle is that the principle is inapplicable because *Purcell* applies to "rules" and they "are not seeking any changes to 'rules[.]'" ECF 21, p. 6. That is too narrow an interpretation. "Courts have characterized many election-related provisions as 'election rules' subject to *Purcell*[,]" including things like injunctions imposing new congressional maps. *Tennessee Conf. of the Nat'l Ass'n for the Advancement of Colored People v. Lee*, 105 F.4th 888, 897 (6th Cir. 2024) (citing *Robinson v. Callais*, 144 S. Ct. 1171 (2024)). Moreover, as part of their requested relief, Plaintiffs also ask that the Court change the rules as to an

---

all respects, and, for no good reason, count the vote of one but not the other—seems uncontroversial. It also seems reasonable (or at least defensible) that this proposition should be extended to situations where a state takes two equivalent votes and, for no good reason, adopts procedures that greatly increase the risk that one of them will not be counted—or perhaps gives more weight to one over the other.").

objections period for nominations.  So even under Plaintiffs' narrow reading of *Purcell*, the doctrine is implicated.  ECF 21, p. 11.[12]

Plaintiffs also point out that it isn't impossible for the counties to make changes now, and that it's just a matter of more money and manpower.  That's true, to some extent.  In fact, that's how it ought to be—if someone's constitutional rights are violated, the state and counties should figure it out.  But as the Court explained above, it isn't confident enough based on the record presented that all 67 counties will be able to implement the injunctive relief requested within the time parameters, without resulting in major errors.  That uncertainty is why the *Purcell* principle applies here.  *See Merrill*, 142 S. Ct. at 880 (Kavanaugh, J., concurring) (explaining that to implement injunction with election seven weeks away "would require heroic efforts by those state and local authorities in the next few weeks—and even heroic efforts likely would not be enough to avoid chaos and confusion").

As the Third Circuit recently explained, "[o]ne can assume for the sake of argument that aspects of the now-prevailing regime in Pennsylvania are unlawful as alleged and still recognize that, given the timing of Plaintiffs' request for injunctive relief, the electoral calendar was such that following it 'one last time' was the better of the choices available."  *Bognet v. Sec'y Commonwealth of Pennsylvania*, 980 F.3d 336, 363 (3d Cir. 2020), *cert. granted, judgment vacated as moot sub nom. Bognet v. Degraffenreid*, 141 S. Ct. 2508 (2021); *see also Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 203 (3d Cir. 2024) ("[A]ny

---

[12] Plaintiffs also direct the Court to three cases for the proposition that *Purcell* is inapplicable here.  Two of them, *State ex rel. Peacock v. Latham*, 170 So. 475 (Fla. 1936), and *Johnston v. Ing*, 441 P.2d 138, 140 (Haw. 1968), pre-date *Purcell* by many decades.  The other, *Bryan v. Fawkes*, 61 V.I. 416 (V.I. 2014), is factually inapposite.  *See Bryan*, 61 V.I. at 468 ("*Purcell* and its progeny—all of which involve an analysis of the four factors courts consider in issuing an injunction—are not relevant to this appeal.").

one factor may give a district court reason enough to exercise its sound discretion by denying an injunction.").  So too here.

In the end, if this case had been brought earlier, the result, at least on the present record, may have been different.  But the Court is constrained to balance all of the injunction factors, and in light of the balancing of particularly the *Purcell*-based factors, along with the traditional injunction factors, the Court finds that the equities require that it refrain from granting the relief requested.

### CONCLUSION

For the above reasons, the Court hereby **DENIES** Plaintiffs' motion for a temporary restraining order and preliminary injunction (ECF 2).

DATED this 10th day of October, 2024.


BY THE COURT:


/s/ *J. Nicholas Ranjan*
United States District Judge

-12-