UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CORNEL WEST, *et al.*,<br><br>　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>PENNSYLVANIA DEPARTMENT OF STATE, *et al.*,<br><br>　　　　　　　Defendants. | No. 24-cv-1349<br>Judge J. Nicholas Ranjan |

## PENNSYLVANIA DEPARTMENT OF STATE'S RESPONSE TO PLAINTIFFS' MOTION FOR A STAY PENDING APPEAL

More than a week ago, this Court denied Plaintiffs' belated, election-eve request to add a new candidate to Pennsylvania's general election ballot because of the "actual risk of harm to Defendants and other election officials, as well as voters, if the injunction is granted." Mem. Order at 8 (ECF No. 33). This Court correctly found that starting the process *last week* to add a new candidate would threaten the efficacy of counties' critical pre-election testing and jeopardize having ballots ready by Election Day. *Id.* at 9. Further, at the time of the hearing, more than 1.1 million ballots had already been sent to voters and 137,000 had been returned (a number that grew to 217,000 by the next day); changing ballots at that stage would have "ensure[d] voter confusion" and, this Court suggested, could present equal protection problems. *Id.* at 8-9 & n.11. With so little time left before Election Day, Plaintiffs'

requested relief could not be implemented without a risk of "major errors" in the election. *Id.* at 11.

What has changed since this Court properly denied the injunction is that Election Day is eight days closer. With little more than two weeks to Election Day, each concern the Court articulated applies with even greater force to Plaintiffs' renewed request to add new candidates to the ballot, *see* Br. in Supp. of Inj. at 15 (ECF No. 37-1), a request that is neither "limited" nor "feasible and reasonable," *id.* at 9.

There are now more than 1,786,000 people who have successfully applied to vote by mail, more than 1,586,000 ballots that have been sent to voters, and nearly 800,000 ballots that have been returned. Suppl. Marks Decl. ¶¶ 4-7 (attached as Exhibit 1). There would be even less time to redo the logic and accuracy testing that Plaintiffs' proposed remedy would require, and less time to reprint millions of ballots, as Plaintiffs also request. The risks of major error attendant to Plaintiffs' requested relief have compounded in the week since this Court's order, during which time Plaintiffs *took no action other than filing a notice of appeal.*

Still, Plaintiffs request an injunction pending appeal, which is an "extraordinary remedy" that requires them to show "a 'strong' likelihood of success on the merits" of their appeal. *Donald J. Trump for President, Inc. v. Sec'y of Pennsylvania*, 830 F. App'x 377, 389 (3d Cir. 2020) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). Here, the merits of the appeal will necessarily involve equitable

2

considerations about the risks of relief and Plaintiffs' repeated and unjustified delays. So, Plaintiffs must show a strong likelihood that the Third Circuit will find that this Court erred in denying relief on October 10 **and** that it can still grant injunctive relief in time for the election.

Rather than engage with this standard, Plaintiffs' newest request for injunctive relief largely repeats points that the Department has already addressed and this Court already rejected. *See* Mem. Order at 7-12 (addressing unique considerations that govern late requests to alter election rules); *see also* DOS Response to Prelim. Inj. at 7, 12 (ECF No. 20) (same); DOS Post-Hearing Br. at 1-2 (ECF No. 32) (same). Plaintiffs' current request requires only a few brief points in response.

*First*, none of Plaintiffs' personal attacks on Deputy Secretary Marks are warranted or undermine his testimony. Plaintiffs—who opted not to call a single election official at the October 7 hearing—improperly attempt to re-weigh Deputy Secretary Marks' unrebutted, credible testimony (which was subject to Plaintiffs' cross-examination) and criticize him for identifying the hardship and risks attendant to Plaintiffs' requested relief. Plaintiffs ignore that this Court's reliance on Deputy Secretary Marks's testimony will be reviewed for "clear error, affording due regard to the trial court's opportunity to judge the witnesses' credibility." *See Covertech Fabricating, Inc. v. TVM Bldg. Products, Inc.*, 855 F.3d 163, 169-70 (3d Cir. 2017) (cleaned up).

What is more, the various accusations leveled against Deputy Secretary Marks reveal only that Plaintiffs do not understand what preparing for an election entails. For example, Plaintiffs cite a recent stipulation from Montgomery County as evidence that the county's entire logic and accuracy testing process took four hours. Br. in Supp. of Inj. at 17-18. But the stipulation refers to how long it took for Montgomery County to complete testing on ***9 pieces of a single type of equipment*** (scanners used for canvassing mail ballots). Dean Decl. ¶ 9 (attached as Exhibit B).[1] Montgomery County's complete logic and accuracy testing, which also includes precinct scanners and touchscreen voting devises used on Election Day, began on September 23 and was not completed until October 10. *Id.* ¶¶ 6-7, 10. During that time, Montgomery County took 14 working days at 8 hours a day to test 1,138 pieces of equipment. *Id.* ¶¶ 10-11.

Not only is there insufficient time to safely redo this work, but Montgomery County also estimates that it would take a week from getting any new candidate list to even have the materials needed to start testing again. *Id.* ¶ 12. It also takes Montgomery County several days to complete delivery of all its equipment to its 329 polling locations, *id.* ¶ 13, further compressing available time for new testing.

---

[1] Plaintiffs did not include the stipulation. It is attached as Exhibit C.

Similarly, Plaintiffs completely miss the point of Deputy Secretary Marks' reference to issues with Northampton County's machines in 2023. Br. in Supp. of Inj. at 18. Deputy Secretary Marks did not testify that the issue was caused by late changes to the ballots—he testified that the problems Northampton encountered with tabulation are what can occur when logic and accuracy testing is not done right. *See* Oct. 7 Hr'g Tr. at 82-83. It is an example of the risks granting relief would introduce.

Likewise, Plaintiffs wrongly suggest that inconsistencies exist between Deputy Secretary Marks' testimony before this Court and a 2018 affidavit that addressed late changes to ballots made in 2014 and 2016. Br. in Supp. of Inj. at 7, 19-20. Deputy Secretary Marks addressed this during the hearing, explaining that both Act 77 of 2019 and a required voting equipment change in 2020 (from direct recording equipment to voting systems with a paper ballot component) would make any late changes to the ballot significantly more challenging now than they were before 2018. Oct. 7 Hr'g Tr. at 74-77.

The Court rightly credited Mr. Marks's testimony, Mem. Order at 9m and Plaintiffs have provided nothing beyond rehashing the same mistaken arguments.

***Second***, as this Court already recognized, *id.* Plaintiffs' requested relief—that Dr. West be treated as a candidate now and allowed to forgo compliance with any other of Pennsylvania's constitutional ballot-access requirements—is unavailable, *contra* Br. in Supp. of Inj. at 22. Just as every other political body, Justice for All

needed to submit nomination papers with more than 5,000 valid signatures (among other requirements). If the Department accepts Justice for All's nomination papers, parties still have seven days to challenge them. 25 P.S. § 2937. If there is a challenge to nomination papers based on signatures, the signatures will, as Plaintiffs correctly but irrelevantly note, enjoy a presumption of validity in the resulting litigation. Br. in Supp. of Inj. at 22. Yet, that presumption does not allow anyone to bypass challenges altogether and does not create a license to a place on the ballot irrespective of compliance with all remaining requirements. Even if Justice for All's nomination papers were accepted now, the earliest Dr. West could be certified as a candidate would be little more than a week from Election Day.

*Third*, as has been true at every step along the way, Plaintiffs waited an undue amount of time—a full week from the time of this Court's order—before filing this motion. This delay exacerbates Plaintiffs' initial delay in bringing this suit and is further reason to deny their request for an injunction pending appeal. *See Donald J. Trump for President*, 830 F. App'x at 390 (treating plaintiffs' delay as reason to deny a request for an injunction pending appeal); *see also Delaware State Sportsmen's Ass'n., Inc. v. Delaware Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 206 (3d Cir. 2024).

*Fourth*, even if the Third Circuit were to reach the underlying constitutional question—which it need not to do affirm this Court's decision—the Department

respectfully disagrees that the statutory requirement that political bodies must iden-
tify 19 electors is likely unconstitutional. This requirement—which comes from the
General Assembly and not the Department, *see Clymer v. Schmidt*, 376 MD 2024,
2024 WL 4231289 (Pa. Cmwlth. Aug. 23, 2024), *aff'd*, 67 MAP 2024, 2024 WL
4181585 (Pa. Sept. 13, 2024)—imposes only modest burdens and serves important
state interests.[2]

Focusing here on the state interests, Pennsylvania has a compelling interest in
protecting "the integrity of [its] political processes from frivolous or fraudulent can-
didacies" and ensuring "that [its] election processes are efficient" and free from
"voter confusion caused by an overcrowded ballot." *Clements v. Fashing*, 457 U.S.
957, 965 (1982). Accordingly, Pennsylvania and every other state may impose "rea-
sonable level-of-support requirements and classifications that turn on the political
party's success in prior elections." *Id.*

Legitimate candidates for the office of president must have a full slate of pres-
idential electors behind them. That is because Pennsylvania, of course, has a

---

[2] As this Court noted, its views on the underlying merits were based "on the
present record" compiled during expedited proceedings. Mem. Order at 12. This is
precisely why the Third Circuit has cautioned against judging the merits of a case
on a motion for preliminary injunction. *See Delaware State Sportsmen's Ass'n.*,
108 F.4th at 200, 206.

compelling interest in sending its full constitutional allotment of electors to the electoral college. *Clymer*, 376 MD 2024, 2024 WL 4231289, at *9.

Further, when someone in Pennsylvania votes for an individual listed on a ballot as a presidential nominee, they are not actually voting for that person. Instead, they are voting for presidential electors who will participate in the electoral college. 25 P.S. § 3031.12(a)(4). And, under Pennsylvania's Election Code, voters must have the opportunity to vote for a full slate of presidential electors by marking their ballot for a single candidate for President and Vice President. 25 P.S. §§ 3031.12(a)(4), 3055(c).

Given both Pennsylvania's interest in full representation in the electoral college and Pennsylvanians' statutory right to vote for a full slate of electors, it is entirely reasonable for Pennsylvania's General Assembly to require that anyone listed on a ballot as a candidate for President or Vice President have a full slate of electors who will vote for them. It is also entirely reasonable for the General Assembly to require that political bodies demonstrate that there are 19 qualified individuals who have agreed to serve as their electors, and to do so reasonably far in advance of Election Day that necessary preparations can begin and be completed on time.

Further, requiring political bodies' presidential elector nominees to complete an affidavit is a minimally burdensome way of confirming that a political body has identified a full slate of people who know that they are being nominated and are

willing to serve. In this way, the affidavit serves its longstanding anti-fraud function. *In re Scroggin*, 237 A.3d 1006, 1018-19 (Pa. 2020).

That Dr. West may have identified some people to be electors who subsequently backed out only underscores the importance of the state interest here. For political entities without the historic support needed to become a major political party, there is no precedent from which Pennsylvania can be assured that the same problem Dr. West reports to have encountered in advance of the filing deadline would not happen sometime between Election Day and the meeting of the electoral college.

The affidavit requirement also ensures compliance with Pennsylvania's disaffiliation requirement for candidates of political bodies. That two of Justice for All's proposed elector candidates confirmed that they were ineligible to serve by crossing off the disaffiliation language in the affidavit, *see* Stip. ¶¶ 20-21 (ECF No. 29), only confirms the appropriateness of requiring elector candidates to submit affidavits in the first place. The disaffiliation requirement ensures that major political parties and unsuccessful primary candidates cannot misuse the political body nomination process to get a second bite at the apple. The disaffiliation requirement is relevant to electors given that Pennsylvania does not punish so-called "faithless electors."

*      *      *      *      *

What this Court said eight days ago is even more true now. Dr. West cannot be added to Pennsylvania's general election ballot without risking voter confusion and errors in the election. The unrebutted testimony the Court heard on October 7 confirms as much. Therefore, the Court should again deny Plaintiffs' request for disruptive injunctive relief.

October 18, 2024                    Respectfully submitted,

Kathleen M. Kotula (No. 86321)      /s/ *Jacob B. Boyer*
Kathleen A. Mullen (No. 84604)      Jacob B. Boyer (No. 324396)
Pennsylvania Department of State    Stephen R. Kovatis (No. 209495)
306 North Office Bldg.              Office of General Counsel
401 North Street                    333 Market Street, 17th Floor
Harrisburg, PA 17120-0500           Harrisburg, PA 17101
                                    jacobboyer@pa.gov
                                    (717) 460-6786

*Counsel for Department of State and Secretary of the Commonwealth Al Schmidt*

10

## <u>CERTIFICATE OF SERVICE</u>

I, Jacob B. Boyer, certify that I have caused all parties to be served on this date with the foregoing via the Court's ECF system.

Date: October 18, 2024

/s/ *Jacob B. Boyer*
Jacob B. Boyer