**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CORNEL WEST AND MELINA ABDULLAH, GERALDINE TUNSTALLE, KATHERINE HOPKINS-BOT, AND CHARLES HIER, | : : : : | No. 2:24-cv-01349 |
| | : | (*filed electronically*) |
| Plaintiffs, | : : : | |
| v. | : : | |
| PENNSYLVANIA DEPARTMENT OF STATE AND AL SCHMIDT, IN HIS CAPACITY AS SECRETARY OF THE COMMONWEALTH, | : : : : : | |
| Defendants. | : | |

**AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs Cornel West and Melina Abdullah (Candidates), Geraldine Tunstalle, Katherine Hopkins-Bot, and Charles Hier (Voters) (together, Plaintiffs), by and through their undersigned counsel, bring this Complaint against Defendants, the Pennsylvania Department of State (Department) and Al Schmidt, in his capacity as Secretary of the Commonwealth (Secretary), and in support thereof aver as follows:

## I.  INTRODUCTION

1.  The primary values protected by the First Amendment to the United States Constitution—"a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open," —are "served when election campaigns are not monopolized by existing political parties." *Anderson v.*

*Celebrezz*e, 460 U.S. 780, 794 (1983) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)).

2. Accordingly, minor political parties, known in Pennsylvania as political bodies, are crucial to advancing diversity of thought and ensuring competition in the marketplace of ideas. *See id.*

3. When states impose severe burdens on political bodies to restrict access to the ballot without any state interest to support that burden, a constitutional violation occurs under the First and Fourteenth Amendment to the United States Constitution.

4. In the context of presidential elections, such burdens "implicate a uniquely important national interest," because state-imposed restrictions have "an impact beyond [the state's] own borders." *Id.* at 794–95.

5. This case presents exactly that concern because Defendants imposed on Plaintiffs an interpretation of the Pennsylvania Election Code (Election Code) that unfairly burdens and discriminates against political bodies, their candidates, and supporters, without any state interest in doing so.

6. Candidates West and Abdullah were 2024 Presidential and Vice-Presidential candidates of the Justice for All political body who sought access to the ballot in Pennsylvania. Voters signed Candidates' Nomination Papers (the West/Abullah Nomination Papers) to advance that goal.

7. Candidates timely submitted the West/Abdullah Nomination Papers. Still, Defendants refused to accept them, citing their interpretation that Section 951

of the Election Code, 25 P.S. § 2911, requires each one of Candidates' presidential electors to submit *candidate* affidavits.

8.    Ultimately, as a result of Defendants' interpretation of Section 951 of the Election Code, Candidates were not on the ballot for the 2024 General Election.

9.    Upon information and belief, Defendants will enforce this interpretation of Section 951 of the Election Code in 2028 as well.

10.    Defendants' interpretation of Section 951 of the Election Code, 25 P.S. § 2911, discriminates against Candidates, Voters, and political bodies as a whole, treating them differently from the two major political parties.

11.    Because Defendants' interpretation of 25 P.S. § 2911 does not advance any state interest, as evidenced by the lack of statutory support for this interpretation, it unconstitutionally infringed on Plaintiffs' First and Fourteenth Amendment rights.

12.    Accordingly, Plaintiffs ask this Court to declare Defendants' interpretation of 25 P.S. § 2911 unconstitutional under the First and Fourteenth Amendments to the United States Constitution and permanently enjoin Defendants' from relying on and enforcing that interpretation.

## II.    JURISDICTION AND VENUE

13.    Because this action alleges a violation of the United States Constitution, it raises a federal question. So, under 28 U.S.C. § 1331, this Court has jurisdiction over this action.

14.     Further, declaratory relief is proper pursuant to 28 U.S.C. §§ 2201 & 2202.

15.     Venue is proper in the Western District of Pennsylvania under 28 U.S.C. § 1391(b)(2) because a substantial portion of the events or omissions giving rise to the present claim occurred in the district, as Voters are all registered voters who signed the West/Abullah Nomination Papers. Two of the Voters signed the West/Abdullah Nomination Papers in this district.

III.    **PARTIES**

16.     Plaintiff Cornel West is a United States citizen and resident of Orange County, California. West was Justice for All's 2024 candidate for President of the United States.

17.     Plaintiff Melina Abdullah is a United States citizen and a resident of Los Angeles County, California. Abdullah was Justice for All's 2024 candidate for Vice-President of the United States.

18.     Plaintiff Geraldine Tunstalle is a registered Pennsylvania voter who signed the West/Abullah Nomination Papers in the Western District of Pennsylvania and who intended to vote in the 2024 General Election.

19.     Plaintiff Katherine Hopkins-Bot is a registered Pennsylvania voter who signed the West/Abullah Nomination Papers and who intended to in the 2024 General Election.

4

20.    Plaintiff Charles Hier, is a registered Pennsylvania voter who signed the West/Abullah Nomination Papers in the Western District of Pennsylvania and who intended to vote in the 2024 General Election.

21.    Voters intended to vote for West and Abdullah in the 2024 General Election.

22.    Voters intend to vote in the 2028 General Election.

23.    Defendant Department is a Pennsylvania Executive Branch Agency under the leadership of the Secretary of the Commonwealth, *see* 71 P.S. § 273, vested with only such powers as are granted to it by statute.

24.    Defendant Secretary is the Secretary of the Commonwealth who has certain enumerated responsibilities under the Election Code, including, *inter alia*, the power and duty "[t]o certify to county boards of elections for primaries and elections the names of the candidates for President and Vice-President of the United States," 25 P.S. § 2621(c), and "[t]o receive and determine, as hereinafter provided, the sufficiency of nomination petitions, certificates and papers of candidates for President of the United States," *id.* at § 2621(d).

## IV.    FACTUAL ALLEGATIONS

### A.    Nomination of candidates for President and Vice-President of the United States under the Pennsylvania Election Code.

25.    Generally, the Election Code provides for two avenues through which candidates for President and Vice-President of the United States may have their names printed on the general election ballot: (1) nomination by major political *parties*

(25 P.S. §§ 2861-2883), or (2) nomination by political *bodies* (including "minor political parties") (25 P.S. §§ 2911-2914).

26.     To fully understand the constitutional violations caused by this regime, a brief discussion of both methods is necessary.

27.     Under the Election Code, any party whose share of registered voters statewide is equal to or greater than fifteen percent and who had at least one candidate poll above a certain minimum threshold is deemed a "political party." 25 P.S. §§ 2831(a),[1] 2872.2.

28.     For decades, the Republican and Democratic parties have been the only parties that have met the criteria to enjoy "political party" status.

29.     Each political party is entitled to choose its nominee for President and Vice-President of the United States at the party's national convention.

30.     Thereafter, the presidential candidate of each political party chooses a slate of presidential electors. *See* 25 P.S. § 2878.

---

[1] Although Section 801 defines a "political party," as "[a]ny party or political body, one of whose candidates at the general election next preceding the primary polled in each of at least ten counties of the State not less than two per centum of the largest entire vote cast in each of said counties for any elected candidate, and polled a total vote in the State equal to at least two per centum of the largest entire vote cast in the State for any elected candidate, is hereby declared to be a political party within the State[.]" *Id.* at § 2831(a). But under Section 912.2, any "political party as defined in section 801(a) or (b) whose State-wide registration is less than fifteen per centum of the combined State-wide registration for all State-wide political parties as of the close of the registration period immediately preceding the most recent November election[,]" is defined as a "minor political party." *Id.* at § 2872.2(a). Currently, the Libertarian party is the only minor political party in Pennsylvania. However, because the ballot-access process for political bodies and minor political parties is identical in all respects relevant here, the term "political body," as used here, includes "minor political parties." *See id.* ("Notwithstanding any other provision in this act to the contrary, minor political parties shall nominate all of their candidates for the offices to be filled at the ensuing November election pursuant to section 9031 in accordance with the requirements of section 951, other than subsection (e)(6) and (7) thereof, and section 954,3 and shall obtain the required signatures during the same time frame available to political bodies.").

31.     Although the Election Code provides that a party's presidential electors must be chosen within thirty days, failure to do so is in no way fatal to the candidacy of a political party's presidential candidate, provided that the designation is made "as soon as may be possible after the expiration of thirty days." *Id.*

32.     Notably, this provision does not require presidential electors to submit affidavits or pay any fees; rather, all that is required is the presidential elector's name and address. *See id.* ("The names of such nominees, with their residences and postoffice addresses, shall be certified immediately to the Secretary of the Commonwealth by the nominee for the office of President or Vice-President, as the case may be, making the nominations.").

33.     By contrast, a political party whose total share of statewide support is below the aforementioned threshold, or a political body, which is defined as an "an independent body of electors," 25 P.S. § 2602, nominates its candidates for the general election—including candidates for President and Vice-President—by filing nomination papers pursuant to certain statutory requirements. *See* 25 P.S. §§ 2911-2914.

34.     The "nomination of candidates for any public office may also be made by nomination papers signed by qualified electors of the State, or of the electoral district for which the nomination is made, and filed in the manner herein provided." *Id.* at § 2911(a).

7

35.    Nomination papers of presidential candidates must be signed by at least five thousand qualified electors, *see id.* at § 2911(b),[2] and be accompanied by "an affidavit of each ***candidate*** nominated therein[,]" with certain attestations, *see id.* at § 2911(e) (emphasis added).

36.    In terms of eligibility, "[a]ny person who is a registered and enrolled member of a party during any period of time beginning with thirty (30) days before the primary and extending through the general . . . election of that same year shall be ineligible to be the candidate of a political body" in that year's general election. *Id.* at § 2911.1.

37.    Furthermore, "each candidate nominated by a nomination paper" must submit "[t]he same filing . . . as required in section 913 for the filing of nomination petitions by candidates for nomination to the same office." *Id.* at § 2914.

## B.    The role of presidential electors

38.    Presidential electors fulfill a role under the Election Code that is distinct from candidates for office.

39.    Once designated, individual presidential electors for Presidential and Vice-Presidential candidates—of both political parties and political bodies—remain

---

[2] Although Section 951(b) imposes a substantially higher signature requirement, *see* 25 P.S. § 2911(b), in *Constitution Party of Pa. v. Cortés*, No. 12-2726, Doc. No. 115 (E.D. Pa. Feb. 1, 2018), the United States District Court for the Eastern District of Pennsylvania found the requirement unconstitutional and replaced it with a 5,000-signature minimum for presidential candidates. By its terms, the decision in *Constitution Party of Pa.* only applies to the three political bodies and minor political parties who lodged the complaint. However, the Secretary has recognized that the Court's rationale would likely apply with equal force to all bodies and parties that are required to nominate their candidates by nomination papers and, thus, has announced that the Department would accept nomination papers that comply with the minimum signature requirements interposed by *Constitution Party of Pa.*

largely unknown to the general public and have virtually no involvement in the political process until several weeks after the general election.

40.    Presidential electors are not listed on the ballot or in election materials provided to voters by election officials.

41.    For example, a sample 2020 election ballot for Beaver County, attached as Exhibit A, lists only candidates for President and Vice-President without listing presidential electors. And it instructs voters to "[v]ote for the candidates of one party for President and Vice-President or insert the names of candidates." *Id.*

42.    And none of the Election Code's various public notice provisions require disclosure of the names of presidential electors.

43.    Similarly, as a practical matter, it is exceedingly difficult for voters to ascertain the identities of the presidential electors.

44.    To that end, the names of presidential electors do not appear on the Department's "Candidate Database," its "Unofficial List of Candidates," or any other portion of the Department's website.

45.    Indeed, upon information and belief, the Department does not publicly disclose—except to specific individuals who requested such information—the identity of individual presidential electors prior to the election.

46.    The Election Code details the role of presidential electors. Once the results of the presidential election have been determined, the individuals designated to act as electors by the winning presidential candidate "assemble at the seat of government of this Commonwealth [*i.e.*, Harrisburg], at 12 o'clock noon of the day,

which is, or may be, directed by the Congress of the United States, and shall then and there perform the duties enjoined upon them by the Constitution and laws of the United States." 25 P.S. § 3192.

47.    The Election Code further provides for the compensation of presidential electors and the procedure for filling any vacancies that occur. *See id.*; 25 P.S. § 3193.

48.    With no mention of presidential electors in any other statute, the above provisions provide the extent of the powers and duties of presidential electors.

**C.    Defendants' application of the Election Code to political bodies**

49.    The Department interprets these Election Code provisions for political bodies to gain ballot access.

50.    For the 2024 General Election, that interpretation was provided on the Department's website under a page titled "Third Party Nomination Paperwork." *See* Exhibit B.

51.    Inexplicably, the Department contends that every individual designated as a presidential elector by a political body is a "candidate."

52.    Among other things, according to the Department, presidential electors were required to submit the candidate affidavit required under 25 P.S. § 2911. Specifically, the frequently asked questions portion of the Department's website provides, in relevant part, the following:

> **Do presidential electors need to complete the Candidate's affidavit?**
>
> Yes, minor political party and political body candidates for the office of presidential elector must file candidates'

affidavits by the August 1 deadline. 25 P.S. §§ 2911(e),
2913(a).

*Id.*

53.     Upon information and belief, the 2024 election was the first time
Defendants interpreted and enforced 25 P.S. § 2911 in this manner.

54.     The Department also took the position that the disaffiliation
requirements set forth in 25 P.S. § 2911 apply to presidential electors:

> **Do presidential electors submitting nomination
> papers need to have the same party affiliation as
> the candidate?**
>
> No, but any person who is a registered and enrolled
> member of the Democratic, Republican, or Libertarian
> party during any period of time beginning thirty (30) days
> before the primary and extending through the general or
> municipal election of that same year is ineligible to be a
> candidate for presidential elector of a political body in a
> general or municipal election held in that same year. 25
> P.S. § 2911(e).

Ex. B.

55.     The Nomination Paper form created by the Department also requires
candidates for President and Vice-President to list all nineteen presidential electors
on each sheet.

56.     Specifically, the Department's website provides:

> A presidential candidate must nominate 19 individuals to
> serve as candidates for the office of presidential elector.

*Id.*

**D.    Candidates' submission of the Nomination Papers and Defendants' refusal to accept them.**

57.    The Department's foregoing interpretation and its disparate effect on Candidates and Voters first became evident when nomination papers came due in August 2024.

58.    On July 11, 2024, Candidates timely filed the West/Abdullah Nomination Papers with Defendants.

59.    The West/Abullah Nomination Papers contained over 13,000 signatures, including those of Voters.

60.    In addition, Candidates paid the relevant filing fee, and attached their respective candidate affidavits. *See* 25 P.S. § 2911(b)-(e); 25 P.S. § 2914.

61.    On that day, Defendants issued to a campaign representative a notice that the Department did not receive a valid candidate affidavit.

62.    On August 1, Defendants rejected the West/Abdullah Nomination Papers because they did not have candidate affidavits for all nineteen individual presidential electors.

63.    The next day, Defendants emailed the rejection notice to Candidates' campaign.

64.    Despite Candidates' disagreement with Defendants' interpretation of the Election Code, Candidates, their presidential electors and others attempted to cure this alleged infirmity.

65.    But Defendants steadfastly refused to accept the West/Abdullah Nomination Papers based on their interpretation of the Election Code as requiring

12

every single presidential elector for a political body presidential candidate to submit a candidate affidavit.

66.    Certain presidential electors and substitute presidential electors for Candidates filed a mandamus and declaratory relief action with the Commonwealth Court under the Court's original jurisdiction. These electors and substitute electors sought a writ of mandamus compelling the Department and Secretary to accept the West/Abdullah Nomination Papers in accordance with their statutory obligations. Alternatively, the electors and substitute electors sought a declaration that the Department's interpretation of 25 P.S. § 2911 was contrary to the Election Code, the Pennsylvania Constitution, and the United States Constitution. *See Williams v. Pa. Dep't of State*, No. 394 MD 2024 (Pa. Cmwlth.).

67.    The Commonwealth Court dismissed the action filed by Candidates' presidential electors, primarily based on laches, and the Pennsylvania Supreme Court affirmed by a per curiam order. *See Williams v. Pa. Dep't of State*, 2024 WL 3912684 (Pa. Cmwlth., No. 394 M.D. 2024, filed Aug. 23, 2024), *aff'd*, 2024 WL 4195131 (Pa., No. 25 WAP 2024, filed Sept. 16, 2024).

68.    Candidates sought leave to intervene while *Williams* was pending before the Supreme Court, and that request for intervention was denied.

69.    Candidates were not the only political body candidates for President and Vice-President who have had their nomination papers rejected or challenged because of Defendants' interpretation of 25 P.S. § 2911. *See Clymer v. Schmidt*, 2024 WL 3912661 (Pa. Cmwlth., No. 376 M.D. 2024, filed Aug. 23, 2024), *aff'd*, 2024 WL

13

4181585 (Pa., No. 67 MAP 2024, filed Sept. 13, 2024); *In re: Nomination Papers of Claudia De la Cruz*, No. 2024 WL 3982157 (Pa. Cmwlth., No. 379 M.D. 2024, filed Aug. 20, 2024), *aff'd*, 2024 WL 4181581(Pa., No. 56 EAP 2024, filed Sept. 13, 2024).

70.    Defendants' interpretation of 25 P.S. § 2911 treats Candidates and Voters differently than candidates of political parties and voters for political parties.

71.    Without advancing any state interest, Defendants' interpretation imposes a severe burden on Plaintiffs' constitutional interests that they would not face if they were not candidates of and voters for a political body rather than a political party.

72.    With the 2024 General Election less than two months away. Candidates and Voters filed with this Court a Verified Complaint for Declaratory and Injunctive Relief and, simultaneously, a Motion for Preliminary Injunction, seeking to enjoin Defendants' interpretation of Section 951 and compel them to accept the West/Abdullah Nomination Papers.

73.    After a hearing, this Court expressed "serious concerns with the Secretary's application of the election code's restrictions to Dr. West" because the law as applied appears designed to restrict ballot access. *West et al. v. Dep't of State*, No. 2:24-cv-1349, 2024 WL 4476497, at *1 (W.D. Pa. Oct. 10, 2024). But, ultimately relying on the *Purcell* principle articulated by the Supreme Court in *Purcell v. Gonzalez*, 549 U.S. 1 (2006), this Court denied injunctive relief because of the proximity to the election.

74.    Plaintiffs appealed and sought an injunction pending appeal from this Court and the Third Circuit, both of which denied the request.

75.    Finally, Plaintiffs filed an Emergency Application for Injunction with the United States Supreme Court, which was denied on October 30, 2024. *See West v. Pa. Dep't of State*, No. 24-2913 (U.S. Oct. 30, 2024).

76.    On November 5, 2024, Pennsylvania conducted the General Election and Candidates did not appear on the ballot in any county.

77.    Cornel West intends to seek ballot access in Pennsylvania as a political body presidential candidate in 2028.

78.    Voters hope to cast their vote for presidential and vice-presidential candidates from political bodies in future presidential elections.

79.    Upon information and belief, in 2028, Defendants will interpret Section 951 of the Election Code the same way they did in 2024.

80.    In other words, in 2028, Defendants will require that political body presidential candidates identify electors prior to circulating nomination papers and require those electors to submit candidate affidavits with the nomination papers before political body candidates may appear on the ballot.

81.    Given the short timeline between the deadline for submitting nomination papers and the election, future constitutional challenges to Defendants' interpretation of Section 951 of the Election Code will be unable to be fully litigated prior to ballot printing and administration of the General Election.

## COUNT I
## 42 U.S.C. § 1983 –Violation of First Amendment Right to Freedom of Association

82.     Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

83.     The First Amendment to the United States Constitution protects the freedom of speech and association. U.S. Const. amend. I.

84.     Plaintiffs have a fundamental right to political association protected by the First Amendment to the United States Constitution, which includes the right of individuals to associate for the advancement of political beliefs.

85.     Under the First and Fourteenth Amendments, this Court balances the character and magnitude of the injury to the constitutional right against "the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff[s'] rights." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *Anderson*, 460 U.S. at 789. Where the burden on the right is severe, strict scrutiny applies, meaning that it cannot pass constitutional muster unless it is narrowly tailored to advance a compelling state interest. *See Donald J. Trump for President, Inc. v. Boockvar*, 493 F. Supp. 3d 331, 384 (W.D. Pa. 2020).

86.     Indeed, "[a] burden that falls unequally on new or small political parties or on independent candidates impinges, by its very nature, on associational choices protected by the First Amendment," by discriminating against both candidates and

voters whose political preferences lie outside the existing political parties. *Anderson*, 460 U.S. at 794.

87.     Further, restricting a political body's access to the ballot infringes citizens' fundamental rights of association and speech protected by the First and Fourteenth Amendments." *Green Party of Pa. v. Aichele*, 89 F. Supp. 3d 723, 738 (E.D. Pa. 2015).

88.     Defendants' interpretation of 25 P.S. § 2911 described above is intended to and did restrict Candidates' access to the ballot.

89.     Defendants' interpretation of 25 P.S. § 2911 also unduly restricted Voters' right to cast their votes effectively by impinging on their associational rights simply because their political preferences fall outside the existing political parties.

90.     Defendants' same interpretation of 25 P.S. § 2911 in 2028 will again restrict Candidates' access to the ballot and Voters rights to effectively cast their votes.

91.     Defendants cannot proffer any state interest, let alone a compelling state interest for this distinction and, therefore, Defendants' interpretation unduly burdens Plaintiffs' First Amendment rights.

92.     Defendants' interpretation of 25 P.S. § 2911 significantly encroaches on Plaintiffs' associational freedom. Accordingly, Plaintiffs are entitled to a judgment declaring Defendants' interpretation to be in violation of the First Amendment to the United States Constitution.

## COUNT II
## 42 U.S.C. § 1983 – Equal Protection Violation

93.     Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

94.     The Fourteenth Amendment to the United States Constitution ensures that no state shall deny to any person equal protection of the laws. U.S. Const. amend. XIV.

95.     Again, under the First and Fourteenth Amendments, this Court balances the character and magnitude of the injury to the constitutional right against "the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff[s'] rights." *Burdick*, 504 U.S. at 434 (1992); *Anderson*, 460 U.S at 789. If it is a severe burden on the right, strict scrutiny applies and the rule must be narrowly tailored and advance a compelling interest. *See Donald J. Trump for President, Inc*, 493 F. Supp. 3d at 384.

96.     Defendants' interpretation of 25 P.S. § 2911 unequally and unfairly discriminates against political body voters and candidates without a compelling state interest.

97.     Political parties are not required to submit a slate of presidential electors until thirty days after the parties have nominated their candidate for president. 25 P.S. § 2878. And they are not required to submit candidate affidavits for every single presidential elector. *See id*.

98.     In fact, a political party's failure to submit the names of presidential electors within the allotted time does not affect that party candidate's right to appear on the ballot. *See id*.

99.     Presidential electors may move from the jurisdiction or change their intent to serve as presidential electors before or after Nomination Papers are due. But the will of registered voters who signed the West/Abdullah Nomination Papers and may do so in the future should not be thwarted because the presidential electors could not timely complete a discriminatory candidate-affidavit requirement.

100.    Defendants' interpretation of 25 P.S. § 2911, that every one of Candidates' presidential electors must complete a candidate affidavit, is a substantial burden not supported by any state interest (or by the statute itself).

101.    Presidential electors are not candidates for public office within the Election Code or under any common sense understanding of the term. Voters do not vote for presidential electors individually, and presidential electors do not appear on the ballot. *See supra* ¶¶ 35–45.

102.    Instead, presidential electors fulfill a limited role as dictated by statute to appear in Harrisburg at the appointed time and carry out their constitutional duty. *See supra* ¶¶ 43-45; *see also* 25 P.S. § 3192.

103.    There is no basis for this discriminatory interpretation of the Election Code and, even if there was, there is no discernable state interest to treat Candidates and Voters from a political body differently than political parties.

104.    As such, Defendants' interpretation of 25 P.S. § 2911 violates Plaintiffs' right to equal protection of the laws, is arbitrary and capricious, serves no compelling state interest, and is unconstitutional on its face and as applied.

105.    Defendants' interpretation of 25 P.S. § 2911 unfairly discriminates against Candidates as candidates of political bodies and Voters as voters for political body candidates. Plaintiffs are entitled to a judgment declaring Defendants' interpretation 25 P.S. § 2911 to violate the Fourteenth Amendment to the United States Constitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court render a judgment in their favor and grant the following relief:

(1)    Declare that Defendants' interpretation of 25 P.S. § 2911—that requires Candidates' and other political body candidates' presidential electors to submit candidate affidavits with Nomination Papers—violates the First Amendment and the Fourteenth Amendment to the United States Constitution;

(2)    Enjoin Defendants permanently from enforcing their interpretation of 25 P.S. § 2911;

(3)    Award Plaintiffs the cost of prosecuting this action together with attorneys' fees under 42 U.S.C. § 1988; and

(4)    Grant such further relief as this Court deems just and proper under the circumstances.

Respectfully submitted,

Dated: February 7, 2025

/s/ Matthew H. Haverstick
Matthew H. Haverstick (No. 85072)
Shohin H. Vance (No. 323551)
Samantha G. Zimmer (No. 325650)*
KLEINBARD LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Ph: (215) 568-2000
Fax: (215) 568-0140
Eml: mhaverstick@kleinbard.com
svance@kleinbard.com
szimmer@kleinbard.com

*Pro Hac Vice*

/s/ Erik Roberts Anderson
J. Andrew Crompton (No. 69227)*
Erik Roberts Anderson (203007)
Ryan T. Gonder (No. 321027)*
McNEES WALLACE & NURICK LLC
100 Pine Street
Harrisburg, PA 17101
Ph: (717) 232-8000
Eml: dcrompton@mcneeslaw.com
eanderson@mcneeslaw.com
rgonder@mcneeslaw.com

*Pro Hac Vice*

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Matthew H. Haverstick, hereby certify that on the date set forth below I caused a true and correct copy of the foregoing Amended Complaint for Declaratory and Injunctive Relief, to be served on the following via the Court's electronic filing system:

Jacob B. Boyer
Stephen Kovatis
Deputy General Counsel
Office of General Counsel
333 Market Street, 17th Floor
Harrisburg, PA 17101
(717) 460-6786

*Attorney for Defendants*

Dated: February 7, 2025                    /s/ Matthew H. Haverstick