## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

_____

|  |  |  |
|---|---|---|
| | : | |
| CORNEL WEST AND MELINA ABDULLAH, *et al.*, | : | |
| | : | |
| | : | CIVIL ACTION |
| Plaintiffs, | : | No. 24-1349 |
| | : | |
| v. | : | |
| | : | |
| PENNSYLVANIA DEPARTMENT OF STATE, *et al.*, | : | |
| | : | |
| Defendants. | : | |

_____:

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT</u>

Defendants Pennsylvania Department of State ("Department") and Al Schmidt, in his official capacity (collectively the "Defendants"), by counsel, respectfully submit this memorandum of law in support of their Motion to Dismiss Amended Complaint.

## I.    INTRODUCTION

Even though they failed to submit statutorily-required affidavits of candidacy for all of their 19 presidential electors, Plaintiffs sued to get on the 2024 general election ballot anyway. They were unsuccessful. However, even though they can no longer get the only relief they previously sought, Plaintiffs have decided to press on by filing the Amended Complaint, projecting their past issues into a future presidential election, speculating about the scope of possible hardships that may not emerge in 2028. Because this Court's authority is limited by both Article III of the Constitution and the Eleventh Amendment, Plaintiffs' attempt to resurrect their lawsuit should be rejected, and this nonjusticiable case should be dismissed for lack of jurisdiction.

*First*, Plaintiffs' claims related to the 2028 election are not ripe. Because the constitutional test here requires looking in part at the burden on the candidate, and because the burden of the affidavit requirement depends on particular facts surrounding the candidacy, there is no way to determine at this stage how burdensome the affidavit requirement might be on Plaintiffs. *Second*, Plaintiffs' claims that rely on facts related to the 2024 election are moot because that election is over. To the extent Plaintiffs contend that the same issue is capable of repetition in 2028, that argument fails for the same reason that their claim is not ripe—2028 will present a different set of circumstances than 2024 did. *Third*, even if there is a justiciable claim under Article III, Eleventh Amendment immunity bars relief here, because Plaintiffs have not alleged an *ongoing* violation of their civil rights. The mere fact that an alleged violation occurred in the past does not mean that its theoretical repetition in the future can be enjoined.

For any of these reasons, this Court should dismiss this case for lack of subject matter jurisdiction.

## II.    FACTS

Plaintiffs West and Abdullah (collectively the "Candidate Plaintiffs") were the nominees of the Justice for All political body for president and vice president of the United States, respectively, in 2024. Am. Compl. (ECF No. 60) ¶¶ 16-17. Plaintiffs Tunstalle, Hopkins-Bot, and Hier (collectively the "Voter Plaintiffs") are Pennsylvania voters who intended to vote for the Candidate Plaintiffs in the 2024 election. Am. Compl. ¶¶ 18-20.

Pennsylvania generally provides two separate paths for presidential candidates to appear on a general election ballot: For major political parties—the Republican and Democratic parties—candidates are nominated at a national convention after a public primary election, while both minor political parties and political bodies select their nominees "by filing nomination

papers pursuant to certain statutory requirements." Am. Compl. ¶¶ 25-33. Among the statutory requirements for political bodies is a requirement to submit an affidavit attesting to the candidate's election district, office sought, eligibility for office, and certification of an intent to comply with Pennsylvania law. Am. Compl. ¶ 35 & 25 P.S. § 2911(e).

Unlike nominees for other offices, nominees for president are required to submit a slate of presidential electors. That is because voters do not directly vote for candidates for president, but instead for presidential electors selected by the voter's preferred candidate. The electors selected by the candidate with the most votes after the general election assemble in December, at which time they cast Pennsylvania's votes in the Electoral College as set out in the United States Constitution. Am. Compl. ¶ 46. All political parties and political bodies are required to provide a list of their nominees for presidential elector to the Department. Am. Compl. ¶¶ 30, 55-56. Political parties are not required to submit candidate affidavits of their elector nominees, while political bodies are required to do so. Am. Compl. ¶¶ 51-52.

In 2024, the Candidate Plaintiffs' nomination papers were rejected by the Department—first on July 11 and then again on the deadline day, August 1—because they did not submit candidate affidavits for all 19 of their elector nominees. Am. Compl. ¶ 58-65. This rejection was required, *Clymer v. Schmidt*, 324 A.3d 640 (Pa. Commw. Ct.), *aff'd*, 322 A.3d 929 (Pa. 2024), and was consistent with guidance posted on the Department's website, which indicated that political bodies "must file candidates' affidavits by the August 1 deadline." Am. Compl. ¶ 52.

Representatives of the Candidate Plaintiffs sued in state court, contending that the affidavit requirement was counter to Pennsylvania law, the Pennsylvania Constitution, and the United States Constitution. Am. Compl. ¶ 66. They lost, both procedurally and on the merits, and that decision was affirmed on appeal. Am. Compl. ¶ 67. They then initiated this action in federal

court and filed a motion for a preliminary injunction, but that motion was denied and that denial was affirmed on appeal. Am. Compl. ¶¶ 72-75. The Candidate Plaintiffs did not appear on the 2024 general election ballot. Am. Compl. ¶ 76.

The Amended Complaint was filed on February 7, 2025. Defendants now move to dismiss for lack of subject matter jurisdiction.

## III.    ARGUMENT

### A.    Standard of Review

A defendant may move to dismiss a complaint under Rule 12(b)(1) where the district court lacks subject matter jurisdiction over a claim. Fed. R. Civ. P. 12(b)(1). In order to have subject matter jurisdiction over a dispute, a plaintiff must present a live claim, and thus a claim that is either unripe or moot requires dismissal for lack of subject matter jurisdiction. *Mayer v. Wallingford-Swarthmore Sch. Dist.*, 405 F.Supp.3d 637, 640 (E.D. Pa. 2019). Further, the assertion of immunity under the Eleventh Amendment challenges the court's subject matter jurisdiction, and thus is properly raised under Rule 12(b)(1). *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 n.2 (3d Cir. 1996). In a facial challenge to subject-matter jurisdiction, in which the defendant attacks the sufficiency of a complaint, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Electronics Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

### B.    Plaintiffs' Claims Related to the 2028 Election Are Not Ripe

The ripeness doctrine, which finds its roots in the case-and-controversy requirement of Article III of the United States Constitution, is "designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08

4

(2003) (cleaned up) By requiring a case to be ripe before rendering judgment, the doctrine ensures that no judgment about a policy will be rendered "until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Id.* Ripeness requires the court to consider "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties from withholding judicial consideration." *Comite' De Apoyo A Los Trabajadores Agricolas v. Perez*, 774 F.3d 173, 183 (3d Cir. 2014). Fitness for review includes "whether the claims involve uncertain and contingent events that may not occur as anticipated or may not occur at all." *Id.*

As it relates to the rules for the 2028 presidential election, Plaintiffs' claims are not currently fit for judicial decision for a number of reasons. First, there is no way to determine at this stage the severity of the burden on Plaintiffs, which this Court has noted is a core part of the legal analysis guiding this case. *See* Order, ECF No. 33, at 4-5. The burden on the Candidate Plaintiffs is going to be different in 2028 than it was in 2024, in large part because they will have ample time to find 19 eligible people and make sure each of those 19 people is willing and able to sign a simple sworn statement of their eligibility. Plaintiffs argued that the policy was thrust upon them in 2024, *see* Am. Compl. ¶ 53 (contending that "the 2024 election was the first time Defendants interpreted and enforced 25 P.S. § 2911 in this manner"). Setting aside whether that was true, it will not be the case for 2028 because Plaintiffs now know what they will need to submit. The theoretical burden on the Plaintiffs in 2028 is much less than what it was in 2024, and any actual burden is simply unknowable this far in advance of the election.

Second, Plaintiffs' claims are not ripe because it is too soon to know the full scope of the legal landscape. While the Department cannot unilaterally change statutory requirements, it can (and does) work with candidates, political parties, and political bodies to devise sensible

solutions to alleged difficulties they encounter during an election. Unlike the context in which this case arose—which was after the August 1 filing deadline had already passed—there are more than three years until the 2028 nomination deadline. None of the Department, Plaintiffs, or the Court can know at this stage precisely what policies or procedures will be in place in 2028 that could relieve the alleged burdens that emanate from the affidavit requirement. Moreover, there could be statutory changes to the Election Code between now and then that might affect Department policy. At this stage, any judicial opinion based on assumptions about what burdens might exist in 2028 is far closer to advisory than to a resolution of an actual case or controversy.

Further, Plaintiffs cannot establish any hardship if the Court allows at least some of these facts to develop in the coming years. The Candidate Plaintiffs need not make any serious organizational efforts until at least the middle of 2027, if not into 2028. For the Voter Plaintiffs, there is nothing at all for them to do until 2028, when they just need to ensure that they are properly registered. To be sure, Plaintiffs need not wait until the very last minute—or, as they did here, beyond that last minute—before filing suit. But a complaint filed in early 2025 cannot capture the entire relevant factual and legal landscape as it will exist leading up to 2028.

In its current posture, this case is similar to *Constitution Party of Pennsylvania v. Cortes*, 712 F.Supp.2d 387 (E.D. Pa. 2010), which (like this case) was a challenge to the ballot access rules for political bodies. The plaintiffs there cited facts and legal decisions from prior elections and tried to argue that these barriers to ballot access "'chilled' the rights of future candidates who might attempt to gain access to the ballot." *Id.* at 394. The Court, however, found this claim unripe and reliant on hypothetical facts about future elections. *Id.* at 398-99. Like here, there were unknown facts and contingent events that had to occur, and as a result, "[a]ny opinion would be advisory, based on hypothetical facts and speculation." *Id.*

Thus, to the extent that Plaintiffs contend that there is currently any infringement on their right to access the 2028 presidential ballot, their claim is unripe.

### C.    Plaintiffs' Claims Related to the 2024 Election Are Moot

"A case is moot when 'the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *United Steel Paper & Forestry Rubber Mfg. Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLC v. Gov't of Virgin Islands*, 842 F.3d 201, 208 (3d Cir. 2016) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). Mootness asks "whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." *Id.* (citation omitted).

There is no question that, because the 2024 election has come and gone, Plaintiffs' claim became moot. However, the Third Circuit has recognized that in many election cases, an exception to mootness applies—"the 'capable of repetition yet evading review' exception to the mootness doctrine." *Merle v. United States*, 351 F.3d 92, 94 (3d Cir. 2003). Under this doctrine, "a court may exercise its jurisdiction and consider the merits of a case that would otherwise be deemed moot when '(1) the challenged action is, in its duration, too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'" *Id.* (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)).

Although the Third Circuit has applied this mootness exception in election cases, those cases typically involve direct challenges to statutory language, under factual circumstances unlikely to change. For example, in *Merle*, a federal employee challenged the Hatch Act bar on his ability to run for political office. 351 F.3d at 95. The case was not moot because "the Hatch Act remain[ed] binding law," the plaintiff expressed an intent to run again, and the statutory bar would be equally applicable. *Id.* Similarly, *Benezet Consulting LLC v. Secretary Commonwealth*

*of Pennsylvania* was a direct challenge to a statutory requirement that "remain[ed] in place" and would certainly be applicable to "future election cycles." 26 F.4th 580, 584 (3d Cir. 2022).

In this case, by contrast, it is not clear that the same situation confronted by the Candidate Plaintiffs is capable of repetition. This case is not a straightforward facial challenge to the constitutionality of a statute. Rather, Plaintiffs' claims depend on the alleged burden of a requirement with which they claim to have been unfamiliar under circumstances that were applied to them during the 2024 election. As described above, it is far from certain that the same circumstances will repeat in 2028. Quite obviously, Plaintiffs are now well aware of this requirement, and thus the burden of complying in 2028 will be different than it was in 2024. For that reason, Plaintiffs' claim is moot and this claim should be dismissed.

### D.    Plaintiffs' Relief Is Barred by Eleventh Amendment Immunity

It has been long established that the Eleventh Amendment of the United States Constitution bars all private lawsuits against non-consenting states in federal court. *Karns v. Shanahan*, 879 F.3d 504, 512 (3d Cir. 2018) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)). Eleventh Amendment immunity "is designed to preserve the delicate and 'proper balance between the supremacy of federal law and the separate sovereignty of the States.'" *Id.* (quoting *Alden v. Maine*, 527 U.S. 706, 757 (1999)). This immunity bars suits against the states and state agencies "regardless of the relief sought." *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). A claim against a state government official, in his or her official capacity, is "no different from a suit against the State itself" because it "is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

As a clear threshold matter, all claims against the Department should be dismissed pursuant to its Eleventh Amendment immunity. This Court, plainly, lacks jurisdiction under any such claim. *See Will*, 491 U.S. at 66.

Any claim against the Secretary in his official capacity must proceed under the *Ex parte Young* doctrine, which allows only prospective declaratory or injunctive relief addressing an ongoing violation of federal law. *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 506 (3d Cir. 2001). Because it concerns constitutional immunity, the requirement of an ongoing violation of law should be read strictly. That is, a matter may be justiciable under Article III "yet still not allege an ongoing violation for purposes of invoking relief under the *ex parte Young* exception to Eleventh Amendment immunity." *Haagensen v. Pa. State Police*, No. 08-cv-727, 2009 WL 3834007 (W.D. Pa. Oct. 22, 2009), *report and recommendation adopted as modified,* 2009 WL 3834004 (W.D. Pa. Nov. 16, 2009). For example, in *Haagensen*, the court dismissed an attempt to enjoin the enforcement of a statute as applied to the plaintiff, because she had not alleged an **ongoing** violation of federal law. Although she had previously been charged under the statute for activity that she claimed was protected by the First Amendment, the plaintiff failed to sufficiently aver that she faced an ongoing threat of prosecution of First Amendment protected conduct. *Id.* at *14-15. That is, there was no "ongoing practice for the Court to enjoin." *Id. See also Surina v. S. River Bd. of Educ.*, 20-2804, 2022 WL 264464, at *3 (3d Cir. Jan. 27, 2022) (holding that the "capable of repetition yet evading review" mootness exception did not save a claim that failed to aver ongoing conduct).

Similarly here, there is no ongoing burden to the Candidate Plaintiffs' presidential candidacy that this Court can enjoin. There is, in fact, no candidacy at all. They are not currently or imminently assembling a campaign that might be affected by the requirement that presidential

electors submit affidavits. Like in *Haagensen*, Plaintiffs' claim is about past enforcement and speculative future enforcement under uncertain factual scenarios; and so, like in *Haagensen*, there is no ongoing conduct for this Court to enjoin.

Plaintiffs' framing of their claim in their Status Report presents a claim barred by immunity. They contend that they want to show that the Secretary's "interpretation of the Election Code viola*ted* Plaintiffs' constitutional rights," *see* ECF No. 48 (emphasis added), but this Court lacks jurisdiction to issue any equitable relief against the Secretary specifically related to the 2024 election. Rather, the issue can only be whether there is an ongoing violation of Plaintiffs' right that should be enjoined. The Amended Complaint does not present any such violation.

## IV.    CONCLUSION

Wherefore, this Court should grant Defendants' motion and dismiss Plaintiffs' claims for lack of subject matter jurisdiction.


Date: February 21, 2025

Respectfully submitted,

JENNIFER C. SELBER
GENERAL COUNSEL

By:  /s/ Stephen R. Kovatis
STEPHEN R. KOVATIS (ID No. 209495)*
Deputy General Counsel
JACOB BOYER (ID No. 324396)
Deputy General Counsel

GOVERNOR'S OFFICE OF GENERAL COUNSEL
30 North Third Street, Suite 200
Harrisburg, PA  17101
Phone: 717-602-0943
Email: skovatis@pa.gov

*Admitted pro hac vice

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I, Stephen R. Kovatis, hereby certify that I have caused all parties to be served on this day with the foregoing Memorandum of Law via the Court's ECF system.


Date: February 21, 2025                     By:  /s/ Stephen R. Kovatis
                                                 STEPHEN R. KOVATIS