IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CORNEL WEST AND MELINA ABDULLAH, *et al.*, | : : : : |
| Plaintiffs, | : CIVIL ACTION : No. 24-1349 |
| v. | : : |
| PENNSYLVANIA DEPARTMENT OF STATE, *et al.*, | : : : |
| Defendants. | : : |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

Defendants Pennsylvania Department of State ("Department")[1] and Al Schmidt, in his official capacity (collectively the "Defendants"), by counsel, respectfully submit this reply memorandum of law in further support of their Motion to Dismiss Amended Complaint.

**I.    INTRODUCTION**

This case is about the burden on presidential candidates to find 19 people qualified and willing to represent them in the Electoral College and have each person submit an affidavit to that effect, balanced against the state's interest in ensuring that Pennsylvania is able to cast its 19 Electoral College votes. But the Amended Complaint, which was filed in February 2025, does not and cannot present facts that are necessary and sufficient to decide this question. As set forth in Defendants' opening brief, ECF No. 62 ("Def. Br."), the next presidential election is not until 2028, and there is no way to know now what the burden might be on a currently nonexistent

---

[1]    Plaintiffs concede that the Department should be dismissed as a Defendant pursuant to Eleventh Amendment immunity. Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss Amended Complaint, ECF No. 64, ("Pl. Br.") at 8.

1

campaign. Further, any difficulties Plaintiffs encountered in 2024 were related to the delayed timing of their actions, which was entirely of their own making and unlikely to repeat. This case is therefore nonjusticiable, because it is both moot and unripe. Finally, for similar but distinct reasons, Eleventh Amendment immunity precludes this Court from exercising jurisdiction over a state official who is not *currently* violating civil rights.

Each of these is an independent reason why this Court should dismiss the Amended Complaint.

II.   ARGUMENT

   A.   Claims Related to the 2028 Election Are Not Ripe Because Factual Uncertainties Underlie Unanswerable Legal Questions

Plaintiffs do not dispute that there are factual uncertainties about their claim. Instead, the core of their argument is that these factual uncertainties do not matter because their claim is "predominantly legal," and that if they do not get an advisory opinion about elector affidavits, they will be forced to make "costly choices." Pl. Br. at 3-4. But Plaintiffs never develop this argument by explaining ***what*** costly choices they will inevitably have to make to comply with any affidavit requirement. That is because the costliness of their compliance—that is, how burdensome the affidavit requirement will be for them—is precisely what is unknowable at this point. *See* Def. Br. at 5-6 (explaining why the Court cannot weigh the severity of the burden on Plaintiffs without knowing specific facts surrounding that burden, which will not be knowable until a campaign begins). As this Court has already pointed out, Plaintiff's claim depends on the law's burden "as applied to him." Order, ECF No. 33, at 1.[2] Any facts about that burden relevant to the 2028 election are critical but speculative, and their claim is thus not predominantly legal.

---

[2] Plaintiff's brief alludes to a facial challenge as well. *See* Pl. Br. at 2. But even a facial challenge will require knowing something about the burden faced by third party candidates in

In support of their argument, Plaintiffs rely on *OpenPittsburgh.Org v. Voye*, 563 F.Supp.3d 399 (W.D. Pa. 2021), a case challenging a Pennsylvania law that prohibited unregistered Pennsylvania citizens and out-of-state residents from circulating referendum petitions. *Id.* at 409. Even though there was no pending referendum, the court found the claim ripe because the plaintiffs had alleged that the law "imposes an economic cost on them beginning in advance of the actual date by which petitions are due to be included on the general election ballot," because, for example, they had to decide whether to cancel contracts with out-of-state petition circulators. *Id.* at 420. By contrast, here Plaintiffs have no pre-campaign costs or burdens associated with the affidavit requirement. Whether they win or lose this lawsuit, they **will still have to find 19 electors** whenever they begin their 2028 campaign; the only question is whether those electors will need to submit an affidavit attesting to their willingness and eligibility, which is a burden that will not hit them for years.

*Philadelphia Federation of Teachers, American Federation of Teachers, Local 3, AFL-CIO v. Ridge*, 150 F.3d 319 (3d Cir. 1998), which the court in *OpenPittsburgh.Org* cited, is more analogous to Plaintiffs' claim here. In that case, a teachers' union challenged a change to the worker's compensation system. *Id.* at 321. The Third Circuit acknowledged that it was "almost certain" that the changes would operate against teachers, but it nevertheless held that the claim was unripe because there was "a great deal of uncertainty regarding *how* the statute will operate against plaintiffs' members." *Id.* at 324 (emphasis in original). That same uncertainty exists here.

Further, Plaintiffs attempt to distinguish *Constitution Party of Pennsylvania v. Cortes*, 712 F.Supp.2d 387 (E.D. Pa. 2010), by arguing that it "did not preclude access to the ballot or

---

2028. Regardless, if the Court allows this case to proceed, it should specify as to whether it is a facial challenge, as-applied challenge, or both.

require swift adjudication before ballot printing." Pl. Br. at 5. But *Cortes* was very much a ballot access case. The plaintiffs there argued that the assessment of litigation costs against third parties "'chilled' the rights of future candidates who might attempt to gain access to the ballot." 712 F.Supp.2d at 394. In other words, the plaintiffs were arguing that the election rules were unconstitutional because they effectively precluded ballot access for third parties. That court decided that a third party could adequately litigate whether its attempt to gain access to a ballot was being unlawfully chilled prior to an election, based on particular facts related to that election. *Id.* at 399 (observing that, if a third party faces an unlawful imposition of costs, "the candidate can challenge the constitutionality of such costs in state court"). The same is true here.

Finally, Plaintiffs contend that they cannot wait for facts related to the 2028 election to develop because "Defendants will again raise a laches defense." Pl. Br. at 4. This is likely not so, if the case is brought promptly when Plaintiffs encounter problems. Laches does not bar all ballot access claims—far from it. Rather, laches bars claims where a candidate inexcusably waits too long to seek access to a ballot after experiencing an allegedly unlawful barrier to that ballot— which is exactly what happened in this case previously. *See* Defendants' Brief in Opposition to Plaintiffs' Motion for a Preliminary Injunction, ECF No. 20, at 8 (noting that Plaintiffs were on notice of the affidavit requirement by July at the latest but declined to sue until September); *see also* Order, ECF No. 33, at 12. A ripe claim may develop if and when Plaintiffs experience a concrete, articulable hardship related to their ballot access, and, absent their own delay, Plaintiffs can pursue that claim well before any deadline imposed by laches or the *Purcell* principle.

In sum, Plaintiffs may or may not have a justiciable claim in the future; they simply do not have one now.

### B.     Plaintiffs Fail to Show Why Their Particular Claims Are Likely to Repeat But Evade Review

Plaintiffs respond to the mootness argument by citing numerous cases for the general proposition that ballot access cases are not mooted by the passing of an election, because the issues are capable of repetition but evading review. *See* Pl. Br. at 6-7. But while that might be true some of the time, Plaintiffs make no effort to show why it is true here. Many of the issues they experienced in 2024 related to their own delays in pursuing affidavits from their electors and bringing legal challenges when they failed to get them. Further, this is not a case challenging a blanket ban on ballot access, like in *Merle*. And, as previously explained, the material circumstances in 2028 will be different from the circumstances in 2024. *See* Def. Br. at 8. To the extent this case is based on the circumstances that Plaintiffs encountered in 2024, it is moot; to the extent it is based on anticipation of events in 2028, it is speculative. Neither is justiciable.

Moreover, whatever comes of the mootness issue, Plaintiffs' response to mootness undermines their response to ripeness. That is, they argue that, even if they do not run and encounter future problems, someone else might. *See* Pl. Br. at 7. But this speculative framing illustrates the problem—now, when balancing the candidate's burden against the state's interest, the Court will have to hypothesize about not just theoretical future problems encountered by these candidates, but it will have to imagine the situation of some other unknown candidate.

Finally, Plaintiffs contend that their claim will evade review because it will not be ripe until mid-August 2028. *See* Pl. Br. at 7. That reads Defendants' arguments too narrowly. Defendants do not contend that Plaintiffs have to wait for a rejection of their paperwork in order to sue; rather, they simply must be able to articulate specific facts related to the difficulty experienced by the campaign in finding 19 eligible electors to sign affidavits. That effort can, and should, begin right as the campaign begins, meaning Plaintiffs will know what (if any)

hardships they face well before August 2028. Plaintiffs offer no argument as to why they will not be able to adequately litigate this issue, based on actual known facts, in that time frame.

For these reasons, Plaintiffs' claims are moot.

### C. Plaintiffs Misapprehend the Eleventh Amendment Immunity Argument, Which Seeks Dismissal for Lack of an Ongoing Constitutional Violation

The parties agree that the claim against the Secretary arises from the *Ex parte Young* exception to Eleventh Amendment immunity. *See* Def. Br. at 9. This narrow exception allows this Court to exercise jurisdiction only when there is an **ongoing** violation of federal law, and here there is no ongoing violation against Plaintiffs. *See id.* The mere fact that a plaintiff has experienced past violations and expects future violations is not enough. *See id.* (citing *Haagensen*).

Plaintiff responds by citing the Third Circuit's decision in *Constitution Party of Pa. v. Cortes*, 824 F.3d 386, 396 (3d Cir. 2016), to show that the Secretary is the proper party to sue under *Ex parte Young* in an election challenge. *See* Pl. Br. at 9. This argument is a *non sequitur*. The Secretary does not dispute that he has sufficient connection to the policy sought to be enjoined here. As to the actual argument—that past actions combined with future expectations do not satisfy the ongoing violation requirement—Plaintiffs offer no response. Plaintiffs also do not dispute that this argument is distinct from the mootness argument, because constitutional immunity provides broad protections that encompass even otherwise justiciable claims under Article III. *See* Def. Br. at 9.

Thus, this Court can and should dismiss this case on Eleventh Amendment immunity grounds, in addition to or apart from any ripeness or mootness concerns.

### III.  CONCLUSION

Wherefore, for the reasons stated above and previously, this Court should grant Defendants' motion and dismiss Plaintiffs' claims for lack of subject matter jurisdiction.

Date: March 31, 2025

*Admitted pro hac vice

Respectfully submitted,

JENNIFER C. SELBER
GENERAL COUNSEL

By: /s/ Stephen R. Kovatis
STEPHEN R. KOVATIS (ID No. 209495)*
Deputy General Counsel
JACOB BOYER (ID No. 324396)
Deputy General Counsel

GOVERNOR'S OFFICE OF GENERAL COUNSEL
30 North Third Street, Suite 200
Harrisburg, PA  17101
Phone: 717-602-0943
Email: skovatis@pa.gov

*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

      I, Stephen R. Kovatis, hereby certify that I have caused all parties to be served on this day with the foregoing Memorandum of Law via the Court's ECF system.

Date: March 31, 2025　　　　　　　　　　By:  /s/ Stephen R. Kovatis
　　　　　　　　　　　　　　　　　　　　　　STEPHEN R. KOVATIS