IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CORNEL WEST, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | 2:24-cv-1349 |
| | ) | |
| v. | ) | |
| | ) | |
| PENNSYLVANIA DEPARTMENT OF | ) | |
| STATE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER

Before the Court is Defendants' motion to dismiss (ECF 61) the amended complaint (ECF 60). The motion is fully briefed (ECF 62, ECF 64, ECF 65), and the Court heard argument on June 11, 2025 (ECF 73), and so it is ready for disposition. After careful consideration, for the reasons below, the Court will **GRANT** in part and **DENY** in part Defendants' motion.

## DISCUSSION & ANALYSIS

Third-party Justice For All candidates for President and Vice President of the United States, Drs. Cornel West and Melina Abdullah, sought placement on Pennsylvania's 2024 presidential general-election ballot. Defendants rejected them, relying on a then-new interpretation of Pennsylvania's election code that treated non-major-political parties, like Justice For All, differently from the major political parties. Would-be electors of Drs. West and Abdullah challenged this interpretation in state court but lost. *Williams v. Pa. Dep't of State*, 325 A.3d 1041 (Pa. Commw. Ct.), *aff'd*, 326 A.3d 393 (Pa. 2024). After unsuccessfully intervening in the appeal of that case, on September 25, 2024, Plaintiffs sued here, arguing that Defendants' interpretation unconstitutionally infringed on their First Amendment and Fourteenth Amendment rights. ECF 1.

On October 10, 2024, after briefing and an evidentiary hearing, the Court denied Plaintiffs' motions for a temporary restraining order and preliminary injunction, holding that—at least on the record before it—Plaintiffs were likely to succeed on the merits, but it was too close to the election to provide the requested relief. *West v. Pa. Dep't of State*, 753 F. Supp. 3d 424 (W.D. Pa. 2024) (Ranjan, J.), *dismissed*, No. 24-2913, 2024 WL 5509493 (3d Cir. Nov. 19, 2024). Plaintiffs sought an injunction pending appeal, which both the Court and the Third Circuit denied. *West v. Pa. Dep't of State*, No. 24-1349, 2024 WL 4528174, at *1 (W.D. Pa. Oct. 18, 2024) (Ranjan, J.); *West v. Pa. Dep't of State*, No. 24-2913, 2024 WL 4631685, at *1 (3d Cir. Oct. 30, 2024) (denying emergency motion for injunction pending appeal). Plaintiffs then sought an application for writ of injunction from the United States Supreme Court, which the Court denied. *West v. Pa. Dep't of State*, No. 24A427, 2024 WL 4654527, at *1 (U.S. Oct. 31, 2024) (Alito, J.). So Pennsylvania held its 2024 presidential general election, and Drs. West or Abdullah were not on the ballot. ECF 60, ¶¶ 8, 76.

After the election, Plaintiffs opted to proceed with the present lawsuit. So on February 7, 2025, Plaintiffs amended their complaint to reflect the passing of the 2024 election. ECF 60. Defendants, in a facial challenge to subject-matter jurisdiction, now move to dismiss it under Federal Rule of Civil Procedure 12(b)(1), arguing that the case is not justiciable and is otherwise barred by Eleventh Amendment immunity.[1]

---

[1] "A district court has to first determine . . . whether a Rule 12(b)(1) motion presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction determines how the pleading must be reviewed. A facial attack, as the adjective indicates, is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court. . . . In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357-58 (3d Cir. 2014) (cleaned up). Defendants indicate that they bring a facial challenge. ECF 62, p. 4.

I.      **The statutory framework challenged by Plaintiffs.**

Before any further discussion, it is helpful to survey the statutory framework that Plaintiffs challenge.

"The Election Code divides political groups into two categories, political parties and political bodies[,]" *Working Fams. Party v. Commonwealth*, 209 A.3d 270, 273 (Pa. 2019), with political parties further subdivided into major political parties and minor political parties.  25 P.S. §§ 2831(a) (defining political parties); § 2831(c) (defining political bodies).  The distinction between political parties and political bodies "is significant as it determines the process by which candidates are nominated." *In re De la Cruz*, 324 A.3d 632, 634 (Pa. Commw. Ct.), *aff'd sub nom. In re De La Cruz*, 322 A.3d 883 (Pa. 2024), *reconsideration and reargument denied* (Oct. 11, 2024).  Major "[p]olitical parties, *i.e.*, at present the Republican and Democrat parties, place their candidates on the general election ballot via a primary system." *Rogers v. Corbett*, 468 F.3d 188, 191 (3d Cir. 2006); 25 P.S. § 2862.  Conversely, "[m]inor political parties, as well as political bodies not recognized as parties, place their candidates, and independent candidates place their names, on the general election ballot by nomination petitions." *Rogers*, 468 F.3d at 191; 25 P.S. §§ 2872.2, 2911.

"To be placed on the general election ballot by a nomination petition, the candidate must obtain the signatures of a prescribed number of registered voters (regardless of party)." *Rogers*, 468 F.3d at 191; *see also Working Fams. Party*, 209 A.3d at 273 ("A political body cannot use the primary process to nominate candidates, but instead does so by collecting signatures.").[2]  Nomination petitions must be filed

---

[2] For the 2024 election, that number was 5,000.  *See In re Scroggin*, 237 A.3d 1006, 1017 (Pa. 2020) (explaining statutory signature threshold at 25 P.S. § 2911(b) was abrogated by consent decree); ECF 60, ¶ 35 & n.2, ¶ 35 & n.2 (describing blanket application of 5,000 signature requirement from consent decree to all nomination papers); ECF 60-1 (same).

with the Secretary on August 1 of each election year, and candidates cannot circulate nomination petitions for signatures until around five to six months before that. 25 P.S. §§ 2911(a); 2913(a),(b); *Baldwin v. Cortes*, 378 F. App'x 135, 137 (3d Cir. 2010) (describing background of August 1 deadline for filing nomination papers). Electors must be listed on the circulated papers. 25 P.S. §§ 2911(a), 2912. Together with the nomination petitions, candidates must submit affidavits "confirming numerous facts about their eligibility to be a candidate for that office[.]" *Clymer v. Schmidt*, 324 A.3d 640, 650 (Pa. Commw. Ct.), *aff'd*, 322 A.3d 929 (Pa. 2024); 25 P.S. § 2911(e). Among these facts is that they are "disaffiliated" from any other political party. 25 P.S. § 2911(e)(6); *see also* 25 P.S. § 2911.1 (disaffiliation provision).

As a political body, the Justice For All party was subject to this signature-collection scheme in 2024. ECF 60, ¶ 6. The problem, Plaintiffs maintain, was Defendants' then-new interpretation of the election code, under which "candidates" includes presidential electors. This meant that Drs. West and Abdullah had to "identify all 19 electors before submitting nominating papers (25 P.S. §§ 2911(a), 2912)," the electors had to "be disaffiliated with any political party (25 P.S. § 2911.1)," and the "electors [had to] complete affidavits (25 P.S. § 2911(e))[.]" *West*, 753 F. Supp. 3d at 427; ECF 60, ¶¶ 49-56. Despite collecting over 13,000 signatures for their nomination petition, Drs. West and Abdullah couldn't get affidavits for all 19 of their presidential electors by the August 1 deadline, and so Defendants rejected their petition. ECF 60, ¶¶ 59, 62. Plaintiffs allege that this same framework will apply at the next election, as well, which is why they are continuing to pursue this lawsuit. *Id.* ¶ 79.

With this background, the Court turns to Defendants' arguments.

## II. Plaintiffs' claims are justiciable.

Defendants raise two justiciability arguments: ripeness and mootness. Neither defeat Plaintiffs' claims.

### A.    Plaintiffs' claims are ripe.

"The ripeness doctrine, like other justiciability doctrines, derives ultimately from the requirement in Article III of the United States Constitution that federal courts are only empowered to decide cases and controversies." *Felmeister v. Off. of Att'y Ethics*, 856 F.2d 529, 535 (3d Cir. 1988) (cleaned up).  "The function of the ripeness doctrine is to determine whether a party has brought an action prematurely, and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine." *Peachlum v. City of York, Pa.*, 333 F.3d 429, 433 (3d Cir. 2003) (cleaned up).

"In *Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967), the Supreme Court laid out two principal considerations for gauging ripeness including (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 539 (3d Cir. 2017) (cleaned up).  The parties conform their ripeness arguments to these two factors.  But, as here, where plaintiffs seek declaratory and injunctive relief, ECF 60, ¶ 12, the Third Circuit employs a "somewhat refined" test, *Khodara Env't, Inc. v. Blakey*, 376 F.3d 187, 196 (3d Cir. 2004) (cleaned up), requiring consideration of three factors: "(1) the adversity of the parties' interests, (2) the conclusiveness of the judgment, and (3) the utility of the judgment." *Mazo v. N.J. Sec'y of State*, 54 F.4th 124, 135 (3d Cir. 2022) (cleaned up); *see also Plains*, 866 F.3d at 540 ("[W]e consider related claims for declaratory and injunctive relief under the same [three-factor] test.") (cleaned up).  "A defect in one or two of the categories may be sufficient to find that a declaratory judgment claim is not ripe for adjudication." *AXIS Ins. Co. v. PNC Fin. Servs. Grp.*, 135 F. Supp. 3d 321, 325 (W.D. Pa. 2015); *Plains*, 866 F.3d at 544 (claim not ripe despite "satisf[ying] the last two prongs" where it lacked adversity).

So this three-factor test—commonly referred to as the "*Step-Saver*"[3] test—controls.[4] Applying these factors, the Court concluded that Plaintiffs' claims are ripe.

*Adversity.* First, the parties' interests are adverse. "Parties' interests are adverse where harm will result if the declaratory judgment is not entered." *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1154 (3d Cir. 1995). The question is "whether the claim involves uncertain and contingent events, or presents a real and substantial threat of harm." *Wayne Land & Min. Gr. v. De. River Basin Comm'n*, 894 F.3d 509, 523 (3d Cir. 2018) (cleaned up). "Where the plaintiff's action is based on a contingency, it is unlikely that the parties' interests will be sufficiently adverse[.]" *Armstrong World Indus., Inc. by Wolfson v. Adams*, 961 F.2d 405, 411-12 (3d Cir. 1992). Yet, "where threatened action by *government* is concerned, . . . a plaintiff [needn't] expose himself to liability . . . [nor] have suffered a completed harm to establish adversity—it suffices that there is a substantial threat of real harm and that the threat remain real and immediate throughout the course of the litigation." *Plains*, 866 F.3d at 541 (cleaned up).

Defendants argue that Plaintiffs' claims are uncertain because there is no way to determine the severity of Plaintiffs' burden to comply with the election code during the 2028 presidential general election. ECF 62, pp. 5-6. The Court disagrees.

Plaintiffs need not establish "that the relevant injury is a mathematical certainty to occur[.]" *Travelers Ins.*, 72 F.3d at 1154. Here, Plaintiffs allege that Defendants will continue to enforce their interpretation of the election code equating presidential electors with candidates, ECF 60, ¶¶ 9, 79-80; that Dr. West will run again as a political body candidate, *id.* ¶¶ 77, 90; and that the voter plaintiffs will

---

[3] *See Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 646-50 (3d Cir. 1990).

[4] That said, the *Step-Saver* test is "merely a different framework[,] . . . and *Abbott Labs* . . . still guide[s] [the] analysis[.]" *Plains*, 866 F.3d at 540.

vote in the 2028 general election and intend to vote for political body candidates. ECF 60, ¶¶ 22, 78. Likewise, while Plaintiffs don't expressly allege that Dr. Abdullah will run again, the Court can infer that she will from the allegation in the amended complaint that that Defendants' interpretation "will again restrict *Candidates'* access to the ballot[.]" *Id.* ¶ 90 (emphasis added); *see Merle v. United States*, 351 F.3d 92, 95 (3d Cir. 2003) (court "perceive[d plaintiff was] stating that he intend[ed] to run again for political office" based on allegation that he would be subject to the challenged statute in future elections). Here, Drs. West and Abdullah will suffer a substantial threat of real harm—in the form of First and Fourteenth Amendment injuries—if declaratory judgment is not entered. *See Mazo*, 54 F.4th at 135 (holding that parties' interests were sufficiently ripe in part because parties would suffer a substantial threat of real harm in the form of a First Amendment injury if declaratory judgment was not entered).

The fact that the threatened harm might not materialize until Drs. West's and Abdullah's 2028 candidacies begin in earnest closer to the election date doesn't change this outcome. A "completed harm" isn't the requirement, *Plains*, 866 F.3d at 541, and it is simply "a matter of time" until Plaintiffs' campaign is underway in earnest. *Step-Saver*, 912 F.2d at 649 n.7 (noting legal interests may be adverse enough if a future event is "certain to occur, such as enforcement of an existing statute") (cleaned up); *see also Mazo*, 54 F.4th at 135 (parties adverse where candidate alleged he would use same slogans in 2022 election that defendants denied in 2020 election, despite fact that candidate hadn't yet entered 2022 election).[5]

---

[5] Additionally, Defendants suggest that part of that uncertainty is that they might "work" with Plaintiffs "to devise sensible solutions" to election issues, implement policies or procedures that would impact Plaintiffs' burden, or the election code could be changed. ECF 62, pp. 5-6. These aren't express disavowals of future enforcement, so adversity remains. *See Pic-A-State Pa., Inc. v. Reno*, 76 F.3d 1294, 1299 (3d Cir. 1996) (in finding adversity, "not[ing] that the Government, although it has stated that a federal prosecution is unlikely, has not expressly disavowed an intent to

***Conclusiveness.*** Second, granting Plaintiffs' relief would conclusively resolve Plaintiffs' facial and as-applied challenges. "Conclusiveness is a short-hand term for whether a declaratory judgment definitively would decide the parties' rights." *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 344 (3d Cir. 2001). It involves two considerations: "whether the legal status of the parties will be changed or clarified[,]" and "whether further factual development would facilitate decision or the question presented is predominantly legal." *Plains*, 866 F.3d at 543 (cleaned up).

As an initial matter, "[f]actual development would not add much to . . . [P]laintiffs' facial challenges to the constitutionality of the statute." *Presbytery of N.J. of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1468 (3d Cir. 1994). "[T]here is [no] substantial ambiguity as to" Defendants' interpretation of the election code and the attendant consequences. *Plains*, 866 F.3d at 543. All political-body candidates must identify 19 disaffiliated electors before circulating petitions for signatures, and those electors must sign affidavits. So Plaintiffs, or other political-body candidates, "could in the future easily assert substantially similar facial attacks . . . [that] would most likely parallel those claims already presented in the present action[.]" *Florio*, 40 F.3d at 1469. Indeed, others did so in 2024. ECF 60, ¶ 69 (citing *Clymer*, 324 A.3d 640; *In re De la Cruz*, 324 A.3d 632).

For similar reasons, the as-applied challenge is "predominately legal," and so is "particularly amenable to a conclusive determination in a preenforcement context[.]" *Surrick v. Killion*, 449 F.3d 520, 528 (3d Cir. 2006) (cleaned up). True,

---

prosecute"); *see also Mazo v. Way*, 551 F. Supp. 3d 478, 496 (D.N.J. 2021), *aff'd sub nom. Mazo v. N.J. Sec'y of State*, 54 F.4th 124 (3d Cir. 2022) ("Plaintiffs' injuries are likely to repeat because they have happened already, and Plaintiffs sufficiently allege that nothing material will change next time around. Where the Third Circuit has found such a dispute to be unripe, the State has expressly and completely disavowed enforcing the statute in the future.").

additional factual development might clarify the burden Defendants' interpretation imposes on Plaintiffs during the 2028 election. But the Court already has, in a sense, the factual record—what happened during the 2024 election. There will, of course, be differences; for instance, Defendants are now aware of Defendants' interpretation well in advance of the August 1 due date. But the predominately legal nature of the challenge means those kinds of differences won't impact the merits challenge in a way that renders Plaintiffs' claims unripe.

*Utility.* Third, this case has utility. Utility turns on "whether the parties' plans of actions are likely to be affected by a declaratory judgment" or injunctive relief. *Plains*, 866 F.3d at 543 (cleaned up).

A judgment now will clarify Plaintiffs' "rights and those of all others who would seek to engage in similar activity[.]" *Florio*, 40 F.3d at 1470. Indeed, here, like in *Mazo*, resolution "would be particularly useful" for Plaintiffs because they are currently "left with uncertainty as they plan their future campaigns." 54 F.4th at 135.

Plaintiffs' claims are thus ripe under the three *Step-Saver* factors, and so the Court will not dismiss Plaintiffs' claims on that basis.[6]

### B.    Plaintiffs' claims are not moot.

"Mootness evaluates a plaintiff's personal interest in the dispute throughout

---

[6] The Court does not agree with Defendants that this case is similar to *Constitution Party of Pennsylvania v. Cortes*, 712 F. Supp. 2d 387 (E.D. Pa. 2010). There, the court found unripe a challenge by non-major political parties to the provisions of the election code imposing litigation costs and attorneys' fees against candidates who submit illegitimate nomination papers. *Id.* at 392-93. Central to the court's opinion was a contingency—the costs are only imposed when candidates acted in bad faith by submitting illegitimate. *Id.* at 399-400. If candidates don't submit illegitimate nomination papers, or no one sues to challenge them, then there is no threat of harm. By contrast, here, there is no such contingency—the mere fact that a political body seeks to run a candidate triggers the Defendants' interpretation of the election code. And unlike in *Cortes*, the threatened harm has, in fact, come to pass against Plaintiffs once before.

the proceedings." *Rd.-Con, Inc. v. City of Philadelphia*, 120 F.4th 346, 356 (3d Cir. 2024) (cleaned up). "Generally, a case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Lara v. Comm'r Pa. State Police*, 125 F.4th 428, 445 (3d Cir. 2025) (cleaned up).

The 2024 presidential general election has come and gone, so this case—at least as it relates to the 2024 election—is moot. *Baldwin v. Cortes*, 378 F. App'x 135, 137 (3d Cir. 2010) ("Obviously the passage of the 2008 elections has made it impossible for appellants to receive the relief originally sought—placement of their candidates' names on the 2008 general election ballot."). Anticipating this, Plaintiffs invoke "an important exception" to mootness, "for claims that are 'capable of repetition, yet evading review[.]'" *Mazo*, 54 F.4th at 135 (cleaned up); ECF 64, p. 5. This "is a narrow exception that applies only in exceptional situations where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Hamilton v. Bromley*, 862 F.3d 329, 335 (3d Cir. 2017) (cleaned up). Plaintiffs bear the burden to show that their claims qualify for the exception. *Cnty. of Butler v. Governor of Pennsylvania*, 8 F.4th 226, 231 (3d Cir. 2021).

The Third Circuit has consistently applied the exception to election cases. *See, e.g.*, *Mazo*, 54 F.4th at 135 (explaining exception is "frequently appl[ied] . . . to election cases given the recurring nature of elections and the often strict time frames associated with running for office"); *Benezet Consulting LLC v. Sec'y Commonwealth of Pa.*, 26 F.4th 580, 585 (3d Cir. 2022) (applying exception to challenge to Pennsylvania election law imposing state-residency requirement for witnesses of nomination-petition circulation); *Baldwin*, 378 F. App'x 135 (applying exception to deadline for submitting nominating papers); *Berg v. Obama*, 586 F.3d 234, 239 n.5 (3d Cir. 2009) (applying exception to challenge to Democratic Party's nomination of

candidate for President); *Belitskus v. Pizzingrilli*, 343 F.3d 632, 649 & n.11 (3d Cir. 2003) (applying exception to challenge to Pennsylvania's mandatory filing fee requirement for ballot access); *Merle v. United States*, 351 F.3d 92, 95 (3d Cir. 2003) (applying exception to challenge to Hatch Act prohibition against federal employees seeking elected office); *Patriot Party of Allegheny Cnty. v. Allegheny Cnty. Dep't of Elections*, 95 F.3d 253, 257 (3d Cir. 1996) (applying exception to challenge to Pennsylvania election laws preventing cross-nomination of minor-political party candidates). Plaintiffs' challenge is not so unique so as to justify a different result.

Concerning the first element, like other election cases, there isn't enough time for this case to be fully litigated before the next election threatens mootness. True, the August 1, 2028, due date for the 2028 nomination papers is three years away. *Baldwin*, 378 F. App'x at 137 (describing background of August 1 deadline for filing nomination papers). But, as Defendants have acknowledged, the earliest Plaintiffs could start collecting signatures on nomination papers is around six months from then. 25 P.S. § 2913(b); ECF 20, pp. 3, 19, 24. The "likelihood that [Plaintiffs] could obtain a favorable ruling within that time . . . is slim at best." *Meyer v. Grant*, 486 U.S. 414, 417 n.2 (1988) (holding controversy was capable of repetition yet evading review where there was six-month period to gather signatures to support ballot amendment); *cf. Del. Dep't of Nat. Res. & Env't Control v. United States Env't Prot. Agency*, 746 F. App'x 131, 133 (3d Cir. 2018) (in non-election context, agency's six-month extension of deadline "too short to be fully litigated before its expiry").

In fact, the Third Circuit has held in an election case that ***two years*** is too short. *See Merle*, 351 F.3d at 95 ("[A]s the duration of a campaign for the House of Representatives necessarily cannot exceed two years (the time between elections), the life expectancy of [plaintiff's] claim is too short to be litigated fully prior to cessation or expiration."); *cf. Kingdomware Techs., Inc. v. U.S.*, 136 S. Ct. 1969, 1976 (2016) (holding, in non-election context, that "a period of two years is too short to complete

judicial review"). So even if Defendants are right that Plaintiffs' "serious organizational efforts" for a 2028 campaign could begin in "the middle of 2027"—and thus Plaintiffs' next challenge could be brought well over a year before nomination papers come due—that is not enough time. ECF 62, p. 6; ECF 65, pp. 5-6.[7]

The second element, which "requires a 'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur involving the same complaining party[,]" is also met. *Fed. Election Comm'n v. Wis. Right To Life, Inc.*, 551 U.S. 449, 463 (2007) (cleaned up). There is a reasonable expectation that the same complaining parties will be involved. Dr. West alleges that he will run again in 2028 as a political body candidate, and the voter plaintiffs allege that they intend to vote for presidential and vice-presidential candidates from political bodies in the future. ECF 60, ¶¶ 22, 77-78. And, as noted above, there is a reasonable expectation Dr. Abdullah will, too. *Id.* ¶ 90; *see also Merle*, 351 F.3d at 95.[8] Likewise, there is a reasonable expectation that those parties will be subject to the same controversy, because Plaintiffs allege that Defendants will enforce their 2024 interpretation of the election code in the 2028 election as well. ECF 60, ¶¶ 9, 79. Taking these allegations

---

[7] Expedited review (at this Court or even the Third Circuit) wouldn't solve this issue. *See Del. Dep't of Nat. Res. & Env't Control v. United States Env't Prot. Agency*, 746 F. App'x 131, 134 (3d Cir. 2018) (finding expedited briefing and argument in Third Circuit is insufficient because "[b]y evading review, the Supreme Court has meant evading Supreme Court review" (cleaned up)).

[8] Plaintiffs suggest that there is a relaxed standard for the "same complaining party" rule in election law cases. ECF 64, p. 7. The Third Circuit hasn't explicitly weighed in on this question, but there is support for this proposition. *See, e.g., Honig v. Doe*, 484 U.S. 305, 335-36 (1988) (Scalia, J., dissenting) (collecting cases and observing that the Supreme Court has, rather than required the same party to suffer a harm, "focusing instead upon the great likelihood that the issue will recur between the defendant and the other members of the public at large"). Regardless, the Court doesn't reach this issue because Plaintiffs have adequately alleged that they will be involved in the same controversy.

as true, as the Court must, Plaintiffs allege "more than a theoretical possibility of the action occurring against the complaining party again[,]" *Cnty. of Butler*, 8 F.4th at 231; they allege that it is "entirely likely that [Plaintiffs] will be subject to it in future election cycles, creating the same controversy that took place in the most recent election." *Benezet*, 26 F.4th 580, 585 (3d Cir. 2022) (exception applied to as-applied challenge where statute banning out-of-state petition circulators remained and would apply to future elections).

Defendants, borrowing from their ripeness arguments, maintain that "it is far from certain that the same circumstances will repeat in 2028[.]" ECF 62, p. 8. But "repetition of every 'legally relevant' characteristic of an as-applied challenge . . . down to the last detail" isn't the requirement; there must only be a reasonable expectation that "materially similar" circumstances will come to pass. *Wis. Right To Life*, 551 U.S. at 463. For the above reasons, that reasonable expectation is met.[9]

Accordingly, Plaintiffs' claims fit within the "capable of repetition yet evading review" exception, and will not be dismissed as moot.

### III.    Plaintiffs' claims against the Department, but not the Secretary, are barred by Eleventh Amendment immunity.

In addition to their justiciability arguments, Defendants move to dismiss on the basis of Eleventh Amendment immunity. Defendants are right that the Department of State is immune; but the Court finds that the Secretary is not, and so

---

[9] Defendants also argue that this case is different because, unlike many election cases, Plaintiffs don't bring "a straightforward facial challenge to the constitutionality of a statute." ECF 62, p. 8. Not so. *See* ECF 60, ¶ 104 (it isn't immediately obvious on the face of the complaint whether they bring a facial First Amendment challenge, but their argument confirms it). And in any event, "the doctrine, in the context of election cases, is appropriate when there are 'as applied' challenges as well as in the more typical case involving only facial attacks." *Storer v. Brown*, 415 U.S. 724, 737 n.8 (1974); *see also Fed. Election Comm'n v. Wis. Right To Life, Inc.*, 551 U.S. 449, 463 (2007) (same).

the case may proceed against him.

"The Eleventh Amendment of the United States Constitution . . . imposes a jurisdictional bar against individuals bringing suit against a state or its agencies in federal court, or against a state official in his or her official capacity." *Durham v. Kelley*, 82 F.4th 217, 227 (3d Cir. 2023) (footnotes omitted). This immunity extends to suits by in-state plaintiffs. *Karns v. Shanahan*, 879 F.3d 504, 512 (3d Cir. 2018).

"As a state agency, Eleventh Amendment immunity extends to the Pennsylvania Department of State." *Acosta v. Democratic City Comm.*, 288 F. Supp. 3d 597, 626 (E.D. Pa. 2018). Plaintiffs don't contest this, ECF 64, p. 8, so the Court will dismiss the Department, without prejudice, as immune. *See Merritts v. Richards*, 62 F.4th 764, 772 (3d Cir. 2023) (vacating and remanding to dismiss without prejudice because "Eleventh Amendment immunity is a threshold, nonmerits issue that does not entail any assumption by the court of substantive law-declaring power" (cleaned up)).

Plaintiffs do, however, contest the Secretary's immunity. They argue that their claims against him fall under the *Ex parte Young* doctrine,[10] ECF 64, p. 9, which "allows suits . . . for declaratory or injunctive relief against state officers in their official capacities." *Reed v. Goertz*, 598 U.S. 230, 234 (2023). The exception "is narrow in scope[,]" and requires only "a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and whether it seeks relief properly characterized as prospective." *Del. River Joint Toll Bridge Comm'n v. Sec'y Pa. Dep't of Lab. & Indus.*, 985 F.3d 189, 193-94 (3d Cir. 2021) (cleaned up). Plaintiffs satisfy both elements.

First, Plaintiffs allege an ongoing violation of federal law. Plaintiffs allege that Defendants will enforce the same unconstitutional interpretation of the election code

_____

[10] *See Ex Parte Young*, 209 U.S. 123 (1908).

during the 2028 election as they did during the 2024 election.  ECF 60, ¶¶ 9, 79-80.
That's enough, because "the continued enforcement and application of an
unconstitutional state statute is itself an ongoing violation of federal law." *Burns v.
Alexander*, 776 F. Supp. 2d 57, 74 (W.D. Pa. 2011) (holding *Ex parte Young* exception
applied to facial and as-applied challenge to state statute).

Second, Plaintiffs seek prospective relief.  Plaintiffs ask the Court to "[d]eclare
that Defendants' interpretation of 25 P.S. § 2911 . . . violates the First" and
Fourteenth Amendments, and to "[e]njoin Defendants permanently from enforcing
their interpretation of 25 P.S. § 2911[.]"  ECF 60, p. 20.  That is prospective, not
retrospective.  "Just as the injunction upheld in *Ex parte Young* enjoined the Attorney
General of Minnesota to conform his conduct with federal law (the Fourteenth
Amendment), the relief sought here likewise requires the Secretary to conform his
conduct to federal law" (the First and Fourteenth Amendments).  *Del. River Joint Toll
Bridge Comm'n*, 985 F.3d at 194 (holding declaration that Pennsylvania Department
of Labor and Industry lacked authority to enforce building regulations was
prospective); *see also Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635,
645, (2002) ("The prayer for injunctive relief—that state officials be restrained from
enforcing an order in contravention of controlling federal law—clearly satisfies our
straightforward inquiry.") (cleaned up); *Burns*, 776 F. Supp. 2d at 74 (finding relief
sought "clearly prospective in nature . . . [where plaintiff sought] an injunction
barring the future enforcement of the statutory provisions alleged to be
unconstitutional").

The *Ex parte Young* exception thus applies, and the Secretary isn't shielded
from Plaintiffs' claims by Eleventh Amendment immunity.

\*     \*     \*

Accordingly, for the above reasons, the Court **GRANTS** in part and **DENIES**
in part Defendants' motion to dismiss (ECF 61).  The Court **GRANTS** the motion and

dismisses the Department without prejudice as immune under the Eleventh Amendment.  In all other respects, the motion is **DENIED**.

Date: September 11, 2025                              BY THE COURT:

                                                     /s/ J. Nicholas Ranjan
                                                     United States District Judge