**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CORNEL WEST AND MELINA ABDULLAH, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>PENNSYLVANIA DEPARTMENT OF STATE, *et al.*,<br><br>Defendants. | CIVIL ACTION<br>No. 24-1349 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Defendant Al Schmidt, in his official capacity ("Secretary Schmidt"), by counsel, respectfully submits this memorandum of law in support of his Motion for Summary Judgment and in opposition to Plaintiffs' Motion for Summary Judgment (ECF No. 97).

## I. INTRODUCTION

This case is about whether Pennsylvania law unfairly burdens a candidate for President of the United States of America by giving him years to find fewer than two dozen supporters who would be willing to affirm that they will show up and cast their votes for him in the Electoral College if he or she should win the state's popular vote. Because that modest requirement serves a reasonable and important election purpose, it does not violate any constitutional right.

Pennsylvania law requires that a political body's presidential elector candidates—the individuals who will actually vote in the Electoral College if the presidential candidate wins the state—must sign an affidavit related to his or her eligibility for that office (referred to here as the "affidavit requirement"). *See Clymer v. Schmidt*, 324 A.3d 640 (Pa. Cmwlth. 2024), *aff'd*, 322

A.3d 929 (Pa. 2024); *accord* Plaintiff's Brief in Support of Motion for Summary Judgment ("Pl. Br."), ECF No. 98, at 2-3 (noting that *Clymer* represents the undisputed law in Pennsylvania). The specific burden placed on a presidential campaign by requiring electors of the candidate to sign a candidate affidavit is incidental, at best. Pennsylvania law merely requires that a political body candidate's selections for the Electoral College—19 people in total—certify under oath that they are willing and qualified to exercise their constitutional duty. It is an extraordinarily light request given the constitutional importance of the task.

Further, the affidavit requirement is not an unfair burden on political bodies merely because it is not required of major party candidates. The affidavit requirement does not apply to a candidate seeking the nomination of the Republican or Democratic Party for the simple reason that there is no reasonable concern that a successful major party nominee, after succeeding with everything it takes to win that nomination, will be unable to identify nineteen individuals willing to serve as Presidential Electors. Major party presidential campaigns are established organizations, which they have to be in order to earn the millions of primary votes necessary to win Pennsylvania and tens of millions nationwide necessary to win a major party's nomination. The nature of those campaigns means that, at any point during election year, they can easily find eligible electors, even at the last minute. For nominees of political bodies, the concern is very real—as the undisputed facts of this case demonstrate. The affidavit requirement is not burdensome and relates directly to the candidate's ability to satisfy a constitutional duty, and the overall administrative burden for a political body candidate is far less than that of a major party nominee.

Using any degree of constitutional scrutiny, the Commonwealth's interest in ensuring that only legitimate candidates appear on voters' ballots and providing clean administration of the

Electoral College outweighs whatever burden the affidavit requirement might place on a political body. The affidavit requirement is closely tailored to ensure that a presidential candidate will, if successful, be able to present the necessary individuals to satisfy all federal and state requirements related to the Electoral College in order to represent the choice of Pennsylvania's voters.

Given that Pennsylvania's interests justify the affidavit requirement's modest burden, Plaintiffs have not shown that Pennsylvania law violates their constitutional rights. The Court should enter summary judgment for the Defendant.

## II. FACTS

*Pennsylvania's Affidavit Requirement for Electors for Political Bodies*

On the first Tuesday after the first Monday in November every four years, Pennsylvania (along with every other state and the District of Columbia) holds a general election for President and Vice President of the United States. 3 U.S.C. §§ 1, 21(1). Pennsylvania's general election ballot lists the nominees of all qualified major political parties, minor political parties, and political bodies. 25 P.S. § 2963.

Notably, major political parties are significantly different from both minor parties and political bodies.[1] "The Election Code divides political groups into two categories, political

---

[1] Plaintiffs make no meaningful distinction between minor political parties and political bodies, instead basing their arguments on their treatment as political body candidates versus the treatment of major political party candidates. Thus, this brief will focus on the distinction between political bodies and major political parties.

Minor political parties (political parties which have statewide voter registration below a certain threshold) nominate their candidates in the same manner as political bodies. 25 P.S. § 2872.2(a). Minor political party candidates are held to the same requirements for the timely filing of candidate affidavits, except that minor political party candidates are excused from the disaffiliation requirement in their candidate's affidavits. 25 P.S. § 2872(a) ("minor political

parties and political bodies." *Working Families Party v. Commonwealth*, 209 A.3d 270, 273 (Pa. 2019). Major political parties select nominees via a primary election (a process with its own signature-collection rules) and party rules, while a political body nomination requires a candidate instead to collect signatures via petition. *Working Families Party*, 209 A.3d at 273.

This process means very different things for candidates of a major party, as opposed to candidates of a political body. A candidate for President wins the nomination of a major political party at the party's convention, according to the party's rules. Generally, both major political parties—Republican and Democrat—require a nominee to be selected by delegates, which are allocated according to party rules and, at least in part, reflect primary election results. In order to win the nomination, a major party presidential candidate will almost certainly have demonstrated through the primaries or party convention that he or she has the support of millions of people.[2] Once a candidate wins the nomination of the party at the convention after a vote of the delegates, he or she will appear on the general election ballot in Pennsylvania as the party's candidate for President.

The road to the general election ballot for a candidate seeking the nomination of a political body is quite different. That difference reflects that political bodies are far less well-established entities. There is no primary election and related campaign. For political bodies in particular, Pennsylvania requires nomination through the filing of political body nomination

parties shall nominate all of their candidates . . . in accordance with the requirements of [25 P.S. § 2911], **other than subsection (e)(6) and (7) thereof**, and [25 P.S. § 2914].") (emphasis added).

[2] Commonwealth of Pennsylvania, Department of State, 2024 Presidential Primary (Official Returns), available at https://www.electionreturns.pa.gov/Home/SummaryResults?ElectionID=105&ElectionType=P&IsActive=0.

papers. Joint Stipulations of Fact, ECF No. 99 ("JSF"), ¶ 4 & Ex. A. A prospective candidate must gather just 5,000 signatures of registered Pennsylvania voters over a period of approximately 5-6 months. JSF ¶¶ 5-6. Additionally, a prospective candidate for a minor political party must submit 19 candidate affidavits from prospective electors, who would be ready, willing, and able to cast Pennsylvania's votes in the Electoral College if the minor party candidate wins. JSF ¶¶ 7-8 & Ex. B. This affidavit requirement is challenged by this lawsuit. By statute, the affidavit must contain the following information or declaration about the affiant:

> (1) the election district in which he resides;
> (2) the name of the office for which he consents to be a candidate;
> (3) that he is eligible for such office;
> (4) that he will not knowingly violate any provision of this act, or of any law regulating and limiting election expenses, and prohibiting corrupt practices in connection therewith;
> (5) that his name has not been presented as a candidate by nomination petitions for any public office to be voted for at the ensuing primary election, nor has he been nominated by any other nomination papers filed for any such office;
> (6) that in the case where he is a candidate for election at a general or municipal election, he was not a registered and enrolled member of a party thirty (30) days before the primary held prior to the general or municipal election in that same year;
> (7) that, in the case where he is a candidate for election at a special election, he is not a registered and enrolled member of a party; and
> (8) that he is not a candidate for an office which he already holds, the term of which is not set to expire in the same year as the office subject to the affidavit.

25 P.S. § 2911(e). Candidates for a political body must submit their paperwork, including the 5,000 signatures and elector affidavits, by the filing deadline of August 1. JSF ¶ 7.

Once the paperwork is accepted, and subject to any successful "third party legal challenge pursuant to Section 977 of the Election Code, 25 P.S. § 2937, the candidate will appear on Pennsylvania's ballot for President of the United States as the representative of the political body.

*The Role of Presidential Electors*

Although the names of candidates for president appear on general election ballots, voters are in fact voting for presidential electors chosen by those candidates who will represent Pennsylvania at the electoral college. The presidential electors of the candidate winning Pennsylvania in the general election are required to meet and vote for President and Vice President. U.S. Const. Am. XII. This meeting must occur on the first Tuesday after the second Wednesday in December following the general election. 3 U.S.C. § 7. At the meeting, the electors must "make and sign six certificates of all the votes given by them, each of which certificates shall contain two distinct lists, one of the votes for President and the other of the votes for Vice President, and shall annex to each of the certificates of votes one of the certificates of ascertainment of appointment of electors which shall have been furnished to them by direction of the executive of the State." 3 U.S.C. § 9. The electors must seal and endorse this list, and then transmit it in a manner prescribed by law. 3 U.S.C. §§ 10-11. While it may appear ministerial, this process was recently clarified by Congress in the Electoral Count Reform Act of 2022, in response to public calls—including from the President of the United States—seeking to invalidate actions of the Electoral College.[3] It has been, and it remains, important to Pennsylvania that the process is executed properly.

*The West/Abdullah Presidential Campaign*

Plaintiffs West and Abdullah sought to appear on Pennsylvania's 2024 general election ballot as the nominees of the Justice for All political body for President and Vice President of the

[3] *See generally* Washington Post, "House joins Senate in passing Electoral Count Act overhaul in response to Jan. 6 attack," Dec. 23, 2022, available at https://web.archive.org/web/20230828000410/https://www.washingtonpost.com/politics/2022/12/19/electoral-count-reform-omnibus/.

United States, respectively. JSF ¶¶ 1-2. Plaintiffs Tunstalle, Hopkins-Bot, and Hier are Pennsylvania voters who signed the nomination papers for the Candidate Plaintiffs and who aspired to be electors for the Candidate Plaintiffs. JSF ¶ 3.

By July 2024, the campaign had identified 19 individuals they wanted to serve as electors, and it provided a list of those names to the Pennsylvania Department of State ("Department"). JSF ¶ 41. On July 12, 2024, after its paperwork was rejected by the Department for failing to comply with the affidavit requirement, JSF ¶¶ 13-15, the campaign sent correspondence to those electors asking for a completed affidavit to be mailed "no later than Thursday, July 18." JSF ¶ 42. Because those individuals did not respond, the campaign took additional steps to contact them, which included telephone calls, text messages, email, and personal visits. JSF ¶ 45-47.

The campaign's outreach efforts failed. By July 28—three days before the filing deadline—at least three of West and Abdullah's named electors had not responded to any of the campaign's attempts to contact them. JSF ¶ 52. Additionally, other electors the campaign had previously chosen and named were resistant to performing administrative functions. Some "expressed concern about the authenticity or legitimacy of communications" from the campaign. JSF ¶ 53. One "expressed distrust of the elector process" and asked not to participate at all. *Id.* And another told the campaign that she was not legally eligible because she had been a member of another political party. JSF ¶ 54.

In at least one other state, the campaign had difficulty with their elector slate even after it was submitted. In Arizona, the campaign submitted the name of an elector, but that elector later told a reporter that she had never agreed to be an elector for West and Abdullah. JSF ¶ 55.

As such, West and Abdullah did not present 19 valid candidate affidavits for each of their electors to the Department by the August 1, 2024 deadline, and thus they did not appear on the 2024 general election ballot in Pennsylvania. JSF ¶¶ 13-27.

Neither West nor Abdullah have decided whether they will run for President or Vice President in 2028. JSF ¶ 57. However, they continue this lawsuit to seek relief from Pennsylvania's requirement that presidential electors submit a candidate affidavit.

*Procedural History*

In 2024, Representatives associated with the West and Abdullah campaign sued in Pennsylvania state court, contending that the affidavit requirement was counter to Pennsylvania law, the Pennsylvania Constitution, and the United States Constitution. Am. Compl. ¶ 66. They lost, both procedurally and on the merits, and that decision was affirmed by the Pennsylvania Supreme Court. Am. Compl. ¶ 67. As a result, there is no question that Pennsylvania's Election Code requires presidential electors to submit candidate affidavits in the time and manner set forth by the Department.

Plaintiffs initiated this action in federal court several weeks after losing their state court action. ECF No. 1. Initially, they sought relief which would place them on the 2024 general election ballot by filing a motion for a temporary restraining order and preliminary injunction. ECF No. 2. However, after briefing and a hearing, this Court denied the motion, holding that the *Purcell* principle precluded the Court from granting relief so close to the election. ECF No. 33. The Third Circuit affirmed. Order, Case No. 24-2913 (3d Cir. Oct. 30, 2024). Consequently, West and Abdullah did not appear on the 2024 general election ballot. Am. Compl. ¶ 76.

Plaintiffs subsequently filed the Amended Complaint on February 7, 2025. ECF No. 60. In the Amended Complaint, Plaintiffs contended that they *might* seek election in 2028, and

therefore the affidavit requirement, of which they are now fully aware, places an unconstitutional burden on their right to access a place on the ballot. Defendants moved to dismiss on ripeness and mootness grounds, but the Court largely denied that motion. ECF No. 77.

Following discovery, the parties stipulated to certain facts, ECF No. 99, and agreed on a briefing schedule for summary judgment. Both sides have now moved for summary judgment.

## III. ARGUMENT

### A. Standard of Review

The summary judgment standard is well established. A party is entitled to summary judgment if it can show "that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A movant that will not bear the burden of proof on an issue at trial satisfies its initial responsibility on summary judgment by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In that situation, a movant is entitled to summary judgment if the nonmoving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case." *Id.* at 322. This factual showing must be based on evidence in the factual record and not on conjecture or speculation. *Wharton v. Danberg*, 854 F.3d 234, 244-45 (3d Cir. 2017); *see also* Fed. R. Civ. P. 56(c) (evidence must be admissible to be considered at summary judgment). But the Court must view this admissible, record evidence presented in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255.

### B. Pennsylvania's Affidavit Requirement Satisfies Review Under *Anderson-Burdick*

The parties here agree that this case should be analyzed under the *Anderson-Burdick* balancing test. *See* Pl. Br. at 14; *see also Anderson v. Celebrezze*, 460 U.S. 780 (1983) and *Burdick v. Takushi*, 504 U.S. 428 (1992).[4] Under the *Anderson-Burdick* test, a court reviewing state election laws must perform a two-step process, requiring it to "(1) determine the 'character and magnitude' of the burden that the challenged law imposes on constitutional rights, and (2) apply the level of scrutiny corresponding to that burden." *Mazo v. New Jersey Sec'y of State*, 54 F.4th 124, 137 (3d Cir. 2022) (quoting *Burdick*, 504 U.S. at 434). Applying that process here, the affidavit requirement survives constitutional scrutiny for multiple reasons. It requires only minimal scrutiny because it does not place a greater administrative burden on political bodies than the burden that the primary and party nomination process places on a major party candidate, and it easily survives that lesser scrutiny. And even if heightened scrutiny applies, the regulation still survives because the affidavit requirement is narrowly tailored to an important constitutional obligation—ensuring that Pennsylvania will successfully execute its Electoral College function.

#### 1. The Affidavit Requirement Does Not Warrant Heightened Scrutiny Because It Does Not Severely Burden Ballot Access

The first step of *Anderson-Burdick* requires determining which level of scrutiny should apply. To decide the appropriate level of scrutiny, a court must examine "the nature and extent of the burden" imposed by the regulation. *Eakin v. Adams Cnty. Bd. of Elections*, 149 F.4th 291, 309 (3d Cir. 2025). The Supreme Court has declined to adopt a "litmus test for measuring the severity of a burden that a state [election] law imposes." *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 191 (2008) (plurality op.). The Third Circuit has provided a "non-exhaustive" list

[4] As Plaintiffs note, Pl. Br. at 32-33, the equal protection analysis uses the same balancing test, and so the outcome here would be the same under any constitutional provision.

of considerations courts should make at this stage. *Eakin*, 149 F.4th at 309. That list includes the following:

- Whether the regulation can be followed "with ease,"
- Whether the regulation discriminates on the basis of viewpoint, association, or economic status;
- Whether there are alternative means to vindicate the affected interest;
- What evidence the challengers provided of specific unconstitutional applications of the law; and
- What evidence the challengers provided of the impacts of the voting law.

*Id.* Plaintiffs here have focused on the first two considerations—the burden, and their relative discriminatory position vis-à-vis a major party candidate. Using either consideration, however, Plaintiffs have failed to show that the burden of asking electors to submit candidate affidavits does not warrant heightened scrutiny.

*a) The Affidavit Requirement Can Be Followed With Ease*

In this case, Plaintiffs have not made clear exactly what they find so burdensome about the affidavit requirement. It is not clear whether they object to their constitutional duty of identifying and supplying representatives to the Electoral College, to the requirement of providing an affidavit from each of those electors, or to the substantive affirmations of eligibility required by law. Nevertheless, none of these burdens rise to the level of requiring heightened scrutiny under *Anderson-Burdick*.

First, the burden of finding 19 people to serve as electors cannot be an unconstitutional burden, because it is a constitutional requirement. *See* U.S. Const. Art. II, § I, cl. 2-4. Self-evidently, a constitutional obligation cannot be an unconstitutional burden. Yet, it appears that

Plaintiffs find the act of corralling these electors to be the greatest burden. According to Plaintiffs, in 2024 the task of finding and keeping electors proved impossible because candidates they had identified would back out, refuse to execute their duties when asked, or simply disappear. *See* JSF ¶ 53. That is not a burden associated with the affidavit requirement or any particular filing date, but rather it is a burden associated with West and Abdullah's constitutional obligation. That is, even if there were no filing date or no paperwork requirement at all, the campaign would have exactly the same problem trying to bring 19 eligible individuals to gather in Harrisburg at noon on the day in December as directed by Congress to vote in the Electoral College (exactly the thing that this requirement seeks to prevent). For that reason, the administrative burden of identifying and maintaining a group of electors cannot warrant heightened scrutiny.

Second, requiring electors to sign an affidavit does not impose any significant burden. Under federal law, "alternate ballot access rules for major and minor political parties are not *per se* unconstitutional." *See Rogers*, 468 F.3d at 196; *accord In re Zulick*, 832 A.2d 572, 581 (Pa. Cmwlth. 2003) ("[T]he [U.S.] Supreme Court has held that the different treatment of minor political parties from other political parties does not violate their equal protection."). There are "obvious differences in kind between the needs and potentials of a political party with historically established broad support, on the one hand, and a new or small political organization on the other," that justify different paths to the ballot. *Jenness v. Fortson*, 403 U.S. 431, 441 (1971); *see also, e.g.*, *Am. Party of Texas v. White*, 415 U.S. 767, 781 (1974) (upholding law differentiating between major political parties and smaller political parties); *Indep. Party of Florida v. Secretary*, 967 F.3d 1277, 1284 (11th Cir. 2020) (upholding law that minor political organizations must submit obtain signatures from at least one percent of all registered voters to

gain ballot access). It is well established that the physical act of signing an affidavit imposes only a "small burden" under *Anderson-Burdick*. *Arizona Democratic Party v. Hobbs*, 18 F.4th 1179, 1189 (9th Cir. 2021); *see also Eakin*, 149 F.4th at 309 (requiring mail voters to fill out, date, and sign their ballots imposes only a minimal burden on voting rights). Specifically, a requirement that all voters who are voting by mail sign an affidavit attesting that "the voter personally has cast the ballot" is not subject to heightened scrutiny because it imposes no real burden on exercising the franchise. *Arizona Democratic Party*, 18 F.4th at 1181. The same is true of asking an elector to sign an affidavit. While it requires some kind of organization and activity by the campaign, the burden is minimal, and it does not warrant heightened scrutiny.

Third, the contents of the affidavit require no greater burden than that which has already been imposed by the Constitution and Pennsylvania law. Electors simply must provide their personal information and affirm that the information is accurate, that they are willing and eligible to be an elector, that they will comply with Pennsylvania campaign finance and corruption law, and that they have not been a member of any other party during the presidential nominating process. *See* 25 P.S. § 2911(e); *accord* Political Body Candidate's Affidavit, ECF No. 99-5 (providing standard language in the form affidavit for these affirmations). If the Court strikes the affidavit requirement, those other requirements will remain. Put another way, the affidavit requirement imposes no prerequisite to elector eligibility that does not already exist in law.

Apparently aware of this, Plaintiffs attempt to frame this case as a bank-shot constitutional challenge to at least one of those substantive requirements, the disaffiliation requirement. *See* Pl. Br. at 27-28. This requires that a political body's candidate in a general or municipal election must not have been "registered and enrolled member of a party during any period of time beginning with thirty (30) days before the primary and extending through the

general or municipal election of that same year." 25 P.S. § 2911.1; *accord* 25 P.S. § 2911(e)(6). But Plaintiffs neglect to demonstrate any meaningful burden this places on an elector. The only evidence they present is that one prospective elector in 2024 could not sign the affidavit because she had not disaffiliated from another party, but that fact is specific to the circumstances the campaign encountered in July of that year. JSF ¶ 54. Allegedly, that elector did not know about the disaffiliation requirement until attempting to sign the affidavit in July, at which point it was too late to change her party affiliation. Today, that potential elector faces no burden at all; she can change her party registration by filling out an online application made available by the Department. *See* https://www.pavoterservices.pa.gov/Pages/VoterRegistrationApplication.aspx. She could fill out that form today, tomorrow, or any day, up to 30 days prior to the 2028 presidential primary election. Plaintiffs have thus failed to present any evidence of any significant burden imposed today, or likely to be imposed in 2028. *See Mazo*, 54 F.4th at 152 ("Evidence is key to the balancing of interests at the heart of the *Anderson-Burdick* framework."). Further, Plaintiffs minimize the Commonwealth's interest in disaffiliation in the context of electors, but as explained in Section 2 below, that interest is strong. The Third Circuit has held that the disaffiliation requirement is constitutional. *See generally De La Fuente v. Cortes*, 751 Fed. Appx. 269 (3d Cir. 2018). The Court should decline to recast this case as a challenge to the disaffiliation requirement.

Finally, Plaintiffs challenge issues of timing. They contend that, because electors must be listed on their petition, they will actually have to identify their electors early in 2028, when they begin circulating the petition for signatures. *See* Pl. Br. at 20. But the timing of when the campaign must initially name electors presents no real burden, or at least no extra burden. As we sit here today, in 2026, there is no meaningful difference whether the obligation to find nineteen

electors must be done by February 2028, or by April 2028, or by July 2028. Plaintiffs offer no explanation as to why the date matters, except that they assert that it gives these 19 supporters they chose the ability to hold the campaign "hostage." *See* Pl. Br. at 20. However, West and Abdullah need not be concerned—they can still substitute electors after August 1 with the submission of a new candidate affidavit for the new elector. 25 P.S. §§ 2938(b), 2940. And to the extent the campaign is concerned that these electors might hold the campaign "hostage" before the election, they have not made clear why West and Abdullah would not have even greater concerns that these electors—who the campaign specifically chose for this important constitutional function—could not trust them to vote for West and Abdullah in the Electoral College.

Because West, Abdullah, and their electors can comply with the affidavit requirement with ease, heightened scrutiny is not appropriate.

*b) The Affidavit Requirement Does Not Unfairly Burden Political Body Candidates as Compared to Major Party Candidates*

In a ballot access case about whether a regulation unlawfully discriminates against candidates or voters, the key question is whether the regulation "unfairly or unnecessarily burdens 'the availability of political opportunity.'" *Anderson*, 460 U.S. at 793 (quoting *Clements v. Fashing*, 457 U.S. 957, 964 (1982) (plurality op.)) In this context, the mere fact that a regulation applies differently to a candidate of a major political party than it would for a minor party or political body does not make it constitutionally suspect. *Mazo*, 54 F.4th at 147 ("Even laws that give modest preferential treatment to major political parties at the expense of minor parties may be constitutionally firm." (citing cases)). For example, laws that place a higher petition or signature requirement on minor political parties do not warrant heightened scrutiny, even if no identical requirement exists for major parties. *Id.* (citing *Jenness v. Fortson*, 403 U.S.

431, 432 (1971); *Norman v. Reed*, 502 U.S. 279, 279 (1992)). That is because a state may permit "two alternative paths" to a general election ballot for major and minor political party nominees without creating a presumption that one path is "inherently more burdensome than the other." *Jenness*, 403 U.S. at 441. That is precisely the situation here.

In order to demonstrate unfair discrimination, Plaintiffs note that major party candidates do not have to submit affidavits from their electors. *See* Pl. Br. at 29. While true, this argument presents the analysis too narrowly. Heightened scrutiny is not triggered because the relative administrative burden on a major party candidate is still far greater, and also because the distinction does not implicate anything related to viewpoint, association, or economic status. *See Eakin*, 149 F.4th at 309.[5]

Significantly, the Department does not pick which parties qualify as major parties and which qualify as political bodies. Rather, the distinction arises as a result of voter support gathered over time. *See* 25 P.S. § 2831. And, relatedly, the process for getting to the final ballot for President is substantially different. By the time the Republican or Democratic nominee have secured a spot on the general election ballot—that is, by August of the election year—the campaign has already run a sophisticated national campaign, earned hundreds of thousands of votes in Pennsylvania through a primary in which voters of their party indicate their preference in candidates, and organized dozens of delegates to the party's convention. They have done so in

---

[5] In its opinion denying a preliminary injunction, this Court cited *Kim v. Hanlon*, 99 F.4th 140, 155 (3d Cir. 2024) and *Mazo*, 54 F.4th at 146, for its conclusion that laws must be completely "nondiscriminatory" to warrant lesser scrutiny. ECF No. 33 at 5. But both cases are about First Amendment issues unique to New Jersey's ballot rules that are not present here. In *Mazo*, the Court upheld restrictions on the content of ballot slogans, while in *Kim* the Court held that the county-line system for primary elections unlawfully punished associational choices. Neither stand for the proposition that all differential treatment between a major party and political body warrants heightened scrutiny.

the context of a party infrastructure that has, as Plaintiffs point out, organized and supplied eligible electors for the entirety of "living memory." *See* Pl. Br. at 28. A candidate for a political body, by contrast, has merely earned signatures from 5,000 registered Pennsylvania voters who can be of any political affiliation. JSF ¶¶ 5-6. The administrative burden on a presidential candidate of a major political party is ***far*** greater than that of a candidate for a political body. The affidavit requirement does not significantly disadvantage West and Abdullah's political opportunity vis-à-vis a candidate for the Republican or Democratic nomination. They have shown no unfair lack of "political opportunity," *see Anderson*, 460 U.S. at 793, because of the affidavit requirement. Much like the primary election for major party candidates is far more burdensome than the signature requirement for political body candidates, the organizational burdens of primary elections and party conventions greatly exceed any burden created by the affidavit requirement.

Thus, Plaintiffs have not presented any basis for heightened scrutiny based on unfairly discriminatory treatment.[6]

2. The Commonwealth Has Strong Interests in Ensuring that Candidates for President Can Fulfill Their Constitutional Electoral College Duties

It is long established that the state has a valid interest in "avoiding ballot clutter and ensuring viable candidates." *Rogers v. Corbett*, 468 F.3d 188, 194 (3d Cir. 2006). When it comes to a candidate for President, viability includes ensuring that the candidate will be able to fulfill

[6] Plaintiffs make an ancillary point about candidate filing fees for electors, but it offers no support for their claim. They simultaneously argue that the fee is burdensome, while at the same time acknowledging that it is not charged by the state. *See* Pl. Br. at 18-19. On the latter point, they are correct, and if they believe that practice creates an issue under state law, they are free to bring a claim in state court. It is immaterial to their constitutional claim. It is the certification in the affidavit from electors that reflects the state interest at play.

the constitutional and statutory duty to provide members of the Electoral College. *See* 25 P.S. §§ 2591-92.

The affidavit requirement directly advances these interests. It ensures that any candidate who appears on the general election ballot for President of the United States will be able to fulfill the Commonwealth's obligations in the Electoral College. It is vital for Pennsylvania to ensure a full slate of electors to which it is entitled under Article II of the Constitution in order to represent the Commonwealth in the Electoral College.

Plaintiffs point out that there is no parallel requirement for a major party candidate. However, for those candidates, ensuring that there will be sufficient Electoral College representatives is hardly a concern given what is required to qualify in Pennsylvania a major party. In order to obtain status as a major party, a group has already demonstrated the ability to win tens of thousands of votes, or more, across the entire state. *See* 25 P.S. § 2831(a). As Plaintiffs point out, electors from the two major parties "have cast every Pennsylvania electoral vote in living memory," without any serious issue. Pl. Br. at 28. There has never been a situation where a Republican or Democratic candidate has not produced a full slate of electors, and it is nearly impossible that that situation would ever occur given the durable support needed to be a major party. Further, campaigns to be a major party presidential nominee require utmost organization to get to that point—not only have they run complex, national campaigns with thousands of dedicated supporters, but also they have organized hundreds of delegates to the party's national convention, including dozens from Pennsylvania. *See supra* at 3-4 (describing the organizational path for a major party candidate). History shows that a major party candidate could provide dozens, or even hundreds, of eligible electors on a moment's notice (as, in fact,

happened with the Republican Party's 2024 electors);[7] it does not advance a state interest for them to certify which particular 19 they will choose.

The same cannot be said of a political body candidate. Plaintiffs point to no facts that would demonstrate that a candidate for an often newly created political body has the organizational strength of a major party candidate, because they do not. Requiring only 5,000 signatures to appear on the general election ballot, JSF ¶ 5-6, a political body candidate does not face nearly as many hurdles as a major party candidate who has won a primary election and national convention vote. The possibility that a political body's message might surpass its organization and result in winning Pennsylvania is exactly why the affidavit requirement is important—it ensures that, if that were to happen, the Electoral College vote would still be properly executed.

Plaintiffs point out that there is no explicit disaffiliation requirement for major party electors. Such a requirement would be wholly unnecessary. Plaintiffs cannot point to any time in which a major party has chosen as an elector someone who is not a member of that party. A disaffiliation requirement for political bodies "furthers the State's interest in the stability of its political system" because it "maintain[s] the integrity of the various routes to the ballot." *Storer v. Brown*, 415 U.S. 724, 733, 736 (1974). There is no plausible argument that this ballot integrity is threatened by the lack of a disaffiliation requirement for major party electors, while it is certainly possible that a political body relying on Republicans or Democrats as electors undermines that integrity. And, as the Supreme Court has recognized, it is within the state's valid

---

[7] *See* Butler Eagle, "Pa. casts Electoral College votes without controversy," Dec. 17, 2024, available at https://www.butlereagle.com/20241217/pa-casts-electoral-college-votes-without-controversy/ (noting that the Republican Party had to replace an elector who was absent for the birth of his child).

interest to only recognize candidates from outside the major party who have made "early plans to leave a party," *Storer*, 415 U.S. at 735, and the disaffiliation requirement for electors furthers that goal.

### 3. The Commonwealth's Interests Outweigh Any Burden on Political Body Candidate Under Any Level of Scrutiny

The final step under *Anderson-Burdick* is balancing the state interest against the candidate burden, using the appropriate level of scrutiny. As noted above, the Court can (and should) find that lesser scrutiny applies, and it should uphold the law on that basis. But even assuming for argument that heightened scrutiny applies, the affidavit requirement still survives, because it is narrowly tailored to advance a compelling state interest.

#### *a) The Affidavit Requirement Easily Survives Lesser Scrutiny*

In other cases, courts having recognized states' interest in preserving the integrity of ballots when upholding a requirement that minor political parties obtain thousands of signatures to appear on a ballot. *See Rogers*, 468 F.3d at 195 (Pennsylvania's 2% signature requirement was "not unreasonable"); *see also Storer*, 415 U.S. at 740 (requiring 325,000 signatures in 24 days "would not appear to be an impossible burden"). And another court relied on this interest in upholding a rule limiting voters to signing one nominating petition. *Benezet Consulting, LLC v. Boockvar*, 433 F.Supp.3d 670, 692-93 (M.D. Pa. 2020).

In short, if these other ballot access requirements for political bodies satisfy lesser scrutiny under *Anderson-Burdick*, there is little doubt that the affidavit requirement would do the same. Plaintiffs offer no real rebuttal to this point. Consequently, because only lesser scrutiny applies here, the affidavit requirement survives constitutional review.

*b) Even Applying Heightened Scrutiny, the Commonwealth's Interest in Effective Administration of the Electoral College Outweighs the Candidates' Burden of the Affidavit Requirement*

Assuming heightened scrutiny applies, a regulation "must be narrowly tailored and advance a compelling state interest." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997). "A State indisputably has a compelling interest in preserving the integrity of its election process." *Eu v. San Francisco Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989). Similarly, "avoiding confusion, deception, and even frustration of the democratic process" is "surely an important state interest." *Jenness v. Fortson*, 403 U.S. 431, 442 (1971).

As noted above, the purpose of the affidavit requirement is to ensure that a political body candidate can satisfy his or her constitutional obligations in the Electoral College. The affidavit requirement is narrowly tailored to that end because, without it, there is a high amount of uncertainty that a political body could fulfill its duties. That uncertainty is not just hypothetical—it was demonstrated by these very Plaintiffs in 2024.

Plaintiffs readily admit that, between July 11 and August 1, 2024, they were unable to contact at least 2 of the electors they had listed on their papers. *See* JSF ¶ 52. This same issue could happen between Election Day in November and the Electoral College vote in December, but the affidavit requirement identified the issue early and forced its resolution. Further, Plaintiffs admit that their electors balked at submitting "paperwork" due to their distrust of government and official proceedings. *See* JSF ¶ 53. This same issue could happen with the Electoral College vote itself, but the affidavit requirement identified the issue early and forced its resolution. And in Arizona, one elector who was listed on West campaign paperwork later said that she never actually agreed to serve as an elector. *See* JSF ¶ 55. Once again, this same issue could happen right before the Electoral College meeting, but the affidavit requirement identified the issue early and forced its resolution.

As these facts demonstrate, the affidavit requirement is narrowly tailored to ensure that a political body candidate could fulfill the same obligations that a major party candidate regularly fulfills, without any procedural disruption. It is difficult to imagine any less restrictive regulation which might equally ensure that, before receiving a position on the general election ballot, a political body candidate can supply members of the Electoral College. The affidavit requirement thus satisfies even strict scrutiny.

### C. The Prior Proceedings in this Case, Including the Court's Preliminary Injunction Ruling, Have No Weight at this Stage

In their brief, Plaintiffs repeatedly point to dicta from the Court's opinion denying their motion for a preliminary injunction. *See, e.g.*, Pl. Br. at 2, 17, 24, 28. Plaintiffs even erroneously describe the Court's statements about the *Anderson-Burdick* balancing test an issue that this Court "already held." *See* Pl. Br. at 17. But Plaintiffs' reliance on that opinion now is misplaced for two reasons. First, the Court at that preliminary stage was not presented with a full record. Given the timing, the Department's response was focused on its *Purcell* argument, which turned out to be the correct decision. Second, as a matter of law, a court's factual and legal findings on a preliminary injunction do not bind the court in a later decision on summary judgment. Thus, any preliminary decision on the merits should not prejudice the Court's final decision on the merits.

It is long established that "any findings of fact and conclusions of law made at the preliminary stage are of no binding effect whatsoever" as to judgment on the merits. *Clark v. K-Mart Corp.*, 979 F.2d 965, 969 (3d Cir. 1992); *see also Council of Alternative Political Parties v. Hooks*, 179 F.3d 64, 69-70 (3d Cir. 1999) (noting that the law-of-the-case doctrine does not prohibit courts from revisiting preliminary decisions). This is particularly true where "the summary judgment record contains material that was not considered by the District Court when

evaluating the motions for a preliminary injunction." *Parkell v. Senato*, 639 Fed. Appx. 115, 117 (3d Cir. 2016).

The Court's prior opinion, ECF No. 33, has no effect at all on the parties' cross-motions for summary judgment. The Court considered the preliminary injunction motion on a compressed schedule and in an emergency posture. In fact, the Court decided that preliminary injunction motion as it did expressly because of its emergency posture. Further, the Court did not have the benefit of a fulsome explanation of the state's interest. *Compare* ECF No. 33 at 5-6 & n.6 (noting that the Court's preliminary decision was based on a limited factual and briefing record) *with supra*, Section III.B.2. Any prior opinion as to the merits of either side of the *Anderson-Burdick* balancing test thus carries no weight at this stage, and Plaintiffs' attempts to invoke it are misguided.

**D. Plaintiffs' Claims Are Moot Because They Rely on Past, Not Future, Burdens**

As Plaintiffs note, this Court held that Plaintiffs' challenge to the affidavit requirement was not moot, because it was capable of repetition but evading review. *See* Pl. Br. at 33. However, that exception applies only when the circumstances are unchanged. When circumstances are not going to repeat themselves in the future, a particular challenge based on past events is no longer capable of repetition, and thus it does not fall within the mootness exception. *See County of Butler v. Governor of Pennsylvania*, 8 F.4th 226, 231 (3d Cir. 2021) (finding that challenge to COVID policies was moot because "the public health landscape has so fundamentally changed"). Because Plaintiffs decided to rely exclusively on facts from 2024 in support of their summary judgment motion, and because specific facts they claim presented a burden cannot and will not repeat themselves in 2028, the particular claim that they advance at this stage is moot.

In support of summary judgment, Plaintiffs rely heavily on specific facts from 2024 which are unlikely to repeat themselves in 2028. Specifically, all of the facts related to their difficulty in obtaining candidate affidavits comes from a period of time of less than one month—July 11, 2024 through August 6, 2024—and emphasizes the particular difficulties the campaign had ***because of*** the compressed schedule. *See* JSF ¶¶ 13-27. Any such compressed schedule was of their own doing. Plaintiffs acknowledge that, although they claim to have identified all of their electors by April 2024, JSF ¶ 40, the campaign did not even try to obtain candidate affidavits from these electors until July 12, 2024. JSF ¶ 42. Plaintiffs offer no explanation as to why they delayed in seeking these affidavits, but had nothing to do with the Department. *See* JSF ¶ 43 (the Department posted the affidavit requirement to its website on June 7, 2024).

More importantly, though, Plaintiffs offer no reason why any alleged compressed timeline is likely to repeat in 2028. In fact, Plaintiffs have marshalled no facts at all related to what burden they expect to encounter in 2028. They have offered no declaration or document from anyone about when they might start looking for electors, how they expect that search might go, and why they might have difficulty getting affidavits from those electors over an elongated time period. In 2024, they had their electors in place by April, JSF ¶ 40; there is no reason they cannot do the same in 2028, but this time get an affidavit from each at that time. And while Plaintiffs cite the disaffiliation requirement as a reason their chosen electors could not sign the affidavit, JSF ¶ 24, that same problem is not present today and will not present itself until spring of 2028. *See* 25 P.S. § 2511(e)(6) (a person may disaffiliate at any time before 30 days before the primary election). The lack of evidence related to events likely to repeat themselves in 2028 dooms Plaintiffs' forward-looking claim.

The critical facts that Plaintiffs now cite in support of summary judgment regarding the burden imposed by the affidavit requirement are specific, unique facts that are unlikely to repeat in 2028. In short, Plaintiffs know the rules now, they have no excuse that it would be a burden to follow them. As a result, the specific claim that Plaintiffs present at summary judgment does not fit into the exception, and their claim is moot.

## IV. CONCLUSION

Wherefore, this Court should grant Defendants' motion for summary judgment, deny Plaintiffs' motion for summary judgment, and enter final judgment dismissing Plaintiffs' case.[8]

Date: September 21, 2026

Respectfully submitted,

JENNIFER C. SELBER
GENERAL COUNSEL

By: /s/ Stephen R. Kovatis______
STEPHEN R. KOVATIS (ID No. 209495)*
Deputy General Counsel
JACOB BOYER (ID No. 324396)
Deputy General Counsel

GOVERNOR'S OFFICE OF GENERAL COUNSEL
30 North Third Street, Suite 200
Harrisburg, PA 17101
Phone: 717-602-0943
Email: skovatis@pa.gov

*Admitted pro hac vice*

*Counsel for Defendants*

---

8 If the Court denies this motion and grants Plaintiff's motion for summary judgment, Defendants respectfully request the opportunity to brief the appropriate remedy.

**CERTIFICATE OF SERVICE**

I, Stephen R. Kovatis, hereby certify that I have caused all parties to be served on this day with the foregoing Memorandum of Law via the Court's ECF system.

Date: September 21, 2026

By: /s/ Stephen R. Kovatis______
STEPHEN R. KOVATIS