**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CORNEL WEST AND MELINA ABDULLAH, *et al.*, | |
| Plaintiffs, | CIVIL ACTION No. 24-1349 |
| v. | |
| PENNSYLVANIA DEPARTMENT OF STATE, *et al.*, | |
| Defendants. | |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

The Secretary's brief is, in the main, a series of non sequiturs assembled around a single straw man. The straw man is his description of what Plaintiffs challenge as merely a requirement that a willing presidential elector sign a one-page form. ECF No. 102 at 1–2. Plaintiffs have never challenged that. They do not dispute that Pennsylvania must appoint nineteen electors, that Article II limits who may serve, or that the Commonwealth may confirm an elector's eligibility and consent. What they challenge — and have challenged, in the same terms, from the first day of this litigation — is the combined effect of the provisions the Secretary applies to a political body's electors and to no one else's: a slate of nineteen frozen onto every nomination sheet before the first signature is gathered; disaffiliation

months before the papers are due; an affidavit from each of the nineteen by August 1; and no lawful means of repairing a break in the slate until the Department accepts papers it will not accept without all nineteen affidavits. The Secretary never squarely addresses that combination. He recasts the claim as something narrower, defends the recast version, and then professes confusion about what Plaintiffs could possibly find burdensome. ECF No. 102 at 11. The non sequiturs follow from the straw man: finding nineteen electors is a constitutional duty, so keeping nineteen cannot be a constitutional burden; major-party nominees work harder to win nominations, so a condition imposed on political bodies alone cannot discriminate; one elector in Arizona told a reporter she had not agreed to serve, so Pennsylvania may exclude any ticket missing one affidavit of nineteen.

The consequence is that the Secretary loses under any level of scrutiny. He offers no justification — compelling, important, or rational — for the total impact of treating presidential electors as "candidates." He has made a compelling case for an affidavit requirement in the abstract — which Plaintiffs do not contest — and has not defended the constitutionality of Pennsylvania's. Because his treatment of the preliminary-injunction ruling aptly captures that continued inability to advance any coherent justification for the challenged provisions, Plaintiffs begin there.

## II. COUNTER-STATEMENT OF THE RECORD

Plaintiffs rest on the parties' stipulation and on the statement of facts in their opening brief, ECF No. 98 at 4–13, and correct the Secretary's account in two respects.[1]

## III. ARGUMENT

### A. The preliminary ruling does not bind the Court — and nothing has changed since it issued.

The Secretary argues that the Court's October 2024 ruling "ha[s] no weight at this stage." ECF No. 102 at 22–23. As a statement of law, that is correct and Plaintiffs concede it. Findings made on a motion for a preliminary injunction do not bind the court at final judgment. *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Were it otherwise, this would be a simple matter of preclusion and no one has argued that it is.

But the argument proves far less than the Secretary supposes, because what the Court found was conditional in precisely the way that matters now. The Court found the burden "more than minimal," found the Secretary's interests not "sufficiently weighty and logically connected or tailored to Plaintiffs' case," and found Plaintiffs "clearly likely to succeed on the merits, at least based on the present record." ECF No. 33 at 5–6. It left the door open: "Maybe there are other

[1]First, the campaign did not write to its electors "after its paperwork was rejected." ECF No. 102 at 7. The July 11 notice was a pending notice reading "0 of 19 Electors"; the rejection came on August 1. Stip. ¶¶ 15, 25–26; Stip. Ex. C. Second, two electors — not "at least three" — had not responded by July 28. ECF No. 102 at 7; Stip. ¶ 52. Citations to "Stip." are to the Joint Stipulation of Facts and its exhibits (ECF No. 99); docket citations are by ECF page. Neither fact, however, is dispositive.

weighty reasons for this restriction, but none have been sufficiently proffered or explained at this juncture, or supported by evidence." *Id.* at 6 n.6. The Secretary now says the Court "was not presented with a full record" and lacked "a fulsome explanation of the state's interest." ECF No. 102 at 22–23. That was then, the argument runs; now there is a record.[2]

So there is. And the record now is that the Secretary presented nothing. Discovery is closed. ECF No. 83. The Secretary took no deposition, served no expert report, and filed no declaration from any official about any interest the challenged provisions serve. ECF No. 98 at 13, 24. His submission rests on the stipulation, two newspaper articles, and the Department's election-returns web page. ECF No. 102 at 4 n.2, 6 n.3, 19 n.7. The "fulsome explanation" he promises is argument of counsel. In truth, the Court invited the Secretary to "put forward more weighty and specific interests that are, as applied to this case, furthered by the restrictions." ECF No. 33 at 5. Two years and a completed discovery period later, he has put forward none. The case stands where it stood in October 2024, except that Plaintiffs

[2]The refrain has run through the Secretary's filings for two years. *See, e.g.*, ECF No. 62 at 2 ("there is no way to determine at this stage how burdensome the affidavit requirement might be"); *id.* at 5 ("any actual burden is simply unknowable this far in advance"); Appellees' Resp. in Opp. to Mot. for Inj. Pending Appeal at 20, No. 24-2913 (3d Cir.). The Court, for its part, observed that it "already has, in a sense, the factual record." ECF No. 77 at 9.

have since confirmed and supplemented, by stipulation, what was evident from the start.[3] If the preliminary record favored Plaintiffs, this one favors them more.[4]

### B. The Secretary never addresses the claim Plaintiffs pleaded.

#### 1. *The claim is the combined effect — and the Secretary does not dispute how it operates.*

The Secretary professes uncertainty about "exactly what [Plaintiffs] find so burdensome," wondering whether they object to their "constitutional duty" of supplying electors, to "providing an affidavit," or to "the substantive affirmations of eligibility." ECF No. 102 at 11. The uncertainty is feigned. Plaintiffs have stated their claim in the same terms in every submission since September 2024,[5] and this Court grasped it, on an expedited basis, as a challenge to the treatment of electors as "candidates" and to each consequence that follows. ECF No. 33 at 4; *accord* ECF

---

[3] *See* Stip. ¶¶ 13–26 (filing, pending notices, affidavits, and rejection); *id.* ¶¶ 31–35 (major-party electors); *id.* ¶¶ 36–44 (signatures, slate, and the Department's June 7, 2024 guidance); *id.* ¶¶ 45–54 (outreach and the circumstances of identified electors); Stip. Exs. B, K, M.

[4] The Secretary's one quarrel with the Court's reasoning dismisses *Kim v. Hanlon* and *Mazo* as cases "about First Amendment issues unique to New Jersey's ballot rules." ECF No. 102 at 16 n.5. The Court cited *Kim* for the Supreme Court's own rule that deferential review is reserved for "reasonable, nondiscriminatory restrictions." ECF No. 33 at 5 (quoting *Kim v. Hanlon*, 99 F.4th 140, 155 (3d Cir. 2024)); *see Burdick v. Takushi*, 504 U.S. 428, 434 (1992). That a case arose under a different statute describes every precedent and distinguishes none.

[5] *See* ECF No. 1 ¶ 87; ECF No. 6 at 11 ("the combined effect of treating Justice for All's presidential electors as 'candidates for public office' creates a severe burden"); *id.* at 14, 18, 24 n.12, 25–26; ECF No. 21 at 13 (the infirmity "arises primarily from the fact that Justice for All was required to identify its electors before it could circulate its papers and submit affidavits specifically from those electors"); Tr. 114:12–24 (ECF No. 36); ECF No. 60 ¶ 80; ECF No. 98 at 2–3, 16–17, 19–22.

No. 77 at 4, 8. Nor is the confusion new.[6] Two years later, the Secretary still does not address the claim.

Nor does the Secretary dispute the governing rule. "[A] number of facially valid provisions of election laws may operate in tandem to produce impermissible barriers to constitutional rights," *Storer v. Brown*, 415 U.S. 724, 737 (1974), and the Third Circuit has rejected "fragmentation" of a combined scheme because it "would prevent meaningful review of the real harm caused by the statutory scheme." *Const. Party of Pa. v. Cortes*, 824 F.3d 386, 398 (3d Cir. 2016) (cleaned up); *see* ECF No. 98 at 16–17 & n.10. The Secretary cites none of these authorities, disputes none of them, and offers no reason to examine the affidavit alone when every prior decision in this case has examined the scheme as a whole. Nor does he dispute the mechanics.[7] Those are the premises of Plaintiffs' claim. He accepts every one of them and then defends something else.

---

[6]The Secretary's counsel told the Court at the 2024 hearing that he was "not entirely clear what burden or what provision Dr. West is challenging," Tr. 109:20–21 (ECF No. 36) — after Plaintiffs' reply had explained that the Department's defense "does not squarely address . . . the combined practical effect" of its interpretation. ECF No. 21 at 4; *see id.* at 12–13.

[7]The nineteen must appear on every sheet before circulation, Stip. ¶ 37; each must satisfy the disaffiliation rule and file an affidavit by August 1, Stip. ¶¶ 7, 24, 43–44; no substitution is possible before acceptance, *see Clymer v. Schmidt*, 324 A.3d 640, 655, 658 n.17 (Pa. Cmwlth.), *aff'd*, 322 A.3d 929 (Pa. 2024); and the major parties' electors face none of it, Stip. ¶¶ 31–33. *Clymer* and *In re De la Cruz*, 324 A.3d 632 (Pa. Cmwlth.), *aff'd*, 322 A.3d 883 (Pa. 2024), are published decisions subject to judicial notice, *see S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999); both were before the Court on the motion to dismiss, ECF No. 77 at 8; and the *Clymer* petition is in the record. JA Ex. 26.

### 2. *Eakin is correct — and under Eakin the Secretary still loses.*

The Secretary draws his framework from *Eakin v. Adams County Board of Elections*, 149 F.4th 291 (3d Cir. 2025). ECF No. 102 at 10–11. *Eakin* states the law correctly; it applies the total-effect principle rather than displacing it. It holds "that a court applying the first step of *Anderson-Burdick* may look to a law's impacts, including the consequences of noncompliance," and illustrates the point with a petition rule under which a typographical error keeps a candidate off the ballot for two years — "a severe consequence" the court must weigh however easy compliance may be. 149 F.4th at 311 & n.32. The Secretary weighs only the ease of signing, which his own authority forbids. The consequence here is the exclusion of an entire presidential ticket — and the nullification of more than 13,000 voters' signatures — for want of a valid affidavit from each of nineteen private volunteers. Stip. ¶¶ 26, 36. A candidate could submit 100,000 signatures, be missing one of nineteen affidavits, and be off the ballot.

Measured by *Eakin*'s own considerations, the Secretary does not win.[8]

---

[8]The Secretary says Plaintiffs addressed only the first two considerations. ECF No. 102 at 11. The rest answer themselves. There are no "alternative means to vindicate the affected interest," *Eakin*, 149 F.4th at 309, because nomination papers are the only route Section 951 provides a political body to the presidential ballot. Stip. ¶¶ 4–6. And the "evidence" of the law's "impacts," *id.*, is the stipulated exclusion of a ticket whose signatures were never questioned, Stip. ¶¶ 26, 36, and of the only two other political bodies that sought statewide presidential access in 2024. ECF No. 60 ¶ 69; ECF No. 77 at 8; *Clymer*, 324 A.3d at 643–44; *De la Cruz*, 324 A.3d at 638–39. For a rule triggered once every four years, it is hard to conceive what more evidence could exist.

### 3. *The Secretary's reasons for calling the burden light do not follow from their premises.*

First, the Secretary argues that "the burden of finding 19 people to serve as electors cannot be an unconstitutional burden, because it is a constitutional requirement." ECF No. 102 at 11. Article II imposes no duty on candidates and "finding" nineteen electors is not the burden. The campaign found them, beginning in 2023. Stip. ¶ 39. The burden is keeping the same nineteen — reachable, resident, eligible, and willing — from the day circulation begins until August 1, with no means of replacing one who is lost. The assertion that the campaign "would have exactly the same problem" in December, ECF No. 102 at 12, has no record support and ignores the Election Code, which fills the seat of an absent elector on the day the electors meet. *See* 25 P.S. § 3193.

Second, the Secretary asserts that the affidavit "imposes no prerequisite to elector eligibility that does not already exist in law." ECF No. 102 at 13. Plaintiffs have never objected to any eligibility requirement and the Secretary has identified none beyond those Article II supplies; the only elector-specific "qualification" the affidavit polices — disaffiliation — exists because the challenged construction makes electors "candidates" in the first place and falls with it. *See* ECF No. 98 at 26–27. If the affidavit truly adds nothing to eligibility, then all it adds is a veto over the ticket's place on the ballot, exercisable by any one of nineteen volunteers through simple inaction.[9]

[9]The Secretary's footnote on filing fees, ECF No. 102 at 17 n.6, misses the point. Plaintiffs raise no state-law claim. The point is that the "candidate" label carries consequences the Department enforces selectively — the affidavit to the point of

Third, the Secretary says timing "presents no real burden" and that electors "can still substitute" after August 1. ECF No. 102 at 14–15. Timing is the heart of the burden. Because the nineteen are locked onto the papers when circulation begins, Stip. ¶ 37, every signature a political body gathers over six months is hostage to the continuing availability of nineteen named individuals — an exposure the major parties, whose nominees name electors after the convention, never face. *See* 25 P.S. § 2878. And the substitution point omits the premise that defeats it: "substitution is only possible where the initial candidate was properly nominated." *Clymer*, 324 A.3d at 655 (discussing *In re Scroggin*, 237 A.3d 1006, 1022–23 (Pa. 2020)). An elector who cannot be reached cannot be replaced, because her affidavit must come first; one who has moved to Florida, Stip. Ex. M, can be replaced only if she first swears to a Pennsylvania residence and a candidacy she does not intend to pursue. The construct did not "identif[y] the issue early and force[] its resolution." ECF No. 102 at 21. It foreclosed resolution.

### C. The construct discriminates against political bodies alone.

The two sets of electors perform one constitutional function, yet the law treats them differently at every step: a major party's nominee names the party's electors within thirty days after the convention — or later, with no consequence for the ticket — with no affidavit and no disaffiliation attestation. *See* 25 P.S. § 2878; Stip. ¶¶ 31–33. "A burden that falls unequally on new or small political parties or on independent candidates impinges, by its very nature, on associational choices

---

exclusion, the fee not at all, *see* 25 P.S. § 2914; ECF No. 33 at 4 n.5 — which confirms that no state interest requires the label.

protected by the First Amendment." *Anderson*, 460 U.S. at 793–94; *see Eakin*, 149 F.4th at 309 & n.25. And the en banc Third Circuit has held that interests "sufficiently weighty . . . to justify a general ban" are "not sufficiently weighty to justify a ban that discriminates between major and minor parties." *Reform Party of Allegheny Cnty. v. Allegheny Cnty. Dep't of Elections*, 174 F.3d 305, 316 (3d Cir. 1999) (en banc). The Secretary does not cite *Reform Party*.

*Jenness v. Fortson* does not hold otherwise. A State may offer "alternative paths" to the ballot, 403 U.S. 431, 441 (1971), but the interest *Jenness* credited was a "preliminary showing of a significant modicum of support," *id.* at 442 — which the signature requirement secures and this ticket exceeded two and a half times over. Stip. ¶¶ 6, 36. The elector affidavit measures nothing about support. It is a further condition, untethered to any interest *Jenness* recognized, imposed on one path alone. *See* ECF No. 33 at 4–5.

The Secretary's response is that "the relative administrative burden on a major party candidate is still far greater." ECF No. 102 at 16–17. This is the comparison *Anderson* rejected: "'equal treatment' of partisan and independent candidates simply is not achieved by imposing the March filing deadline on both." 460 U.S. at 799–801. Running a national campaign is hard, but it is not a burden the government imposes. In truth, the Election Code imposes no administrative burden on a major-party presidential nominee at all. The nominee need not have filed a petition, gathered a signature, or received a vote in Pennsylvania's primary. In 2024, Vice President Harris appeared on no Pennsylvania primary ballot, yet her

name appeared on the November ballot as the Democratic nominee, with nineteen electors named on no form and under no oath.[10] The comparison is not merely unsupported. It is backwards.

### D. The Secretary's interests do not require this combination of provisions.

Pennsylvania has legitimate interests in confirming that its electors are eligible and have consented to serve and in casting a full slate of electoral votes. ECF No. 98 at 28–29. The question is whether those interests require this combination of provisions, imposed on political bodies alone. The Secretary answers a different question — whether a State may ask an elector to sign something — and loses under any standard. Even "[a] minimally burdensome law" may "flunk[] *Anderson-Burdick* because the legitimate state interest cannot justify the minimal burden." *Eakin*, 149 F.4th at 312; *see Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 191 (2008) (plurality opinion).

#### 1. *The vacancy statute already secures a full slate; the construct destroys the means of filling one.*

The affidavit secures nothing about December, because it attests nothing about December. It contains no undertaking to serve, to attend, or to vote. Stip. Ex. B. What does secure a full slate is the Election Code's vacancy procedure: the electors who assemble fill the seat of any elector who has died or fails "for any

[10]The Court may take judicial notice of the Department's official election returns. *See* Fed. R. Evid. 201(b)(2); *Vanderklok v. United States*, 868 F.3d 189, 205 n.16 (3d Cir. 2017) (taking judicial notice of information "publicly available on government websites"). They are the source on which the Secretary himself relies. ECF No. 102 at 4 n.2. Pennsylvania's presidential primary ballot presents candidates for President only; it presents no candidate for Vice President.

cause" to attend. 25 P.S. § 3193; *see* 3 U.S.C. § 4. The Department tells political bodies that the procedure applies to their electors, JA Ex. 23, and the Secretary's own brief reports that an absent Republican elector was replaced in December 2024 — under a statute he does not name. ECF No. 102 at 18–19 & n.7. For the major parties, Pennsylvania relies on vacancy-filling. For political bodies, it forbids substitution before acceptance and excludes the ticket instead. A rule that destroys the means of filling a vacancy cannot be defended as a means of filling one.

The Secretary's rejoinder is that "[t]he possibility that a political body's message might surpass its organization and result in winning Pennsylvania is exactly why the affidavit requirement is important." ECF No. 102 at 19. A ticket that wins Pennsylvania has persuaded millions of voters. The suggestion that it could not then find nineteen of them willing to cast its electoral votes — or that the risk is so grave as to justify excluding tickets that have persuaded 13,000 — refutes itself. The Secretary identifies no instance, in any State, of a winning ticket failing to seat its electors and his account of the major parties' "organizational strength," *id.*, has no record support. *See Reform Party*, 174 F.3d at 315 (a court "cannot speculate about possible justifications"); *Anderson*, 460 U.S. at 801 (rejecting "a desire to protect existing political parties from competition").

#### 2. ***Disaffiliation serves no interest that exists for presidential electors.***

The Secretary faults Plaintiffs for being unable to "point to any time in which a major party has chosen as an elector someone who is not a member of that party." ECF No. 102 at 19. The burden is his and the point inverts the inquiry: that the

major parties have never needed a disaffiliation rule for their electors is a reason the State does not need one. More fundamentally still, the disaffiliation requirement rests on a rationale with no logical application to presidential electors. Pennsylvania's courts have said what it is for: "to identify and disqualify so-called 'sore loser' candidacies," as part of the Commonwealth's "anti-party raiding" prohibitions. *Clymer*, 324 A.3d at 651; *see De la Cruz*, 324 A.3d at 638. *Storer* itself upheld disaffiliation as a corollary of the direct primary, to keep "defeated primary candidates" from "continuing the struggle" and to bar a party from "fielding an 'independent' candidate to capture and bleed off votes." 415 U.S. at 735. Every one of those rationales presupposes a primary for the office in question. There is no primary for presidential elector. No one runs for it; no one loses it; no one can be a "sore loser" from it. No one "raids" a party through an elector designation, because electors appear on no ballot and draw no votes. Stip. ¶¶ 10, 35. The major parties' electors, moreover, face no such rule, Stip. ¶ 33 — they need not even belong to the party whose ticket they serve, *see* 25 P.S. § 2878 — and the Department's own substitute-elector form omits the attestation altogether. Stip. Ex. K. This Court found the sore-loser rationale "attenuated" as applied to electors in 2024. ECF No. 33 at 6 n.6. On this record it is not attenuated. It is absent. The Secretary's assertion that the requirement "furthers that goal," ECF No. 102 at 20, is ipse dixit.[11]

---

[11]*De La Fuente v. Cortes*, 751 F. App'x 269, 273–74 (3d Cir. 2018), does not help the Secretary. That non-precedential decision upheld the rules as applied to a presidential candidate himself — a person who could run in, and lose, a primary.

### 3. *The Arizona anecdote justifies nothing.*

The Secretary's lone example of an elector named without her consent comes from Arizona, by way of a reporter: the parties stipulated that an individual "later told a reporter that she had not agreed to be an elector." Stip. ¶ 55. The stipulation establishes that the statement was made, not that it was true.[12] More to the point, the argument built on it is another non sequitur. The report describes one person in another State under procedures about which the record says nothing; Pennsylvania's requirement "identified" nothing in Arizona, ECF No. 102 at 21, where it does not apply. An isolated episode involving one individual cannot justify the combined burdens imposed on every political body, every elector, and every voter who signs their papers. And the cure for an elector who never agreed to serve is to replace her — the one step the construct forbids before acceptance and the Code permits after it. *See* 25 P.S. §§ 2940–2941, 3193; *Clymer*, 324 A.3d at 655.

### 4. *Less restrictive means abound, and the Secretary offers no evidence to the contrary.*

Under heightened scrutiny the State must "adopt the least drastic means to achieve [its] ends." *Ill. State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 185 (1979). The Secretary finds it "difficult to imagine any less restrictive regulation." ECF No. 102 at 22. The Election Code supplies several: Pennsylvania

---

Plaintiffs do not challenge them as applied to candidates for President and Vice President, both of whom complied here. Their extension to electors *De La Fuente* did not consider.

[12] The parties "reserve[d] all objections, including as to relevancy and materiality." Stip. at 1. Plaintiffs object under Rule 56(c)(2) to any use of the statement for its truth. *See* Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 801(c), 802.

could treat political bodies' electors as it treats the major parties', *see* 25 P.S. § 2878; let the committee to fill vacancies, which every political body must name, Stip. ¶ 41; Stip. Ex. A ¶ 4, replace an elector before acceptance as it may after; set the affidavit deadline after the signature deadline, as its withdrawal form sets the withdrawal deadline, Stip. Ex. J; or omit the disaffiliation attestation, as its substitute form already does, Stip. Ex. K. Which to adopt is for the General Assembly. The Constitution asks only that it not keep the one before the Court.

The Secretary's analogies to signature requirements, ECF No. 102 at 20, make Plaintiffs' point: each rule he cites measured support and the authorities he invokes applied the combined-effect framework he declines to apply.[13]

Of equal import, where no intuitive connection links a requirement to the asserted interest, the absence of evidence counts against the State. *See Eakin*, 149 F.4th at 316 n.41; *Munro v. Socialist Workers Party*, 479 U.S. 189, 195–96 (1986). The Secretary has abandoned the anti-fraud rationale he pressed in 2024, *see* ECF No. 20 at 27, does not defend *Clymer*'s constitutional analysis, *see* ECF No. 98 at 30–32, and offers no evidence for any interest. He has made a compelling case for an affidavit requirement in the abstract. He has made no case for Pennsylvania's.

---

[13] *Storer*'s remark that 325,000 signatures in 24 days "would not appear to be an impossible burden" "[s]tanding alone" introduces a remand for findings on whether, together with California's other provisions, the requirement was "too great a burden." 415 U.S. at 740. And the signature requirement *Rogers v. Corbett* upheld was later held unconstitutional as applied, because of its combined effect with other provisions of the Code. *See Cortes*, 824 F.3d at 398; ECF No. 98 at 5 n.6.

**E. The claims are not moot.**

The Court has held that these claims fall within the exception for wrongs capable of repetition yet evading review. ECF No. 77 at 9–13. The Secretary identifies no change in the law; the construct is binding precedent under *Clymer*, which he continues to enforce.[14] *Merle v. United States* governs: "because the Hatch Act remains binding law, any future candidacy of Merle will be similarly affected." 351 F.3d 92, 95 (3d Cir. 2003); *see also Moore v. Ogilvie*, 394 U.S. 814, 816 (1969) (applying the exception to independent candidates for presidential elector). Dr. West is "keeping his options open" and is "likely but not certain" to run again. JA Ex. 28 (Resp. to Interrog. No. 4).

The assertion that the 2024 facts are "unlikely to repeat in 2028," ECF No. 102 at 25, has no basis. The problem "was demonstrated by these very Plaintiffs in 2024," *id.* at 21, yet the same events are "specific, unique facts," *id.* at 25; both cannot be true. *Storer* resolves the tension: "Past experience will be a helpful, if not always an unerring, guide." 415 U.S. at 742. The features that produced the 2024 result — the freeze at circulation, disaffiliation months before filing, unanimity by August 1, and no cure before acceptance — recur in 2028 by force of statute. So does ordinary life: electors move out of state, Stip. Ex. M; attend the birth of a child, ECF No. 102 at 19 n.7; or stop answering, Stip. ¶ 52. That every political body seeking

[14] *County of Butler v. Governor of Pennsylvania* is not comparable: the pandemic orders there had expired and a constitutional amendment had curtailed the Governor's authority to reissue them. *See* 8 F.4th 226, 230–31 (3d Cir. 2021).

the 2024 presidential ballot had elector problems is not evidence that the problem will not recur. It is evidence that it will.[15]

## IV. CONCLUSION

The Secretary contests none of the permanent-injunction factors. *See* ECF No. 98 at 34–37. Plaintiffs do not object to the remedy briefing he requests, ECF No. 102 at 25 n.8, provided it is short and simultaneous and does not delay judgment. For these reasons and those in their opening brief, Plaintiffs respectfully request that the Court grant their motion, deny the Secretary's, and enter the proposed order, ECF No. 97-1. Plaintiffs request oral argument.

Date: October 13, 2026

Respectfully submitted,

*/s/ Shohin H. Vance*
SHOHIN H. VANCE (PA 323551)
SAXTON & STUMP
100 Deerfield Lane, Suite 240
Malvern, PA 19355
P: 484.328.8512 | F: 484.713.5241
svance@saxtonstump.com
*Counsel for Plaintiffs*

[15] The Secretary's "lack of diligence" narrative, ECF No. 102 at 24, has no place in a mootness analysis and the record does not bear it out. The slate was fixed on April 24, 2024; the Department's guidance was posted on June 7; and by then the disaffiliation window had closed, so no outreach could have cured the disqualified elector or replaced any listed one. Stip. ¶¶ 40, 43, 54; *see* 25 P.S. § 2911(e)(6).

**CERTIFICATE OF SERVICE**

I, Shohin H. Vance, hereby certify that I have caused all parties to be served on this day with the foregoing Plaintiffs' Brief in Opposition to Defendant's Motion for Summary Judgment and in Further Support of Plaintiffs' Motion for Summary Judgment via the Court's ECF system.

Date: October 13, 2026

By: /s/ Shohin H. Vance
SHOHIN H. VANCE